Michael Petersen, Parent PRO SE
next of friend of Michael Petersen Jr.
And Ryan Petersen
P.O. Box 2462
Visalia Ca. 93291

FILED

APR 27 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHAEL PETERSEN on behalf of himself and
parent and next of friend to Mike Jr. and Ryan
disabled minor children PRO SE

PLAINTIFF'S

V.

CALIFORNIA SPECIAL EDUCATION HEARING
OFFICE , MCGEORGE SCHOOL OF LAW et al.
HEARING OFFICER, VINCENT PASTORINO
MOUNT DIABLO UNIFIED SCHOOL DISTRICT et al.
MILDRED BROWN, individually and in her official
capacity as assistant superintendent of special education
KEN FERRO, individually and in his official capacity as
Alternative Dispute Resolution Administrator

DEFENDANTS

**T: 07 CV 00646 LJO DLB**

CASE NO:

COMPLAINT FOR DAMAGES
FOR VIOLATIONS OF STATE
AND FEDERAL CONTRACT LAW
FOR:

1) Consent Decree contract C98-00951
2) SEHO contract SN03-01885
3) 29 USC 504 of the Rehabilitation
act of 1973 contract provisions
4) ADA contract provisions;
42USC 1983 due process clause
42USC 1983 equal protection clause
5) 42 U.S.C. 1985 contract provisions
6) 29 U.S.C. 794 contract provisions
7) 1st, 5th 14th Amendment
8) Public contract code & public policy
9) Request for declaratory and
Injunctive relief

DEMAND FOR JURY TRIAL

JURISDICTION AND VENUE

1)   This is a civil action in which this court has original jurisdiction under 28 U.S.C.

1  Sections 1331, 1343(a)(3), 1343(a)(4) and 1367.This action also seeks redress under 42USC
2  section 1983 for the deprivation, under color of state law, of rights, privileges and immunities
3  secured by federal statues and the United States Constitution. Furthermore, this action also seeks
4  to redress discrimination based on a disability under section 504 of the Rehabilitation Act of
5  1973, as amended, 29USC section 794 (section 504)and to secure protection of and to redress
6  deprivation of rights secured by 42 U.S.C. sections 1983 and 1988, and the first, fourth and
7  fourteenth Amendment to the United States Constitution. Venue in this court is proper under
8  20USC section 1392(b) because some defendants reside in this judicial district and a substantial
9  part of the events or omissions giving rise to the claims occurred in this judicial district.

10  2)    The unlawful practices and violation of plaintiff's civil rights complained of herein
11  were committed in the County of Sacramento and County of Contra Costa, within the Eastern
12  and Northern District of California of the United States District Court, and the State of
13  California.

14  3)    The pendent jurisdiction of the federal court is invoked with respect to the plaintiff's
15  claims under the laws of the state of California, because the entire action before the court
16  comprises one civil rights case, and the claims arise out of the same operative facts and are such
17  that the plaintiff would ordinarily be expected to try them in one judicial proceeding.

18                      DEMAND FOR JURY TRIAL

19  4)    Plaintiff's hereby demand a jury trial pursuant to Federal Rule of Civil Procedure
20  38(b).

21                            PLAINTIFFS

22  5)    Plaintiff MICHAEL PETERSEN (hereinafter "FATHER") at all times relevant in
23  this complaint was a resident of the County of Contra Costa in California, and is the father of co-
24  plaintiff's, STUDENT MICHAEL PETERSEN Jr. (hereinafter "MIKEY ") and STUDENT
25  RYAN PETERSEN (hereinafter "RYAN")

26  6)    Plaintiff MICHAEL PETERSEN JR. (MIKEY)  Is currently a 14 year old boy who
27  has been diagnoses with Auditory Processing Disorder, Sensory Integration Dysfunction, and
28  Pervasive Developmental Disorder. (Autism Spectrum Disorder) Student MIKEY is entitled to

1  receive full and equal access to the public educational programs and activities offered within the
2  Mount Diablo Unified School District. He is a qualified individual with a disability within the
3  meaning of all applicable statutes including Section 504 of the rehabilitation Act of 1973, 29
4  U.S.C. $ 794, and the Americans with Disabilities Act, 42 U.S.C. $12131. He was at all relevant
5  times, and all times material hereto, a resident of the County of Contra Costa and beneficiary to
6  the state and federal contracts stated herein. therefore, Mikey is entitled to be free of
7  discrimination based on a disability under section 504.

8      7)     Plaintiff RYAN PETERSEN ("RYAN") is currently a 12 year old boy who is a "low
9  incidence deaf student"(who requires extra special funding and treatment) within the meaning of
10  state and federal special education contract laws, diagnosed with auditory processing disorder
11  and bilateral hearing loss. Student RYAN is entitled to receive full and equal access to the public
12  educational programs and activities offered within the Mount Diablo School District. He is a
13  qualified individual with a disability within the meaning of all applicable statues including
14  Section 504 of the rehabilitation act of 1973, 29 U.S.C. $ 794, and the Americans with
15  Disabilities Act, 42 U.S.C. $12131. He was at all relevant times, and all times material hereto, a
16  resident of the County of Contra Costa and beneficiary to the state and federal contracts stated
17  herein. Therefore, Ryan is entitled to be free of discrimination based on a disability under section
18  504. (attached as "exhibit 1" is Ryan's special education contract from SEHO case SN03-01885)
19
20                                    DEFENDANTS

21      8)     Defendant MOUNT DIABLO UNIFIED SCHOOL DISTRICT (MDUSD) is a public
22  school district duly organized and existing under the laws of the State of California and is located
23  in the County of Contra Costa. At all times relevant herein, the MDUSD was the local education
24  agency responsible for providing school children full and equal access to the public education
25  programs and activities it offers in compliance with the requirements of state and federal
26  contractual law. The MDUSD receives federal financial assistance and signs yearly state and
27  federal contracts promising to implement services and programs to disabled students as
28  beneficiaries free from discrimination. MDUSD was at all times mentioned herein, bound by

1 │ federal consent decree contract #C98-00951.

2 │     9) Defendant Mildred brown, Assistant Superintendent of Special Education for

3 │ MDUSD, (Brown) was at all times mentioned herein obligated to ensure the compliance of state

4 │ and federal contractual laws to disabled students as beneficiaries, free of discrimination. Brown

5 │ was at all times FERRO'S supervisor knowledgeable of the SEHO hearings. Brown was at all

6 │ times material to and responsible for Mikey's and Ryan's SEHO educational contracts

7 │ whereupon her signature bears the district's final approval of said contracts. Brown was at all

8 │ times knowledgeable regarding the federal consent decree contract in which the MDUSD was

9 │ bound by to remove program barriers as a form of discrimination. Brown is being sued in her

10 │ individual as well as in her official capacity. Based upon information and belief, she is a resident

11 │ of Contra Costa County, in California.

12 │     10) Defendant MDUSD, Alternative Dispute Resolution Coordinator KEN FERRO,

13 │ (ADR FERRO) was at all times mentioned herein obligated to ensure the compliance of state and

14 │ federal contractual laws to disabled students as beneficiaries, free of discrimination. ADR

15 │ FERRO was at all times relevant and knowledgeable thereof the SEHO hearings as district

16 │ personal representative of the district whereupon he attended the hearings and drafted Mikey's

17 │ and Ryan's educational contracts. ADR FERRO was at all times knowledgeable regarding the

18 │ federal consent decree contract with disabled students as beneficiaries in which the MDUSD was

19 │ bound by to remove program barriers as a form of discrimination. ADR FERRO is being sued in

20 │ his individual as well as his official capacity. Based upon information and belief, Ferro is a

21 │ resident of Contra Costa County.

22 │     11) At all relevant times Defendant California Special Education Hearing Office

23 │ McGeorge School Of Law, (SEHO) was acting as a private entity under contract with the

24 │ California Department of Education (CDE) bound by state and federal contractual law to be free

25 │ from discrimination to special education students as beneficiaries, and to conduct impartial

26 │ special education due process hearings and meditations in compliance with the various legislative

27 │ mandates. Furthermore, SEHO is contractually obligated to have no personal or professional

28 │ interests that conflict with the objectively of the due process hearings rendering discriminatory

1  treatment towards the students as beneficiaries of their contract agreements with the CDE. Based

2  upon information and belief, SEHO conducted their contractual duties in the county of

3  Sacramento California.

4  12 ) Defendant Vincent Pastorino, SEHO Hearing Officer, (PASTORINO) was at all

5  times relevant and material hereto, to act impartially and was contractually bound by state and

6  federal contract laws to provide Mikey un bias due process, free from discrimination as the

7  beneficiary of the state and federal contract laws.

8  13) At all relevant times, defendants were located in the counties of Sacramento and

9  Contra Costa in the Eastern and Northern Districts of California.

10  14) At all times herein mentioned, defendants Mount Diablo Unified School District,

11  MDUSD Assistant Superintendent Mildred Brown, MDUSD Alternative Dispute Administrator

12  ,Ken Ferro, SEHO, and SEHO hearing officer Vincent Pastorino, and each of them, were

13  employees and/or agents for defendants, and in doing all things hereinafter mentioned, acted

14  under the color of their authority as, and under color of the statues, regulations, customs, and

15  usages of state and federal contractual laws, acting under color of their authority as such.

16  15) On information and belief, defendants are residents of the counties of Sacramento

17  and Contra Costa, located in the Eastern and Northern districts of California.

18  16) The true names and capacities of DOES one through one hundred are unknown to

19  plaintiffs. Plaintiffs shall amend this complaint to insert their true names and capacities when

20  they are finally ascertained. Plaintiffs is informed and believes and thereon alleges that each of

21  the fictitiously named defendants is liable to plaintiffs for the acts, events and occurrences

22  alleged herein as a result of said defendants relationship to the named defendants or participation

23  in said acts, events and occurrences, or approval or ratification thereof.

24  17) Plaintiffs are informed and believes and thereon alleges that some or all of

25  defendants, DOES one through one hundred reside or, in the case of corporations, do business in

26  the counties of Sacramento and Contra Costa, or elsewhere in the state of California.

27  18) Plaintiffs are informed and believes and thereon alleges that each of the

28  defendants was at all times herein mentioned, the agent, employee, servant, or representative of

the remaining defendants, and was acting, at least in part, within the course, scope and authority of said relationship.

19) Wherever any defendant is alleged to have done or omitted to do anything, said allegation shall be deemed to mean and include an allegation that the corporation did or omitted to do said acts through its agents, servants, employees and representatives, including but not limited to, its officers, directors, and managing agents, and that the said officers, directors, and managing agents authorized and approved said acts and omissions and ratified same. Plaintiffs's are informed and believe and therefore allege that each of the defendants is responsible for the pattern and practice of events herein alleged, or is a necessary party for obtaining appropriate relief. In performing each of the acts alleged below, and in their failure to fulfill their legal contractual responsibilities set forth below, each defendant acted jointly or individually as agents for each other and for all other defendants. The injuries inflicted upon plaintiff's, and each of them, occurred because of the actions and omissions of the defendants.

## FACTUAL ALLEGATIONS

20) This action arises out of contract violations that affect the disabled minor children MIKEY and RYAN and is therefore brought before this court for proper adjudication and to right the wrongs committed against minor children MIKEY and RYAN so that they may benefit from the state and federal contract laws enacted to safeguard there rights without regard to the amount of controversy. MDUSD defendants, MILDRED BROWN (assistant superintendent, special education) and KEN FERRO (former program specialist to Ryan and current Alternative Dispute Resolution Administrator) have signed, and are bound by state and federal contractual law to be free of discrimination as mandated by state and federal law based on a disability under section 504 in return for receiving federal special education contract funds.

21) Defendant, SEHO (a private entity) and Hearing officer VINCENT PASTORINO at all times herein mentioned has been under contract to the California Department of Education (CDE) and are bound by state and federal contractual law to be free of discrimination to special education students as beneficiaries and conducts due process hearings. SEHO issues orders and decisions in special education "DUE PROCESS " hearings and mediations and publishes and

1 | maintains such orders and decisions.  SEHO orders and decisions may be sited as persuasive
2 | authority in special education due process proceedings.

3 |     22)    There have been 6 SEHO cases for plaintiff MIKEY alone. **SN99-1431** was
4 | filed by parent v. MDUSD to compel testing on MIKEY. Subsequently, a Huges Bill Functional
5 | Analysis was performed pursuant to SEHO mediation, and concluded in this 1st grade testing was
6 | MIKEY's antecedents and/or behavior difficulties in personal space issues, hand writing tasks,
7 | auditory processing issues, lack of eye contact and audio, visual, proprioceptive  sensory
8 | overloads specifically  when asked to perform academic tasks. (ie: autism traits and red flags)
9 | MDUSD violated state and federal contract laws each year until the fifth grade by not providing
10 | services to re mediate the disabilities and Mikey regressed substantially. The MDUSD acted with
11 | deliberate indifference.

12 |     23)    **SN02-01673** was MDUSD v. MIKEY PETERSEN (district files to place
13 | MIKEY in emotionally disturbed locked placement during extended school year (ESY) after they
14 | give him 10 assault and battery suspensions for allegedly kicking his untrained yardduty/shadow
15 | aid. ( during a previous school year, Mikey allegedly tripped this same yardduty and received no
16 | assault and battery suspensions, Mikey also was vomiting repeatedly from the stress which was
17 | hidden by the MDUSD from his school file and father.) (subsequently, the MDUSD violated
18 | state and federal contractual laws by denying Mikey special education services and schooling
19 | violating state and federal contractual laws and the consent decree for the entire 2002-2003
20 | school year while father challenged the locked school placement.)  Mikey lost irreplaceable
21 | educational instruction that will cause him life long harm. The MDUSD contractual violations
22 | caused father to loose substantial wages, and caused pain, suffering and emotional distress as
23 | father was forced to stay at home with Mikey during the 02/03 school year.

24 |     24 )    **SN02-01998** was filed by MDUSD against father after they withdrew the
25 | extended school year case (ESY)  and continued to pursue the emotionally disturbed locked
26 | placement. On 12/24/02, the MDUSD notified SEHO and father in writing that they dismissed
27 | case  SN02-01998.  On 1/02/03, the MDUSD again notified SEHO and father in writing that they
28 | "hereby withdraw" case # SN02–01998.

25 ) **SN02-02868** was fathers case filed on 12/27/02 MIKEY PETERSEN v.
MDUSD filed after MDUSD dismissed their previous case. Hearing date was set for 1/23/03
with issues and resolutions due 10 days before hearing or on 1/13/03 which both parties filed.
Father alleged FAPE, tort, state and federal violations from 1999-2003 school year (issues 1-11
attached as exhibit "**2**") Also on 1/13/03, SEHO conspired with MDUSD attorney Elizebeth
Estes ESQ to re file "SN02-01998" (according to her caption) again even after she had already
twice notified the SEHO and father of the district's withdrawal of that case to circumvent father's
case SN02-02868 simultaneously after father submitted his issues 1-11. SEHO then immediately
granted the MDUSD the new hearing case #SN03-00076 and mailed notices for hearing set for
2/6/03 which did in fact effectively circumvent father's SN02-02868 case set for 1/23/03.
Subsequently father was forced to withdraw this case as SEHO systematically violated MIKEY'S
federally protected contractual due process rights. Simultaneously, along with denying father of
the subpoena duces tecum request from the MDUSD experts, Dr. Maier for testing information
performed on Mikey, Dr. Maier had submitted a multiple page declaration contesting the records
release to the MDUSD and SEHO that father was not aware of until after the deuces tecum
SEHO denial. Father was forced to withdraw this case on 1/21/03 as the testing information was
a essential part of his case. Father also filed motion with SEHO in SN02-02868 to request written
ruling on SEHO's authority and jurisdiction over section 504, ADA and tort claims which SEHO
ignored. Subsequently, due to SEHO's violations with their contractual obligations to Mikey,
father was forced to withdraw his case while suffering extreme anguish during the process.
Father then wrote SEHO stating his withdrawal was due to violations of his due process rights by
SEHO. Father alleges SEHO violated contractual laws and should not have assisted and allowed
MDUSD to re file their SN02-01998 case on the same day both parties issues and resolutions
were due and filed on 1/13/03 for father's case SN02-02868 while granting the MDUSD a SN03-
00076 case number to circumvent father's case. Father alleges SEHO in conspiracy with the
MDUSD violated state and federal contractual laws and procedure to respond to father's motion
for duces tecum subpoena request and motion for pre hearing ruling on SEHO jurisdiction over
section 504, ADA and tort issues father had filed because SEHO had motive that allowed

1  MDUSD to become petitioner in their SN03-00076 case with their sole issue of their FAPE offer
2  to place Mikey into a locked facility for the emotionally disturbed.

3      26 )   During the SEHO case **SN03-00076** set for 2/6/03 that the MDUSD initiated
4  against father, the first hearing officer was recused after ex-parte talks with the MDUSD without
5  father. Additionally, during this case, SEHO initiated a separate order directing father and
6  MDUSD back to reconvene hearing after it's conclusion due to evidence of witness tempering by
7  the MDUSD as it was determined they purposely blocked the appearance and testimony of
8  Mikey's expert advocate thus violating state and federal contractual due process special
9  education laws.

10     27)   Case SN03-00076 was the MDUSD v. MIKEY PETERSEN case filed by
11  MDUSD on 1/13/03, or on the same day father's issues and resolutions were filed on father's
12  previous case #SN02-02868. SEHO acted together with MDUSD to violate plaintiff's due
13  process rights. As the new hearing was set for 2/6/03, the issues and resolutions were due on
14  1/27/03 or 10 days prior to hearing. Father cross filed issues and resolutions on time and sited the
15  exact same 1-11 issues regarding section 504, ADA, tort, state and federal violations against the
16  MDUSD. (Identical to father's 1/13/03 issues) attached as exhibit **#"3"**. Father again motioned
17  SEHO for a written ruling regarding SEHO jurisdiction over section 504, ADA, torts and
18  violations of state and federal law and was systematically violated by the SEHO as they would
19  not allow issues other than the MDUSD's. But, the Hearing officer Pastorino then ordered some
20  of father's resolutions to be part of the issues to be decided regarding assessment reimbursement.

21     28)   Pursuant to California education code section 56507(d), the SEHO hearing
22  decision must indicate the extent to which each party has prevailed on each issue. Upon
23  examination or discovery, it shall be shown that Mikey/students issues #1-11, (504, ADA, torts,
24  state and federal violations) were intentionally sabotaged by the SEHO in conspiracy with the
25  MDUSD to violate the state and federal contractual laws designed to protect disabled students
26  due process rights, in that by violating their contractual duties owed to student they discriminated
27  against student Mikey based upon his disability and, his assurances to have his issues heard and
28  ruled upon.

1       29) The MDUSD, subsequently benefitted through their state and federal contractual

2  violations against Mikey to protect themselves from any wrong doings of permitting Mikey no

3  education the 2002/2003 school year as father's issues 1-11 were systematically blocked by the

4  SEHO and MDUSD. Student Mikey has suffered repeated contractual violations from the

5  MDUSD. Rare is the case in which one shall find a more orchestrated assault upon a student by

6  the professionals of their chosen careers. Since the first grade these professionals have been on

7  notice of Mikey's autism spectrum disorder. Yet, he was allowed to suffer the entire 02/03

8  school year without education given the MDUSD's position that the IEP team did not agree with

9  the home and hospital prescription by his doctor or that the prescription did not meet their criteria

10  for services (as disproved by MDUSD program specialist Connie Cushing testimony under oath

11  that it did meet the criteria)) or that they did not have a home and hospital policy in place (as

12  documented by MDUSD superintendent Mildred Brown letter)or that the MDUSD independent

13  study policy was actually the home and hospital policy that is consistent with state law( as

14  testified to by ADR Ken Ferro, under oath) Or, that SEHO hearing officer Pastorino quoted on

15  the record that "we deal with special education" "we deal with ADA" when asked about the

16  scope of SEHO jurisdiction but refused to acknowledge student's issues 1-11. Yet in previous

17  years, this disabled student personally signed a independent study contract with his parent and a

18  MDUSD administrator and received special education in the home without the IEP team

19  convening.

20       30) On 1/13/03, MDUSD attorney Estes filed ( confidential 10 day offer of settlement

21  before hearing) offering payment of $4275.00 for father's case SN02-02868 for father's special

22  education advocate which the MDUSD hand picked and arranged for father on 8/13/01, (after

23  SEHO faxed father their own advocate list to father to no avail) or 2 days after SEHO ordered

24  father's decision was due on 8/15/01 as Mikey's guardian and on the eve of the 8/14/01

25  educational contract sited in the SEHO 4/30/03 (SN03-00076) decision as issue #4 and the

26  conspiracy to dupe father out of the scheduled due process hearing off calendar since 1999

27  (SN99-1431) set for 8/16/01 filed by parent siting it had no merit in which she sought test makers

28  instructions and testing protocol on Mikey from the MDUSD. Subsequently, Mikey regressed

1  further as a result of MDUSD state and federal contractual violations.

2     31)  On 8/14/01, the MDUSD ADR Ken Ferro and the district's attorney Estes duped
3  father out of this scheduled due process hearing SN99-1431 in lieu of a educational contract for
4  Mikey signed on 8/14/01 (attached as exhibit **#4)** to implement services they were ordered to
5  provide 1 full year earlier but refused to do so. MDUSD subsequently violated the additional
6  terms of the contract in that they systematically  refused to assess for the autism disorder which
7  exacerbated Mikey's condition where upon he vomited repeatedly at school based on his
8  disability which was later purposely hidden from his MDUSD file At all times mentioned herein,
9  Brown and Ferro were aware of the MDUSD federal consent decree contract to eliminate
10  program barriers for disabled students and allowed Mikey to remain out of school with no
11  education for the entire 2002/2003 school year. Subsequently, it was concluded by order of a
12  state judge in California that Mikey suffered  from the autism disorder after Mikey had lost years
13  of irreplaceable education.

14     32 )   Case **SN03-00778** was MIKEY PETERSEN v. MDUSD in which the parties
15  partially resolved without hearing.

16     33 )  Pursuant to Ryan's special education contract # SN03-01885 item "12", the
17  contract was entered into, and shall be construed and interpreted  in accordance with the laws of
18  the state of California and the United States.

19     34) Item"F" states the process in which parent was to be reimburse for private school
20  tuition costs and related services. The MDUSD has breached this portion of the contract and has
21  refused to abide by the terms. On 9/16/05, the MDUSD issued check # 00841767 in the sum of
22  $2528.00.

23

24     35)  On 9/27/05 father notified the MDUSD in writing that the check was lost and
25  requested the MDUSD stop payment and issue a replacement check. The MDUSD refused and
26  the reimbursement amount has not been paid to father. Subsequently, the MDUSD wrote father
27  and demanded father was in breach of contract concluding a actual unresolved contract dispute.
28  Additionally, an outstanding balance on the educational contract is due father in the approximate

1    amount of $1000.00. as reimbursement payments were trailing 30 days behind father's initial out

2    of pocket tuition. The MDUSD contends it has met it's obligation and has refused to honor the

3    terms of the federal contract. On 3/25/06, father wrote defendant BROWN and superintendent

4    McHenry regarding the lost check and asked for help because the special education service

5    provider was threatening father with a court action ultimatum if he did not pay for the services.

6    Brown and Ferro have acted with deliberate indifference by violating the state and federal

7    contract laws which has caused Ryan additional educational set backs and pain and suffering to

8    all plaintiff's.

9           36) Items "G" and "H" are contract terms relating to Ryan's IEP meetings. Ryan's

10   annual IEP was to be held on or before 5/30/05 to discuss Ryan's placement and services for the

11   2005-06 school year. Father forwarded a IEP request to the MDUSD on 5/19/05 and received no

12   response. Furthermore, the MDUSD was aware there was a change in Ryan's programming

13   needs to develop an alternative appropriate program and placement due to his hearing loss but

14   subsequently violated the contractual terms.

15         37 ) On 9/6/05, the MDUSD finally held a belated IEP for Ryan in violation of his

16   contract terms and after the entire school year (including extended school year) had ended. With

17   all releases for communication expired to Ryan's former private school and service providers

18   MDUSD ADR, Ken Ferro documented in the conference notes that Ryan's former private school

19   principle stated she did not want Ryan back as a student. Father contends, the valuable student

20   referrals from Ferro to Ryan's former private school principle were a major factor in the effective

21   sabotaging of Ryan's education in that this principle did not want to anger ADR Ferro and

22   receive no further student referrals from the MDUSD. Ferro caused Ryan educational delays and

23   pain and suffering to all the plaintiff's through violations of state and federal contract law.

24        38) MDUSD ADR, Ken Ferro effectively discriminated against student Ryan based

25   upon his disability and contract by eliminating student's opportunity to maintain the status quo of

26   the private school placement or it's equivalent commensurate with students unique disability

27   needs. Student has suffered personal injury as a direct result of the MDUSD's Ken Ferro actions

28   that will have a lifelong effect in life skills and future employment. MDUSD violated state and

1   federal contract laws each year until the fifth grade by not providing services to Ryan to re
2   mediate his disabilities as a low incidence student and Ryan substantially regressed. The
3   MDUSD acted with deliberate indifference.

4       39 )    ADR Ferro, also contributed to the successful eviction of father and, Mikey and
5   Ryan through the SEHO contract in that Ryan's special education speech pathologist and sign
6   language instructor were financially benefitting from the special education direct instruction via
7   the contract terms in father's home for several months. Father's former landlord is related to the
8   MDUSD special education department as a 25 year veteran (former employee)and receives a
9   pension from the MDUSD. During father's efforts to force Ferro to comply with Ryan's SEHO
10  contract and maintain the status quo of a private school placement, Ferro repeatedly attempted
11  service of documents upon father's home which the landlord was made aware of which created
12  animosity for father and children between landlord due to Ferro's refusal to abide by the terms of
13  Ryan's special education SEHO contract. Shortly thereafter, landlord initiated the eviction
14  process upon father in which he was forced to vacate the residence. Administrator BROWN was
15  made aware of the contract dispute in addition to the MDUSD parent liaison office created by the
16  federal consent decree to eliminate program barriers by the district and no action was taken.

17

18                          FIRST CLAIM FOR RELIEF

19          (AGAINST BROWN and ADR FERRO (in their individual and official capacity)

20              FOR VIOLATIONS OF STATE AND FEDERAL CONTRACT LAWS

21      40 )    Plaintiff's re allege and incorporate by reference as though fully set forth herein,

22  paragraphs 1-39 inclusive of this complaint as follows:

23  For violations of MDUSD federal consent decree contract.

24  For violations of state and federal contract laws.

25  For violations of A.D.A. and section 504 contract laws

26  For violations of 42USC 1983 due process and equal protection contract obligation.

27  For violations of 42 U.S.C. 1985 contract provisions.

28  For violations of 29 USC 794 contract obligations

1  For violations of public contract codes and public policy contracts.

2  For retaliation as a direct violation of above stated contract laws

3

4

5                          SECOND CLAIM FOR RELIEF

6  (AGAINST SEHO AND VINCENT PASTORINO (in their official and individual capacity)

7        FOR VIOLATION OF STATE AND FEDERAL CONTRACT LAWS)

8        41)    Plaintiff's re allege and incorporate by reference as though fully set forth herein,

9  paragraphs 1-39 inclusive of this complaint as follows:

10  For violations of State and Federal contract laws

11  For violations of due process and equal protection contract laws

12  For violations of ADA and section 504 contract laws.

13  For violations of 42 U.S.C. 1983 due process and equal protection contract provisions.

14  For violations of 42 U.S.C. 1985 contract provisions.

15  For violations of public contract code and public policy provisions.

16

17

18                          THIRD CLAIM FOR RELIEF

19  (AGAINST BROWN AND ADR. FERRO (in their official and individual capacity)

20        FOR VIOLATIONS OF STATE AND FEDERAL CONTRACT LAWS

21        42)    Plaintiff's re allege and incorporate by reference as though fully set forth herein,

22  paragraphs 1-39 inclusive, of this complaint as follows:

23  For violations of MDUSD federal consent decree contract

24  For violations of state and federal contract laws.

25  For violations of ADA and section 504 contract laws.

26  For violations of 42 USC 1983 due process and equal protection contract obligations.

27  For violations of 42 U.S.C. 1985 contract provisions.

28  For violations of 29 USC 794 contract obligations.

1    For violations of public contract code and public policy contracts

2    For retaliation as a direct violation of above stated contract laws.

3

4        DAMAGES SUSTAINED AS A RESULT OF THE ABOVE REFERENCED CLAIMS

5      43)    As a direct and proximate result of the acts and omissions in this complaint, students

6    have suffered substantial educational and developmental losses, causing permanent decline in

7    their future development, which adversely impacts their future earnings and earning potential,

8    and which has resulted in humiliation, pain and suffering, and damage to their social

9    development and interpersonal relations, in a amount subject to proof at trial. With respect to

10    those claims based upon violations of the United States Constitution, students were deprived of

11    their constitutional rights.

12      44)    As a direct and proximate result of the acts and omissions alleged in this

13    complaint, student's parent have incurred legal fees, and pain and suffering, lost wages and will

14    incur substantial expenses for student's education, development, future support, and lost wages,

15    all in a amount subject to proof at trial. With respect to those claims based upon violations of the

16    United States Constitution, student's parent was deprived of constitutional rights.

17      45)    As a direct and proximate result of the acts and omissions alleged in this complaint,

18    students and students parent will continue to be damaged and suffer irreparable harm unless

19    defendants are enjoined.

20

21                         PRAYER FOR RELIEF

22    WHEREFORE, all plaintiff's respectfully pray that this court:

23      46)             On plaintiff's first claim for relief,

24    a) Declare that the defendants in their individual and official capacity have violated the stated

25    contract laws therein.

26    b) Award compensatory and punitive damages according to proof.

27    c) Order injunctive and declaratory relief in the removal of the unlawful assault and battery

28    charges against student Mikey's permanent file and order students exempt from state exit exam.

1  Order injunctive and declaratory relief to prevent further retaliation against student.

2       47)      On plaintiff's second claim for relief,

3  a) Declare that the defendants in their official and individual capacities have violated the stated

4  contract laws therein.

5  b) Award compensatory and punitive damages according to proof.

6       48)      On Plaintiff's third claim for relief,

7  a) Declare that the defendants in their individual and official capacities have violated the stated

8  contract laws therein.

9  b) Award compensatory and punitive damages according to proof.

10  c) Order students exempt from state exit exam. Order injunctive and declaratory relief to prevent

11  further retaliation against student.

12       49)      On all claims for relief:

13  a) Award for costs related to costs of suit herein and reasonable attorney fees.

14  b) Award for such other and further relief as the court deems just and proper.

15

16  Dated : April 27, 2007

17  Respectfully submitted

18  *[signature]*

19  Michael S. Petersen PRO SE

20

21

22

23

24

25

26

27

28

## COMPROMISE AND RELEASE AGREEMENT

### *Ryan Petersen v Mt. Diablo Unified School District*
### Special Education Hearing Office Case Number SN 03-01885

    This Compromise and Release Agreement ("Agreement") is between Randi and Michael Petersen ("Parents"), on behalf of Ryan Petersen ("Ryan"), and the Mt.Diablo Unified School District ("District") who in consideration of the promises made herein, agree as follows:

1.    Nature and Status of Dispute

    A. Parents initiated due process on or about August 28, 2003. Parents alleged the District failed to provide a free appropriate public education to Ryan for the 2000-01, 2001-02, 2002-03 school year.

    B. The District contends that Ryan's IEP dated October 17, 2003, constitutes a free appropriate educational program ("FAPE") in the least restrictive environment for the 2003-04 school year and that the District provided Ryan a free appropriate public education for the 2000-01, 2001-02, 2002-03 and the 2003-04 school years.

    C. The purpose of this Agreement is to resolve any and all disputes under the IDEA, causes of action, and claims, known and unknown, which may exist concerning Ryan's educational program, placement, related services, assessments, compensatory education, reimbursement for the past, present and future, known and unknown, up to and including the 2004-05 school year (including all extended school years (ESY).)

2.    Mutual Compromise Agreement

    Each party, in consideration of the promises and concessions made by the other, hereby compromises and settles any and all demands, obligations, or causes of action under the Individuals with Disabilities Education Act which that party has regarding Ryan's educational program, placement, related services, reimbursement, compensatory education and FAPE for the 2000-01, 2001-02, 2002-03, 2003-04 and 2004-05 school year (including all extended school years).

    A. The District agrees to provide the following for Ryan as his educational placement and compensatory education for the remainder of the 2003-04 school year (including ESY 2004):

        1. Contract with Lindamood-Bell for Ryan's Language and reading services including pre and post testing at the Danville site from January 2004 through August 30, 2004 (up to 370 hours of services) or other mutually agreed upon provider who is qualified and trained to provide language and reading instruction using the Lindamood-Bell or equivalent technique. District agrees

Page 1 of 7

to reimburse Parents for transportation up to the total amount of $5,000 (for the February 2004 through August 2004 time period) to/from Lindamood Bell for the remainder of the 2003-04 school year (including ESY 2004). Parents will submit proof of payment for transportation to the District on a monthly basis. District will reimburse Parents within 30 days of receipt of mileage, paid invoices and/or receipts.

2. Independent Assistive Technology (AT) assessment by a mutually agreed upon qualified evaluator to be completed prior to the May 2004 IEP meeting. District will reimburse Parents for cost of AT assessment within 30 days of receipt of paid invoices and/or canceled checks;

3. Independent Occupational Therapy (OT) assessment by a mutually agreed upon qualified evaluator to be completed prior to the May 2004 IEP meeting. District will reimburse Parents for cost of OT assessment within 30 days of receipt of paid invoices and/or canceled checks;

4. Independent Assessment by a mutually agreed upon qualified Assessor of the Hearing Impaired to determine Ryan's sign language instruction services and other services to address his hearing impairment. Assessment to be completed prior to the May 2004 IEP meeting. District will reimburse Parents for cost of assessment within 30 days of receipt of paid invoices and/or canceled checks;

5. AT software and services (not to exceed 20 hours), as recommended in the AT assessment from May 2004 through August 2004.

6. District agrees to provide Ryan (within 30 days of execution of this Agreement) with a laptop computer with Pentium IV processor, 80 gigabyte hard-drive with floppy disc drive, CD-ROM drive, battery and power cord and an FM micro-link system through August 2004. If Ryan is no longer a resident of the Mt.Diablo Unified School District, Parents will return this equipment within seven (7) days.

7. Occupational therapy services, as recommended by the OT assessment (not to exceed a total of 30 hours) from May 2004 through August 2004.

8. Teacher of the Hearing Impaired/Sign Language services, as recommended by the Assessment (not to exceed 50 hours) from May 2004 through August 2004.

9. Parents agree to execute releases and exchanges of information and documents between the District and Lindamood Bell and any other the individuals who assess and/or provide services to Ryan.

10. The District will convene Ryan's IEP meeting in May 2004 to discuss the OT, AT and Hearing Impaired assessments identified in Section 2.A. (2-4) of this Agreement, develop goals and objectives from the assessments and determine whether additional assessments are necessary for the August 2004 triennial review. If additional assessments are determined necessary by the IEP team, Parents agree to provide written consent to the assessments. The assessment(s) will be conducted by mutually agreed upon qualified assessor(s) in areas of need not already covered by the independent assessments

mentioned in this Agreement. Parents waive Ryan's triennial review due date until August 2004.

B. The parties agree Parents will submit Ryan's application for enrollment to Raskob Learning Center ("Raskob") for the 2004-05 school year by January 31, 2004.

C. The District will convene another IEP meeting in August 2004. The purpose of the August 2004 IEP meeting will be to review Ryan's progress, develop new goals and objectives (if needed), and develop his program for the 2004-05 school year (including ESY 2005). Parties agree that the triennial review will be conducted at the August 2004 IEP. Parents agree to provide written consent to an assessment plan (if determined necessary by the IEP team) at the May 2004 IEP.

D. If Ryan is a resident of the Mt.Diablo Unified School District and if Ryan is accepted at Raskob for the 2004-05 school year, the District will:
    1. Contract with Raskob for Ryan's tuition for the regular school day during the 2004-05 school year;
    2. Provide for AT (not to exceed 5 hours per month unless otherwise agreed to by the parties);
    3. Provide for OT (not to exceed 5 hours per month unless otherwise agreed to by the parties);
    4. Provide for services (including but not limited to sign language services, as appropriate) from a Hearing Impaired service provider (not to exceed 10 hours per month unless otherwise agreed to by the parties);
    5. Provide for Speech and Language services (not to exceed 6 hours per month unless otherwise agreed to by the parties);
    6. Provide Ryan with a laptop computer with Pentium IV processor 80 gigabyte hard-drive with floppy disc drive, CD-ROM drive, battery and power cord and an FM micro-link system during the time that Ryan is a resident in the Mt.Diablo Unified School District. If Ryan moves out of the Mt.Diablo Unified School District, Ryan will return this equipment within seven (7) days.

Parents agree that if Ryan is placed at Raskob for the 2004-05 school year, the educational program constitutes a free appropriate public education and Parents will not challenge the provision of FAPE for the 2004-05 school year (including ESY 2005).

E. If Ryan is a resident of the Mt.Diablo Unified School District and is not accepted at Raskob for the 2004-05 school year, District agrees to contract with another mutually agreed-upon non-public school for the 2004-05 school year and provide for the related services identified in Section 2.D (2-6) of this Agreement.

F. If Ryan is a resident of the Mt.Diablo Unified School District and if parties agree that no appropriate NPS is available for Ryan for the 2004-05 school year, then Parents

Page 3 of 7

agree placement for the 2004-05 school year will be made pursuant to a unilateral private school placement agreement and release the District of any obligations to supervise Ryan's educational program while Ryan is privately enrolled. District will reimburse Parents for up to $12,870.00 for tuition costs provided by a school and up to $9,000.00 for related services provided by mutually agreed upon providers and up to $3,000.00 for related transportation. Reimbursement will be made within 30 days of District's receipt of paid invoices and/or canceled checks up to that amount for the 2004-05 school year (including ESY 2005). Parents agree to execute releases and exchanges of information and documents between the District and all of Ryan's service providers.

G. The parties agree that any catastrophic change in Ryan's educational programming needs or Raskob's inability to continue to provide services to Ryan may require the District to convene an IEP meeting and develop an alternative appropriate program and placement.

H. If Ryan is a resident of the Mt.Diablo Unified School District for the 2005-06 school year and parents are seeking educational services from Mt.Diablo Unified School District, Ryan's annual IEP meeting will be held on or before May 30, 2005 to discuss Ryan's placement and services for the 2005-06 school year.

I. Parties agree that District is not responsible for transportation other than that agreed to in this Agreement.

J. If Ryan attends Raskob for the 2004-05 school year, District agrees to either provide transportation for Ryan to and from Raskob or reimburse Parents for transportation at 36 cents per mile to/from (one round trip) Raskob and agreed upon related service providers through August 2005. Parent(s) will submit a mileage reimbursement form to the District on a monthly basis. Parties agree that District is not responsible for transportation other than that agreed to in this Agreement.

K. Within 30 days of District's receipt of paid invoices and/or canceled checks, District agrees to reimburse Parents for an auditory processing evaluation and sound therapy services in an amount not to exceed $5,875. District also agrees to reimburse parent for past transportation costs to and from sound therapy services not to exceed $172.00 within 30 days of the execution of this agreement.

L. Parents on behalf of themselves and Ryan agree the educational program and services outlined in this Agreement constitute FAPE for Ryan through the 2004-05 school year (including ESY 2005) and agree not to file any causes of action under the IDEA challenging FAPE.

M. Parents agree to dismiss with prejudice their request for a due process hearing, *Ryan Petersen v. Mt. Diablo Unified School District*, SN 03-01885, within three calendar days after execution of this Agreement by all parties.

3.  Mutual General Release

    Each party, in consideration of the promises and concessions made by the other, hereby compromises and settles any and all past, present and future claims, demands, obligations, or causes of action which that party has against the other party, and the other party's predecessors and successors in interest, heirs, assigns, officers, directors, agents, employees, partners, and trustees, regarding the provision of an education, including all rights and responsibilities under the Individuals with Disabilities Education Act and the present dispute, *Ryan Petersen v. Mt. Diablo Unified School District*, SN 03-01885 through the 2004-05 school year (including ESY 2005).

4.  Unknown Claims

    A.  Parents, on behalf of themselves and Ryan, waive all rights, benefits and remedies under California Civil Code section 1542 to the extent it applies to their claims in connection with this Agreement.

    B.  Parents, on behalf of themselves and Ryan, acknowledge their understanding of the provisions of section 1542 of the California Civil Code, including the following provision of California Civil Code section 1542:

        A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

    C.  Parents on behalf of themselves and Ryan, understand and acknowledge the significance and consequence of this waiver of California Civil Code section 1542, as follows:

        (1)  they may have additional claims and attorneys' fees or costs concerning Ryan's education arising or occurring through the 2004-05 school year (including ESY 2005), of which they are not now aware;

        (2)  they may not make a further demand for any such claims, fees, or costs upon the District or its predecessors, successors, boards, employees, or agents; and

      (3)    they extend this waiver to include now unknown or later discovered claims, fees, or costs, arising prior to the end of the 2004-05 school year (including ESY 2005)

5.    Conditions of Execution

Each party acknowledges and warrants that the party's execution of this Agreement is free and voluntary. Each of the signatories warrants that he or she is authorized to sign this Agreement on behalf of the party for whom he or she signs and binds that party to the terms of this Agreement.

6.    Agreement Contingent Upon District Governing Board Approval

This Agreement is contingent upon District Governing Board approval by February 24, 2004. On February 25, 2004, District will notify Parents as to whether the Agreement has been approved.

7.    Execution of Other Documents

Each party to this Agreement shall cooperate fully in the execution of any and all other documents and the completion of any additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

8.    Nonadmission

This Agreement is not, and shall not be construed as, an admission of liability, fault or wrongdoing of any kind by any of the parties hereto.

9.    Costs and Attorneys'/Advocate's Fees

The parties hereto agree to bear their own costs and attorneys' and advocate's fees, and no party shall be deemed to be a prevailing party for any purposes with respect to matters up to and including the execution of this Agreement.

10.    Entire Agreement

This Agreement contains the entire Agreement between the parties. This Agreement supersedes any and all prior agreements and understandings, written or oral, between the parties. No other promises, Agreements, or statements shall be binding unless signed by the person or entity to be bound.

11.    Effective Date

This Agreement shall be effective immediately upon execution by the parties.

12. Governing Law

This Agreement is entered into, and shall be construed and interpreted in accordance with, the laws of the State of California and the United States.

13. Severability

If any provision of this Agreement is held to be invalid or unenforceable by a court of competent jurisdiction, that determination shall not invalidate or render unenforceable any other provision of this Agreement.

14. Confidentiality

This Agreement shall be maintained as a confidential document by all parties, except as required by law.

15. Execution by Counterparts and by Facsimile Transmittal

The parties agree that this Agreement may be executed by facsimile transmittal and in counterparts and shall be as valid and binding as if all parties signed the same copy.

Dated: 2/4/04

Randi Petersen, Parent

Dated: 2/4/04

Mike Petersen, Parent

Dated: _____

Mildred D. Browne, Ed.D.
Assistant Superintendent, Pupil Services and
Special Education
Mt. Diablo Unified School District

APPROVED AS TO FORM:

Dated: _____

Kimberly Borab Schulist
Miller Brown & Dannis
Attorney for Mt. Diablo Unified School District

A:SettlementAgreement04.0204

Page 7 of 7

Michael Petersen
P.O. Box 273363
Concord, CA 94527
(925)825-5769 ph/fax

January 13, 2003

Miller, Brown & Dannis        Special Education Hearing Office
71 Stevenson St., 19th Floor      3200 Fifth Avenue
San Francisco Ca. 94105       Sacramento Ca. 95817
fax (415)543-4384          fax (916)739-7066

Re: Michael Petersen v. M.D.U.S.D. SN02-02868

Dear Mrs. Estes, and S.E.H.O.

This will serve as my motion for a pretrial hearing to determine the scope of the hearing offices legal authority over petitioner's request for compensatory and punitive monetary damages under Section 504 of the Rehabilitation Act, IDEA and ADA as stated herein.

This letter is also to inform you that I will be represented by counsel at the due process hearing in this matter. The following is a timely statement of the issues, and proposed resolution, to be presented at hearing should the parties not reach agreement in requested mediation.

ISSUES:

M.D.U.S.D. did not provide Mikey with a F.A.P.E. during the 1999/2000, 2000/2001, 2001/2002, and (proposed) 2002/2003 school years by violating the following:

1) 20 USC § 1401 (16), "...developmental, corrective and other support services...as may be required to assist a child with a disability to benefit from special education and includes the earlier identification and assessment of disabling conditions in children"

2)( Prior written notice) 20 USCS §1415 (b)(3)(B)(c)(1)(2)(3)(4)(5); 34CFR § 300. 504 "(i) proposed to initiate or change...(ii) refuses to initiate or change, the identification, evaluation, or educational placement of the child or the provision of a free and appropriate public education to the child".

3) " Content of notice," 34 CFR 300.505," "(a) the notice under §300.505 must include:(2) a description of the action proposed or refused by the agency, an explanation of why the agency proposes or refuses to take action, and a description of any options the agency considered and the reasons why those options were rejected : a description of each evaluation procedure, test, record,

$1^1$     $2$ $''$

or report the agency uses as a basis for the proposal or refusal, and (4) a description of any other factors which are relevant to the agencies proposal or refusal".

4) 34CFR § 300 .533("placement procedures") "(a) In interpreting evaluation data and in making placement decisions, each public agency shall: (1) draw upon information from a variety of sources...(2) insure that information obtained... is documented and carefully considered...(3) insure that the placement decision is made by a group of persons... knowledgeable about the child... and placement options...(4) insure that the placement decision is made in conformity with the least restrictive environment in accordance with § 300.340-300.349 of subpart (c) (emphasis added);

5) 20 U.S.C. § 1401(20) (F); 34CFR § 300.346 by failing to provide additional services to achieve the failed goals in Mikey's I.E.P;

6) 1997 IDEA Amendments Title 1 §101-20USC 1400 § 602(2), "assistive technology service-(A) the evaluation of the needs of the child..."

7) 42 U.S.C. § 12101 - The interference of equal opportunity for Individuals with Disabilities Act.

8) 42 U.S.C. § 12203, The prohibition or retaliation and coercion against any individual who has opposed any act or practice made unlawful by §12101.

9) 42 U.S.C. § 12131. The prohibition to discriminate against any disabled person who procures public services.

10) 29 U.S.C. § 794, The prohibition of discrimination against any individuals who are denied the benefits of, or are subjected to discrimination under any program or activity receiving federal financial assistance.

11) Violation of 42 U.S.C.S. section #12112, 2132, 1983, 1985. California Torts §43-59, Reinstatement (second) of Torts § 46,870; 14th Amended constitution

RESOLUTION:

1) Assessment for independent P.D.D. evaluation at public expense with parents choice of testing site and implementing recommendations;

2) Completion of assistive technology assessment at parents choice of testing site and implementing recommendations.

3) Completion of independent occupational therapy evaluation at public expense with parents choice of testing site and implementing recommendations.

4) Behavioral and socialization training per M.D.U.S.D. own experts recommendations including

Michael Petersen
P.O. Box 273363
Concord, CA 94527
(925)825-5769 ph/fax

January 27, 2003

Miller, Brown & Dannis                Special Education Hearing Office
71 Stevenson St., 19th Floor          3200 Fifth Avenue
San Francisco Ca. 94105              Sacramento Ca. 95817
fax (415)543-4384                     fax (916)739-7066

Re: M.D.U.S.D. V. Michael Petersen SN03-00076

Dear Mrs. Estes, and S.E.H.O.

This will serve as my motion for a pretrial ruling to determine the scope of the hearing offices
legal authority over my request for compensatory and punitive monetary damages under Section
504 of the Rehabilitation Act, IDEA and ADA as stated herein.

This letter is also to inform you that I will be represented by counsel at the due process hearing in
this matter. The following is a timely statement of the issues, and proposed resolution, to be
presented at hearing should the parties not reach agreement in mediation.

ISSUES:

M.D.U.S.D. did not provide Mikey with a F.A.P.E. during the 1999/2000, 2000/2001,
2001/2002, and (proposed) 2002/2003 school years by violating the following:

1) 20 USC § 1401 (16), "...developmental, corrective and other support services...as may be
required to assist a child with a disability to benefit from special education and includes the
earlier identification and assessment of disabling conditions in children"

2)( Prior written notice) 20 USCS §1415 (b)(3)(B)(c)(1)(2)(3)(4)(5); 34CFR § 300. 504 "(i)
proposed to initiate or change...(ii) refuses to initiate or change, the identification, evaluation, or
educational placement of the child or the provision of a free and appropriate public education to
the child".

3) " Content of notice," 34 CFR 300.505," "(a) the notice under §300.505 must include:(2) a
description of the action proposed or refused by the agency, an explanation of why the agency
proposes or refuses to take action, and a description of any options the agency considered and the
reasons why those options were rejected : a description of each evaluation procedure, test, record,

11 $\frac{}{3}$ //

or report the agency uses as a basis for the proposal or refusal, and (4) a description of any other factors which are relevant to the agencies proposal or refusal".

4) 34CFR § 300 .533("placement procedures") "(a) In interpreting evaluation data and in making placement decisions, each public agency shall: (1) draw upon information from a variety of sources...(2) insure that information obtained... is documented and carefully considered...(3) insure that the placement decision is made by a group of persons... knowledgeable about the child... and placement options...(4) insure that the placement decision is made in conformity with the least restrictive environment in accordance with § 300.340-300.349 of subpart (c) (emphasis added);

5) 20 U.S.C. § 1401(20) (F); 34CFR § 300.346 by failing to provide additional services to achieve the failed goals in Mikey's I.E.P;

6) 1997 IDEA Amendments Title 1 §101-20USC 1400 § 602(2), "assistive technology service-(A) the evaluation of the needs of the child..."

7) 42 U.S.C. § 12101 - The interference of equal opportunity for Individuals with Disabilities Act.

8) 42 U.S.C. § 12203, The prohibition or retaliation and coercion against any individual who has opposed any act or practice made unlawful by §12101.

9) 42 U.S.C. § 12131. The prohibition to discriminate against any disabled person who procures public services.

10) 29 U.S.C. § 794, The prohibition of discrimination against any individuals who are denied the benefits of, or are subjected to discrimination under any program or activity receiving federal financial assistance.

11) Violation of 42 U.S.C.S. section #12112, 2132, 1983, 1985. California Torts §43-59, Reinstatement (second) of Torts § 46,870; 14th Amended constitution

RESOLUTION:

1) Assessment for independent P.D.D. evaluation at public expense with parents choice of testing site and implementing recommendations;

2) Completion of assistive technology assessment at parents choice of testing site and implementing recommendations.

3) Completion of independent occupational therapy evaluation at public expense with parents choice of testing site and implementing recommendations.

4) Behavioral and socialization training per M.D.U.S.D. own experts recommendations including

participation in pragmatic language skill training.

5) To file a complaint for compensatory and punitive monetary damages against M.D.U.S.D. as a public entity, MDUSD employees and individuals in compliance with all state and federal special education rights and laws under IDEA, ADA and section 504 of the Rehabilitation Act and any matter relating to the identification, evaluation or educational placement of the child, or the provision of a free appropriate public education to such child in any forum.

6) M.D.U.S.D. to pay all fees of any nature related to the due process hearing including but not limited to attorney fees, advocacy fees, loss of wages, etc, and /or district court in the amounts that are at this time undetermined.

7) MDUSD to provide payment for services of Linda Mood- Bell Phoneme sequencing program, (lips) designed to develop written language skills in children with auditory processing disorders, provide transportation to and from said program including any follow up recommendations made by program until child reaches grade level skills in above said disorder.

8) MDUSD to provide payment for services of the Tomatis Therapeutic Listening Method (sound therapy) of psycho acoustically modified music designed to improve aforementioned auditory processing disorder including any follow up recommendations thereafter until child reaches grade level skills in said disorder.

9) MDUSD to provide payment for private school placement of parents choice specifically designed to address the auditory processing disorder and sensory related disabilities including transportation to and from instruction site until child reaches grade level skills.

Sincerely,

Mike Petersen

c.c.
Lynn Hansen, Mediator, fax (510)655-7470
Ken Ferro fax 674-0667



# MILLER BROWN & DANNIS

ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION

David G. Miller
Gregory J. Dannis
Cesar A. Flanagan
Marilyn J. Cleveland
Charles S. Jacinqert
Sandra Wolfuer
Joan Birdt
Peter W. Stamnes
Mark W. Kelley
Laurie E. Reynolds

Sue Ann Salmon Evans
Janet L. Mueller
Elizabeth A. Estes
Gregory J. Rolen
Daniel A. Ojeda
Enrique M. Vassallo
J. Tyson Henderson
Jeanne L. Yamanaka
Nicole A. Clark
Christine A. Cok
Melissa M. Packer
Kenneth S. Levy
Joseph A. Lepera
John R. Yeh
Donald A. Velez
Chad I. Graff
Benjamin Y. Kim

Of Counsel
Priscilla Brown
Nancy B. Bourne

[illegible]
[illegible]
[illegible]

Margaret R. O'Donnell
1939-1998

71 Stevenson Street
Nineteenth Floor
San Francisco, CA 94105
Tel: 415/543-4111
Fax 415/543-4164

2350 Via Tejon
Suite 3A
Palos Verdes, CA 90274
Tel: 310/571-6857
Fax: 310/373-6808

Santa Cruz/Santa Clara
Monterey/San Benito, CA
Tel: 831-663-0470

Los Angeles, CA
Tel: 310/602-1123

Costa Mesa, CA
Tel: 714/662-0577

San Diego, CA
Tel: 619/595-0202

www.mbdlaw.com

August 14, 2001

## VIA FACSIMILE (925) 820-1570 & U.S. MAIL

Michael Petersen, Sr.
P. O. Box 273363
Concord, CA 94527

Re: *Michael Petersen v Mt. Diablo Unified School District,*
SN 1431-99;
Our file 5100.1.047.9

Dear Mr. Petersen,

This letter is to confirm our discussion of today and the agreements made during that conversation. You, along with your Educational Consultant, Deborah Bloom, MA, have requested that the District contract with Dr. Arlee Maier to review her recommendations for Michael's current program and ensure they are being implemented appropriately and effectively. (See report dated 10/25/2000.) We have agreed, subject to any recommendations for modification by Dr. Maier, to implement her recommendations.

Specifically, we have agreed to have Dr. Maier review the behavior management program to provide support to Michael's teacher for the implementation of a positive behavior plan. (#2 in Dr. Maier's recommendations list.) Secondly, we have agreed, subject to any recommendations for modification by Dr. Maier, to ensure that her recommendations for multisensory instruction are being implemented, along with 1:1 reading intervention by a professionally trained reading expert. (#6 in Dr. Maier's recommendations list.) Thirdly, we have agreed, subject to any recommendations for modification by Dr. Maier, to provide a fully dedicated computer with assistance provided to Michael to use it as a tool for organizing and completing written assignments. (#8 in Dr. Maier's recommendations list.) As I informed you, the District will contact Dr. Maier immediately to discuss her availability. I will contact you as soon as possible with her response.

You have asked and the District has agreed to fund independent assessments. You have requested a neuropsychological assessment of Michael in the future to take place at Children's Hospital. This evaluation will be completed when his emotional state allows for an accurate assessment of his functioning. You have requested a

Michael Petersen, Sr.
August 14, 2001
Page 2

referral to the PDD Clinic at UCSF to rule out suspected disabilities, such as
Asberger's, Autism, SID, and Tourettes Syndrome. The District has agreed to contract
with Children's Hospital and/or UCSF upon Mr. Peterson's request to do so. If
unavailable, the District has agreed to fund a neuropsych assessment with a mutually
agreed upon provider.

I hope this clarifies our conversation, and look forward to continuing to work
with you regarding Michael's program.

Very truly yours,

MILLER BROWN & DANNIS

*Elizabeth Estes/ch*

Elizabeth A. Estes

EAE:ch

E:\Wp\Clients\5100\10479\Peterscn.2.01.0814.wpd