1  ALFRED R. BUZO, SBN 177377
   BUZO & HERNANDEZ, LLP
2  37 East Hedding Street
   San Jose, CA  95112
3  (408) 971-4303 Telephone
   (408) 971-4393 Facsimile
4
   Attorney for Plaintiffs
5

6
                    UNITED STATES DISTRICT COURT
7
                  NORTHERN DISTRICT OF CALIFORNIA
8

9

10 RANDI PETERSON, MICHAEL PETERSON, )     No. C 04 010059 MHP
   and MICHAEL PETERSON, JR.         )
11                                   )     **AMENDED    COMPLAINT    FOR**
        Plaintiffs,                  )     **DAMAGES**
12                                   )     ———————————————————
     v.                              )
13                                   )     1. **Violation of Rehabilitation Act of 1973**
   MOUNT   DIABLO   UNIFIED  SCHOOL  )        **Against Mount Diablo**
14 DISTRICT, MILDRED BROWN, individually )  2. **Violation of Americans with**
   and  in  her  official  capacity,  CONNIE )   **Disabilities Act Against Mount Diablo**
15 CUSHING,  individually  and  in  her  official )  3. **Violation of 42 U.S.C. § 1983**
   capacity, KEN FERRO, individually and in his ) 4. **Violation of 42 U.S.C. § 1983**
16 official capacity, and DOES 1 to 50, inclusive. ) 5. **Conspiracy under 42 U.S.C. § 1985**
                                     )     6. **Intentional Infliction of Emotional**
17      Defendants.                  )        **Distress**
                                     )     7. **Retaliation**
18 _____  )  8. **Violation of Public Policy**

19
                                          **DEMAND FOR JURY TRIAL**
20

21
                       **JURISDICTION AND VENUE**
22
        1.       The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1341 (3)
23
   and (4) to secure protection of and to redress deprivation of rights secured by 42 U.S.C. §§ 1983 and
24
   1988, and the Fourth and Fourteenth Amendment to the United States Constitution.
25
        2.       The unlawful practices and violation of plaintiffs civil rights complained of herein
26
   were committed in the County of Contra Costa, within the Northern District of California of the
27
   United States District Court, and the State of California.
28

Peterson v. Mount Diablo et al.
Amended Complaint for Damages

**EXHIBIT 2**
**PAGE 1 OF 22**

3.      The pendent jurisdiction of the federal district court is invoked with respect to the

plaintiffs claims under the laws of the State of California, because the entire action before the court

comprises one civil rights case, and the claims arise out of the same operative facts and are such that

the plaintiff would ordinarily be expected to try them in one judicial proceeding.

**PLAINTIFF**

4.      Plaintiff RANDI PETERSEN (hereinafter "RANDI"), at all times relevant in this

complaint was a resident of the County of Contra Costa in California, and is the mother of co-

plaintiff, MICHAEL PETERSEN, JR..

5.      Plaintiff MICHAEL PETERSEN  (hereinafter "MICHAEL") was at all times

material hereto, a resident of the County of Contra Costa, and is the father of co-plaintiff MICHAEL

PETERSEN, JR.

6.      Plaintiff MICHAEL PETERSEN, JR.  (hereinafter "STUDENT") is a 11 year old

boy who has been diagnosed with Auditory Processing Disorder, Sensory Integration Dysfunction, and

Pervasive Development Disorder.  STUDENT is entitled to receive full and equal access to the public

educational programs and activities offered within the Mount Diablo Unified School District. He is a

qualified individual with a disability within the meaning of all applicable statutes including Section 504

of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans With Disabilities Act, 42 U.S.C.

§ 12131. He was at all relevant times, and all times material hereto, a resident of the County of Contra

Costa.

**DEFENDANTS**

7.      At all relevant times, defendant MOUNTY DIABLO UNIFIED SCHOOL

DISTRICT (hereinafter "MOUNT DIABLO") has been, and is now, a governmental entity.  The

actions described below on the part of defendant MOUNT DIABLO and the other defendants

constitute "state action" as that term has been defined by relevant case law.

8.      At all relevant times, defendant MOUNT DIABLO was located in the County of

Contra Costa, located in the Northern District of California.

\ \

\ \

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                    - 2 -

**EXHIBIT 2**
**PAGE 2 OF 22**

1    9.    At all times herein mentioned, defendants MILDRED BROWNE, CONNIE

2    CUSHING, and KEN FERRO (hereinafter "BROWNE", "CUSHING", and "FERRO" respectively),

3    and each of them, were employees and/or agents for MOUNT DIABLO,  and in doing all of the things

4    hereinafter mentioned, acted under color of their authority as, and under color of the statutes,

5    regulations, customs, and usages of MOUNT DIABLO, acting under color of their authority as such.

6    10.    On information and belief, BROWNE, CUSHING, and FERRO are residents of the

7    County of Contra Costa, located in the Northern District of California.

8    11.    The true names and capacities of DOES One through One Hundred are unknown to

9    Plaintiffs. Plaintiffs will amend this Complaint to insert their true names and capacities when they are

10    finally ascertained.  Plaintiffs is informed and believes and thereon alleges that each of the fictitiously

11    named defendants is liable to Plaintiffs for the acts, events and occurrences alleged herein as a result

12    of said Defendants' relationship to the named defendants or participation in said acts, events and

13    occurrences, or approval or ratification thereof.

14    12.    Plaintiffs are informed and believes and thereon alleges that some or all of

15    Defendants, DOES One through One Hundred reside or, in the case of corporations, do business in

16    the County of Contra Costa, or elsewhere in the State of California.

17    13.    Plaintiffs are informed and believes and thereon alleges that each of the Defendants

18    was at all times herein mentioned, the agent, employee, servant, or representative of the remaining

19    Defendants, and was acting, at least in part, within the course, scope and authority of said

20    relationship.

21    14.    Wherever any Defendant is alleged to have done or omitted to do anything,

22    said allegation shall be deemed to mean and include an allegation that the corporation did or omitted

23    to do said acts through its agents, servants, employees and representatives, including but not limited

24    to, its officers, directors, and managing agents, and that the said officers, directors, and managing

25    agents authorized and approved said acts and omissions and ratified same.

26    \ \

27    \ \

28    \ \

**Peterson v. Mount Diablo et al.**
**Amended Complaint for Damages**                                   - 3 -

EXHIBIT 2
PAGE 3 OF 22

**STATEMENT OF FACTS**

15.     STUDENT was first considered for eligibility for services under the IDEA in April of 1997.

16.     STUDENT became eligible for special education services while attending Kindergarten at Belshaw Elementary School in Antioch, California during the 1997/1998 school year.

17.     The IEP team at Belshaw Elementary recommended that STUDENT remain in a regular education classroom and receive speech & language and resource services.

18.     STUDENT began attending Monte Gardens Elementary in MOUNT DIABLO on June 5, 1998.   STUDENT was placed in special day class beginning in September of 1998.

19.     MOUNT DIABLO informed RANDI and MICHAEL that STUDENT'S educational needs would be best served in their special day class.   This was done without first providing accommodations in a regular classroom.

20.     MOUNT DIABLO did not consider or provide services consistent with the evaluation performed by the IEP team in Antioch.

21.     In or around January of 1999, RANDI obtained the services of Special Education Advocate Lynn Gunter.   When Mrs. Gunter began advocating for STUDENT, officials at MOUNT DIABLO became hostile towards RANDI.   MOUNT DIABLO also began to interfere in a custody battle pending before the Contra Costa County Superior Court.

22.     In or around March of 1999, MOUNT DIABLO provided information to a family court mediator that resulted in a recommendation that was submitted to the court.   The mediator recommended that RANDI lose her educational decision making rights over STUDENT.   In turn, the court adopted this recommendation.

23.     In or around August of 1999, it was agreed STUDENT would be mainstreamed in a regular classroom, receive district Functional Behavior Assessment and full scale evaluations, including an OT assessment.

24.     STUDENT mainstreamed at Ayers Elementary School from September of 1999 to December of 1999.   However, when his teacher received STUDENT's special education file, she became very upset and demanded that STUDENT be placed into a special day class.   STUDENT

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                          - 4 -

**EXHIBIT 2**
**PAGE 4 OF 22**

1   began complaining that his teacher did not like him, refused to assist him in class and wanted him

2   kicked out of her class. STUDENT developed a facial tick and had difficulty sleeping at night.

3       25.   RANDI faxed complaints of discrimination to principal Karen Sakata requesting she

4   investigate the matter. She never responded. RANDI requested Sakata place STUDENT in another

5   classroom with a different teacher, but she refused.

6       26.   Instead, Sakata insisted STUDENT be removed from her school and placed in a

7   special day class at another school site. STUDENT was forced against RANDI's will into their

8   Special Day Class, denying STUDENT access to their regular education classroom/program.

9       27.   On or about April 12, 2000, the principal of STUDENT's school wrote a letter to be

10   used against RANDI at a family law hearing scheduled on April 17, 2000. The court appointed

11   attorney reported to the court in the family law matter that RANDI's advocacy was harmful to

12   STUDENT. RANDI was reprimanded by the court for her alleged harmful advocacy.

13       28.   Around this same time, March of 2000, MOUNT DIABLO contradicted their own

14   assessments by claiming STUDENT did not have learning disabilities. MOUNT DIABLO refused to

15   consider STUDENT's deteriorating behavior and continuing failure to make educational progress

16       29.   Again in June of 2000, officials from MOUNT DIABLO interfered with the

17   family court process by submitting a declaration that RANDI's advocacy was harmful, and

18   misrepresenting the school's program was meeting STUDENT's educational needs. MOUNT

19   DIABLO again misinformed the court appointed attorney for the child that RANDI's advocacy was

20   harmful to STUDENT because she disagreed with the school. The court once again reprimanded

21   RANDI for her alleged harmful advocacy.

22       30.   In June of 2000, STUDENT's pediatrician after reviewing school assessments,

23   provided a written request he undergo a neuropsychological assessment, which was immediately

24   forwarded to MOUNT DIABLO. MOUNT DIABLO refused.

25       31.   MOUNT DIABLO refused to assess STUDENT per moms request for suspected

26   disability of PDD and independent assessments.

27       32.   In September of 2000, CUSHING informed the court appointed attorney for the child

28   that RANDI's advocacy was harming STUDENT. As a result, the attorney for the child

Peterson v. Mount Diablo et al.
Amended Complaint for Damages        - 5 -

EXHIBIT 2
PAGE 5 OF 22

1   recommended to the court that RANDI's lose custody of STUDENT.   RANDI would not regain any

2   custodial rights over STUDENT until mid-2003 via stipulation with MICHAEL.

3        33.   In November of 2000, MOUNT DIABLO recommended in writing to the family

4   court mediator mom have supervised visits because her advocacy was harming STUDENT.  This

5   position was in contradiction to MOUNT DIABLO's own expert, Dr. Maier's.  The court adopted

6   MOUNT DIABLO's recommendation.

7        34.   In August of 2001, MOUNT DIABLO requested MICHAEL dismiss the due

8   process hearing by misrepresenting that their educational program met STUDENT's needs, even

9   though their own school records showed he had not made educational progress for about three years.

10        35.   Moreover, at this time, MICHAEL knew very little about the entire process, he was

11   tricked into dismissing a scheduled due process hearing in exchange for signing-off on an education

12   program that had been recommended nearly a year earlier in October of 2000.  STUDENT would be

13   in the program for the 2001-2002 school year, during which time he would be suspended for more

14   than 10 days in 2002.

15        36.   In October of 2001, CUSHING once again contacted the court appointed attorney for

16   STUDENT and requested that the attorney ask the family court to stop RANDI's advocacy.

17        37.   RANDI was not notified of STUDENT's January 8, 2002 IEP.

18        38.   On or about February 2, 2002, RANDI filed a lawsuit against MOUNT DIABLO

19   and various personnel and agents of MOUNT DIABLO.

20        39.   On March 12, 2002, STUDENT was suspended from school for 1 ½ days, and a

21   School Crime and Incident Report was filed.

22        40.   On April 12, 2002, an IEP took place.  RANDI was not notified of the IEP.

23        41.   On April 23, 2002, STUDENT was suspended from school for 2 days, and a

24   School Crime and Incident Report was filed.

25        42.   On May 9, 2002, STUDENT was suspended for 3 days.

26        43.   On or about May 20, 2002, MOUNT DIABLO completed its neuropsychological

27   report of STUDENT.  The report confirmed STUDENT's weaknesses as outlined in the Antioch

28   report five years earlier.  Instead, the neuropsychologist blames RANDI in her report as the cause of

1    STUDENT's problems.

2        44.    The initial draft of the neuropsychological report recommends a private school

3    placement for STUDENT. However, CUSHING asks the neuropsychologist to withdraw her

4    recommendation private education, and to instead recommend MOUNT DIABLO's program.

5        45.    On or about May 31, 2002, the neuropsychologist and consequently, MOUNT

6    DIABLO did not make service recommendations for STUDENT's severe Auditory Processing

7    Disorder or Sensory Integration Dysfunction. Furthermore, she misrepresented that STUDENT did not

8    have PDD. The neuropsychologist said, and MOUNT DIABLO agreed, that STUDENT's disabilities

9    did not effect him at school. Instead, they blamed STUDENT's problems on parents.

10        46.    On May 31, 2002, STUDENT was suspended for 1 ½ days, and a School Crime and

11    Incident Report was filed.

12        47.    On June 5, 2002, STUDENT was suspended for 2 days, and a School Crime and

13    Incident Report was filed.

14        48.    Most of the suspensions were the result of alleged aggressive behavior toward

15    instructional aide Carol Peneloza. Ms. Peneloza had absolutely no training in dealing with disabled

16    children such as STUDENT.

17        49.    In contrast to their position that RANDI had no decision making authority over

18    STUDENT's education, on June 7, 2002, CUSHING mails a letter to RANDI wherein she notified

19    them that an IEP was being scheduled because STUDENT had been suspended for more than 10 days

20    during the 2001-2002 school year.

21        50.    The school psychologist referred STUDENT to Contra Costa Mental Health for

22    on a AB3832 referral, which is for those children who are seriously emotionally disturbed. Had this

23    gone through, STUDENT would have been placed in a secure facility.

24        51.    During the 2001-2002 school year, STUDENT vomited on several occasions in the

25    nurses office of his school. This was never documented by MOUNT DIABLO.

26        52.    On August 14, 2002, MOUNT DIABLO issues their proposal for STUDENT's

27    placement for the 2002-2003 school year, wherein they seek to have STUDENT placed in a Special

28    Day Classroom at Sunrise School.

Peterson v. Mount Diablo et al.
Amended Complaint for Damages          - 7 -

**EXHIBIT 2**
**PAGE 7 OF 22**

1   53.   Under duress, MICHAEL agrees to MOUNT DIABLO's proposal on August 30,

2   2002.

3   54.   On September 3, 2002, MICHAEL issues a written objection to MOUNT DIABLO's

4   placement of STUDENT in a Special Day Class at Sunrise School, and requests that STUDENT's

5   placement continue to be at Highlands Elementary School.

6   55.   STUDENT begins the 2002-2003 school at Highlands Elementary on September 4,

7   2002.  STUDENT's desk is placed in front of the class and next to the teachers desk.  STUDENT was

8   also placed next to an autistic student with whom he had had negative interaction in the past.  On

9   September 4, 2002, MICHAEL forwards a letter to MOUNT DIABLO requesting that STUDENT's

10  desk be moved to another location in the classroom.

11  56.   On September 5, 2002, MICHAEL receives a letter from ADR Administrator for

12  MOUNT DIABLO, Ken Ferro, indicating that as a result of MICHAEL's objection to their suggested

13  placement, MOUNT DIABLO has filed for a due process hearing.

14  57.   On September 9, 2002, MICHAEL forwards another letter to MOUNT DIABLO

15  regarding STUDENT's seating in his classroom, and their unwillingness to do anything about it.

16  58.   On September 12, 2002, MICHAEL receives a letter from Ken Ferro indicating that as

17  September 5, 2002, STUDENT's desk had been moved.

18  59.   On September 9, 2002, STUDENT's psychiatrist at Kaiser recommended that

19  STUDENT be placed on a Home and Hospital Program.  On September 13, 2002, MICHAEL informs

20  MOUNT DIABLO of the recommendation for Home and Hospital, and requests that STUDENT

21  placed on Home and Hospital..

22  60.   On September 18, 2002, MICHAEL submits a letter to counsel for MOUNT DIABLO

23  wherein he restates his request for Home and Hospital.

24  61.   On September 26, 2002, MICHAEL receives a letter from counsel for MOUNT

25  DIABLO indicating that the IEP team cannot make a determination regarding Home and Hospital

26  placement for STUDENT without further information from STUDENT's psychiatrist.  The letter also

27  states that MICHAEL is in violation of compulsory education laws which MOUNT DIABLO is

28  obligated to enforce.

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                          - 8 -

**EXHIBIT 2**
**PAGE 8 OF 22**

62.    On October 4, 2002, October 7, 2002, and October 17, 2002, MICHAEL forwards letters to MOUNT DIABLO requesting an IEP regarding Home and Hospital placement.

63.    An IEP is schedule for October 30, 2002.  MOUNT DIABLO fails to notify RANDI of the IEP.

64.    At the October 30, 2002 IEP, MICHAEL's request for Home and Hospital is denied. MOUNT DIABLO's reason for denying the request is that they need more information from STUDENT's psychiatrist.

65.    On November 6, 2002, counsel for MOUNT DIABLO informs MICHAEL that they will be submitting a list of questions to STUDENT's psychiatrist regarding her recommendation for Home and Hospital placement.

66.    On November 13, 2002, counsel for MOUNT DIABLO faxes letter to MICHAEL wherein, among other things, she threatens to institute SARB proceedings against him.

67.    On January 9, 2003, counsel for MOUNT DIABLO faxes a letter to MICHAEL wherein she threatens to institute SARB proceedings against him.

68.    On January 14, 2003, MICHAEL receives a letter from FERRO stating that MOUNT DIABLO is firm on its position that the Special Day Class is the appropriate placement for STUDENT.  In this letter, FERRO also threatens to institute SARB proceedings against MICHAEL.

69.    On January 31, 2003, Carolyn Stuckey, SARB Chairperson for MOUNT DIABLO, mails a truancy letter to MICHAEL, and threatens SARB proceedings against him.

70.    In an undated letter received my MICHAEL in and around January 31, 2003, Toby Montez, Director of Student Services for MOUNT DIABLO once again threatens to bring SARB proceedings against MICHAEL.

71.    On February 5, 2003, MICHAEL receives a letter advising him that an IEP meeting regarding his request for Home and Hospital placement has been scheduled for February 13, 2003.

72.    On the same date, MICHAEL receives another letter from Toby Montez asking him to disregard the truancy letter from Ms. Stuckey.

73.    On February 10, 2003, MICHAEL receives a proposed compromise and release agreement to settle all outstanding issues.  The agreement specifically calls for MICHAEL and RANDI

Peterson v. Mount Diablo et al.
Amended Complaint for Damages        - 9 -

EXHIBIT 2
PAGE 9 OF 22

1    to waive any and all claims including "504" and "ADA" claims. The proposal is rejected by MICHAEL

2    and RANDI.

3        74.    MOUNT DIABLO then forwards another proposed compromise and release

4    agreement without the "504" and "ADA" language. However, the agreement still calls for MICHAEL

5    and RANDI to waiver any and all claims, including "tort, contract, or other theories of recovery." This

6    proposal is rejected by MICHAEL and RANDI.

7        75.    On February 12, 2003, MICHAEL receives a letter from FERRO wherein he advises

8    him a new IEP date for the Home and Hospital request. The letter also once again threatens SARB

9    proceedings against MICHAEL.

10        76.    On February 11th and Februrary 17th of 2003, RANDI sends letters to BROWNE

11    regarding MOUNT DIABLO's interference in the family law court proceedings, and the bad faith on

12    the part of FERRO in dealing with the request for Home and Hospital placement.

13        77.    On February 18, 2003, MICHAEL requests a copy of MOUNT DIABLO's Home and

14    Hospital policy.

15        78.    The due process hearing takes place for one week in March of 2003, wherein agents

16    for MOUNT DIABLO, Dr. Arlee Maier and Dr. Peterson, both failed to provide complete testimony

17    about STUDENT's disabilities. CUSHING testified STUDENT's psychiatrists note for Home and

18    Hospital met their policy.

19        79.    On April 10, 2003, a letter is sent to RANDI from BROWNE wherein she apologizes

20    if there has been any miscommunication with regard to the Home and Hospital policy. Moreover,

21    BROWNE goes on to say it was her understanding that FERRO explained to RANDI that MOUNT

22    DIABLO only has a formal Independent Study Program, and is currently in the process of drafting a

23    Home and Hospital policy.

24        80.    After the hearing officer issues his decision, the parties agree to attend mediation in

25    effort to resolve outstanding issues.

26        81.    On June 2, 2003, the parties attend mediation. At the mediation, the initial agreement

27    drafted by MOUNT DIABLO contains language constituting a waiver of claims "based on tort,

28    contract, or other theories of recovery." This language is rejected by MICHAEL and RANDI. The

Peterson v. Mount Diablo et al.
Amended Complaint for Damages        - 10 -

EXHIBIT 2
PAGE 10 OF 22

1    final draft signed by all parties does not include this language.

2    **FIRST CAUSE OF ACTION**

3    **(Violations of Section 504 of the Rehabilitation Act of 1973 (hereinafter "Section 504") Against Defendant MOUNT DIABLO, and DOES 1 through 100)**

4

5    82.    Plaintiffs incorporate by reference all of the allegations contained in each of the

6    paragraphs 1 through 81 as if fully set forth herein.

7    83.    MOUNT DIABLO is a recipient of federal financial assistance as defined in Section

8    504 of the Rehabilitation Act.   Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §

9    794, and the regulations promulgated thereunder, 34 C.F.R., Part 104, prohibits discrimination against

10   persons with disabilities.  Section 504 prohibits the exclusion from the participation in, or being denied

11   benefits of, or being subjected to discrimination under any program or activity receiving Federal

12   financial assistance.

13   84.    STUDENT is a qualified disabled individual eligible for protection under both

14   Section 504 and the ADA.

15   85.    STUDENT has a mental impairments are as follows: Auditory Processing Disorder,

16   Sensory Integration Dysfunction, and Pervasive Development Disorder.

17   86.    STUDENT has a physical impairment as follows: Cyclic Vomiting Syndrome.

18   87.    STUDENT's impairment(s) substantially limit one or more major life activities as

19   follows:  learning, inability to reach gainful employment, inability to socialize, inability to function

20   independently, and inability to establish and maintain meaningful relationships.

21   88.    The practices described above violate the prohibition against discrimination solely on

22   the basis of disability.

23   89.    The practices and course of conduct also included, but was not limited to, the

24   following:

25           a.    STUDENT has been denied the opportunity to benefit from the educational

26                 services offered by MOUNT DIABLO, in violation of 34 CFR 104.4(b)(1)(I).

27                 In fact, he was provide no services whatsoever during the school year of 2002-

28                 2003.

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                          - 11 -

**EXHIBIT 2**
**PAGE 11 OF 22**

1    b.    STUDENT was provided with services that were not as effective as those

2          provided to other students, in violation of 34 CFR 104.4(b)(1)(iii).  While other

3          students were provided a Home and Hospital placement, STUDENT was

4          provide no services, much less Home and Hospital during the school year of

5          2002-2003.

6    c.    The aids, benefits and services offered to STUDENT did not afford him an

7          equal opportunity to reach the same level of achievement offered to others, in

8          violation of 34 CFR 104.4(b)(2).  Home and Hospital was not available for

9          children such as STUDENT.

10   d.    MOUNT DIABLO did not demonstrate, before removing STUDENT from a

11         regular setting, whether, with the use of supplementary aids and services in a

12         regular setting, that STUDENT could be educated satisfactorily in that regular

13         setting, in violation of 34 CFR 104.34(a).

14   e.    MOUNT DIABLO used tests that were invalid for testing STUDENT's

15         complex needs in that they did not take into account STUDENT's sensory,

16         manual and speaking skills; tests were not administered by trained personnel;

17         and the tests were not administered in a way that accurately reflected

18         STUDENT's abilities, in violation of 34 CFR 104.35(b)(1), (2) and (3).

19   f.    MOUNT DIABLO did not establish the system of procedural safeguards prior

20         to taking action regarding identification, evaluation or educational placement, in

21         violation of 34 CFR 104.36.

22   g.    Recipient MOUNT DIABLO did not establish a system of procedural

23         safeguards with regard to access to records by parents, in violation of 34 CFR

24         104.36.

25   h.    Recipient MOUNT DIABLO did not establish a system of procedural

26         safeguards that includes an impartial hearing on Section 504 issues, in violation

27         of 34 CFR 104.36.

28   \ \

Peterson v. Mount Diablo et al.
Amended Complaint for Damages

- 12 -

EXHIBIT 2
PAGE 12 OF 22

1          90.     Defendants, and each of them, have violated STUDENT's rights under Section 504

2    and the regulations promulgated by denying STUDENT the benefits of receiving full and equal access

3    to the public education program and activities offered within MOUNT DIABLO.

4          91.     As a proximate result of Defendants' violation of Section 504, Plaintiffs have suffered

5    and will continue to suffer embarrassment, humiliation and mental anguish all to their damage in an

6    amount according to proof.

7          92.     Plaintiffs were forced to hire an attorney to represent them in this matter and plaintiffs

8    should be awarded attorneys fees and costs.

9    **SECOND CAUSE OF ACTION**

10   **(Violations of Americans with Disabilities Act Against Defendant MOUNT DIABLO, and DOES 1 through 100)**

11

12         93.     Plaintiffs incorporate by reference all of the allegations contained in each of the

13   paragraphs 1 through 92 as if fully set forth herein.

14         94.     Title II of the ADA, 42 U.S.C. § 12131 et seq. And the regulations promulgated

15   thereunder, 28 C.F.R. Part 35, governing state and local government entities, protects persons from

16   discrimination on the basis of disability by public entities.  The ADA prohibits the exclusion from

17   participation in, or being denied the benefits of the services, programs, or activities of the public entity,

18   or being subjected to discrimination by such entity.

19         95.     MOUNT DIABLO is a public entity covered by the ADA Title IIA, as defined in 28

20   CFR 35.102(a).

21         96.     STUDENT is an individual with a disability as defined in the ADA, 28 CFR 35.104.

22         97.     The practices described above violate the prohibition against discrimination solely on

23   the basis of disability.

24         98.     The practices and course of conduct also included, but was not limited to, the

25   following:

26                  a.     MOUNT DIABLO did not evaluate its current services, policies and practices;

27   the effects thereof of any services, policies or practices that do not meet the

28   requirements of the ADA; and the modifications required, as ordered in 28 CFR

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                    - 13 -

**EXHIBIT 2**
**PAGE 13 OF 22**

1    35.105(a). MOUNT DIABLO refused to evaluate it policy and practice of not

2    offering Home and Hospital to children such as STUDENT.

3    b.    MOUNT DIABLO has not investigated complaints communicated to it alleging

4    noncompliance or alleging actions that would be prohibited by the ADA, in

5    violation of 28 CFR 35.107(a). Several complaints, as set forth above, were

6    submitted by RANDI and MICHAEL on behalf of STUDENT. However, there

7    is no indication that any of the complaints were investigated.

8    c.    MOUNT DIABLO has not adopted or published grievance procedures that

9    provide for prompt or equitable resolution of complaints alleging actions

10    prohibited by the ADA, as required by 28 CFR 35.107(b).

11    d.    MOUNT DIABLO has taken action in retaliation against RANDI, MICHAEL,

12    and STUDENT because of RANDI and MICHAEL's advocacy on behalf of

13    STUDENT. Such retaliation has taken the form of "coercion", "intimidation",

14    "threats", and "interference" in violation of 28 CFR 35.134(a) and (b).  As set

15    forth above, retaliation against RANDI was in the form of "interference" in the

16    family court process. MICHAEL was retaliated against in the form of "threats"

17    of SARB proceedings. STUDENT was retaliated against in the form of

18    suspensions from school, and the "threat" of an AB3832 referral. All of

19    STUDENT's suspensions took place during the time RANDI's lawsuit was

20    pending in court.

21    99.    Defendants, and each of them, have violated Plaintiffs rights under the ADA and the

22  regulations promulgated by denying Plaintiffs the benefits of the services, programs, and activities to

23  which they are otherwise entitled to from MOUNT DIABLO.

24    100.    As a proximate result of Defendants' violation of the ADA 504, Plaintiffs have suffered

25  and will continue to suffer embarrassment, humiliation and mental anguish all to their damage in an

26  amount according to proof.

27    101.    Plaintiffs were forced to hire an attorney to represent them in this matter and plaintiffs

28  should be awarded attorneys fees and costs.

Peterson v. Mount Diablo et al.
Amended Complaint for Damages        - 14 -

**EXHIBIT 2**
**PAGE 14 OF 22**

## THIRD CAUSE OF ACTION

### (Violation of 42 U.S.C. § 1983 (Equal Protection) Against Defendants MOUNT DIABLO, and DOES 1 through 100)

102.    Plaintiffs incorporate by reference all of the allegations contained in each of the paragraphs 1 through 101 as if fully set forth herein.

103.    The actions of Defendants, as described above, violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution in that such actions are not taken upon young children at MOUNT DIABLO who do not have disabilities, nor are such actions taken against the parents of children at MOUNT DIABLO who do not have disabilities.  In all of this, Defendants, and each of them, have, acting under color of state law, deprived STUDENT of rights, privileges, or immunities secured to him by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

104.    Furthermore, the actions of Defendants, as described above, violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution in that such actions are not taken upon the parents of young children at MOUNT DIABLO who do not advocate for their children who have disabilities.

105.    The practices and course of conduct also included, but was not limited to, the following:

      a.    MOUNT DIABLO has a policy of not offering Home and Hospital placement to children such as STUDENT.

      b.    MOUNT DIABLO has a policy of not investigated complaints communicated to it alleging noncompliance or alleging actions that would be prohibited by the ADA, in violation of 28 CFR 35.107(a).  Several complaints, as set forth above, were submitted by RANDI and MICHAEL on behalf of STUDENT.  However, there is no indication that any of the complaints were investigated.

      c.    MOUNT DIABLO has not adopted or published grievance procedures that provide for prompt or equitable resolution of complaints alleging actions prohibited by the ADA, as required by 28 CFR 35.107(b).

Peterson v. Mount Diablo et al.
Amended Complaint for Damages        - 15 -

EXHIBIT 2
PAGE 15 OF 22

1        d.     MOUNT DIABLO has a policy of retaliating against disabled students and

2     parents who advocate for their disabled children.  As set forth above, retaliation

3     against RANDI was in the form of "interference" in the family court process.

4     MICHAEL was retaliated against in the form of "threats" of SARB

5     proceedings.  STUDENT was retaliated against in the form of suspensions from

6     school, and the "threat" of an AB3832 referral.  All of STUDENT's

7     suspensions took place during the time RANDI's prior lawsuit was pending in

8     court, from February to July of 2002.

9    106.    As a direct and proximate result of the actions described above, Plaintiffs sustained

10 actual damages, including injuries to their person, pain , severe and grievous mental and emotional

11 suffering, humiliation, worry dear, anguish, shock, nervousness, and anxiety in an amount according to

12 proof.

13    107.    Defendants committed the acts alleged herein maliciously, despicably, fraudulently and

14 oppressively, with the wrongful intention of injuring plaintiff, from an improper and evil motive

15 amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff is thus entitled to recover

16 punitive damages from Defendants in an amount according to proof.

17    108.    Plaintiffs were forced to hire an attorney to represent them in this matter and Plaintiffs

18 should be awarded attorneys fees pursuant to Section 1988 of Title 42 of the United States Code.

19           **FOURTH CAUSE OF ACTION**

20    **(Violation of 42 U.S.C. § 1983 (Due Process) Against Defendants MOUNT DIABLO,**

21                 **and DOES 1 through 100)**

22    109.    Plaintiffs incorporate by reference all of the allegations contained in each of the

23 paragraphs 1 through 108 as if fully set forth herein.

24    110.    By their actions described herein, the Defendants, under color of statute, ordinance,

25 regulation, custom, or usage, subjected Plaintiffs to the deprivation of rights, privileges, or immunities

26 secured by the Constitution and laws.  In particular, as a student in a public school, STUDENT has an

27 property interest in his public education, and liberty interest in personal security and freedom from

28 infliction of pain.

Peterson v. Mount Diablo et al.
Amended Complaint for Damages          - 16 -

**EXHIBIT 2**
**PAGE 16 OF 22**

1    111.    The practices and course of conduct of Defendant also included, but was not limited to,

2    the following:

3                  a.    Suspending STUDENT for more than 10 days and labeling him a "predatory"

4                        child in attempt to place him in a more restrictive school.

5                  b.    Placing STUDENT next to an autistic child with whom MOUNT DIABLO

6                        knew he had had a negative history.

7                  c.    By placing him in situations which caused STUDENT to vomit on numerous

8                        occasions.

9                  d.    By placing him with an aide who had not had any "one-to-one" training, but in

10                       fact was only a "noon aide."

11                 e.    Refusing to provide any services to STUDENT for an entire school year (2002-

12                       2003).

13                 f.    By failing to institute SARB proceedings.

14                 g.    By promoting STUDENT from year to year even though he had not

15                       demonstrated achievement required for satisfactory performance in the

16                       subsequent grade.  For example, STUDENT was promoted after the 2002-2003

17                       school despite the fact that he had not received any formal education from

18                       MOUNT DIABLO for that entire school.

19                 h.    By failing to offer a Home and Hospital program for disabled children such as

20                       STUDENT.

21                 i.    By informing MICHAEL and RANDI that a Home and Hospital policy existed

22                       for children such as STUDENT when in fact it did not.

23    112.    Defendants inflicted such practices upon Plaintiffs in an attempt to punish them

24    because of incidents that occurred as a result of STUDENT's disability, and because MICHAEL and

25    RANDI were not in agreement with MOUNT DIABLO's proposed program for STUDENT.

26    113.    The actions of Defendants, as described above, including, but not limited to, not

27    providing Home and Hospital to disabled students, are policies at MOUNT DIABLO .

28    \ \

**Peterson v. Mount Diablo et al.**
**Amended Complaint for Damages**                - 17 -

EXHIBIT 2
PAGE 17 OF 22

114.    The actions taken, or not taken, in response to Defendants BROWNE, FERRO and CUSHING's conduct, , and Defendant MOUNT DIABLO's policies and practices amounted to the adoption of such practices, customs, or policies.

115.    Defendant MOUNT DIABLO knew, or should have known, about the discriminatory practices with respect to Plaintiffs and other students and former students as such are so well settled as to constitute a custom or usage in MOUNT DIABLO. In fact, MOUNT DIABLO is subject to a consent decree issued in May of 2000, wherein they are required to, among other things: (1) eliminate all policies that would bar children with disabilities from taking part in academic and extracurricular activities; (2) train school district employees on curriculum to accommodate students with special needs, and to foster integration; and (3) to train classroom aides. Yet, MOUNT DIABLO failed to take affirmative actions to provide for the well being of young children such as STUDENT.

116.    As a direct and proximate result of the actions described above, Plaintiffs sustained actual damages, including injuries to their person, pain , severe and grievous mental and emotional suffering, humiliation, worry dear, anguish, shock, nervousness, and anxiety in an amount according to proof.

117.    Defendants committed the acts alleged herein maliciously, despicably, fraudulently and oppressively, with the wrongful intention of injuring plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiffs rights. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

118.    Plaintiffs were forced to hire an attorney to represent them in this matter and Plaintiffs should be awarded attorneys fees pursuant to Section 1988 of Title 42 of the United States Code.

### FOURTH CAUSE OF ACTION

**(Conspiracy to Violate Plaintiff RANDI'S and STUDENT'S rights under 42 U.S.C. § 1985 Against all Defendants, and DOES 1 through 100)**

119.    Plaintiff incorporates by reference all of the allegations contained in each of the paragraphs 1 through 118 as if fully set forth herein.

120.    Defendants BROWNE, CUSHING, and FERRO acting in their individual capacities and under color of law, having conspired together and with others, reached a mutual understanding and

Peterson v. Mount Diablo et al.
Amended Complaint for Damages

- 18 -

EXHIBIT 2
PAGE 18 OF 22

1   acted to undertake a course of conduct that violated Plaintiffs civil rights, to wit:

2           a.    Defendants BROWNE and CUSHING agreed and acted to intentionally

3                 interfere with plaintiff RANDI'S custodial rights.

4           b.    Defendants BROWNE, CUSHING and FERRO agreed and acted to

5                 intentionally interfere with STUDENT's right to an education.

6           c.    All defendants agreed and acted with others to punish Plaintiffs for having

7                 exercised constitutionally and statutorily protected rights; and

8       121.   As a direct and proximate result of the conspiracy between defendants and others as

9   afore described, plaintiffs were deprived their rights under the Fourteenth Amendment of United States

10  Constitution and protected by 42 U.S.C. § 1983.

11      122.   As a direct and proximate result of the actions described above, Plaintiffs sustained

12  actual damages, including injuries to their person, pain , severe and grievous mental and emotional

13  suffering, humiliation, worry dear, anguish, shock, nervousness, and anxiety in an amount according to

14  proof.

15      123.   Defendants committed the acts alleged herein maliciously, despicably, fraudulently and

16  oppressively, with the wrongful intention of injuring plaintiff, from an improper and evil motive

17  amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiffs are thus entitled to

18  recover punitive damages from Defendants in an amount according to proof.

19      124.   Plaintiffs were forced to hire an attorney to represent them in this matter and Plaintiffs

20  should be awarded attorneys fees pursuant to Section 1988 of Title 42 of the United States Code.

21                    **FIFTH CAUSE OF ACTION**

22        **(Intentional Infliction of Emotional Distress of PLAINTIFFS against all Defendants)**

23      125.   Plaintiffs incorporate by reference all of the allegations contained in each of the

24  paragraphs 1 through 124 as if fully set forth herein.

25      126.   Defendants committed the acts alleged herein maliciously, despicably, fraudulently and

26  oppressively, with the wrongful intention of injuring Plaintiffs, from an improper and evil motive

27  amounting to malice.

28

Peterson v. Mount Diablo et al.
Amended Complaint for Damages        - 19 -

**EXHIBIT 2**
**PAGE 19 OF 22**

127.    Defendants' conduct in was both extreme and outrageous and caused Plaintiffs to suffer physical injuries as well as severe mental anguish.

128.    Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

129.    As a proximate result of the defendants conduct, Plaintiffs have suffered substantial injury to their personal, business and professional reputation.  The amount of said damages has not yet been finally ascertained, and is continuing.  Plaintiffs pray leave to amend this complaint to insert these elements of damage when the same are finally ascertained.

130.    As a further direct and proximate result of defendants conduct, Plaintiffs have suffered and continues to suffer embarrassment, humiliation, and anguish, all to his general damage in the sum which has not been fully ascertained and which will be shown according to proof.

131.    Defendants committed the acts alleged herein maliciously, despicably, fraudulently and oppressively, with the wrongful intention of injuring plaintiffs, from an improper and evil motive amounting to malice, and in willful and conscious disregard of Plaintiffs rights.  Plaintiffs thus are entitled to recover punitive damages from defendants, and each of them, in an amount according to proof.

<u>**SIXTH CAUSE OF ACTION**</u>

**(Retaliation against all Defendants)**

132.    Plaintiffs incorporate by reference all of the allegations contained in each of the paragraphs 1 through 131 as if fully set forth herein.

133.    Defendants, and each of them, retaliated against plaintiff for complaints about harassment and discrimination.  Moreover, Defendants, and each of them, failed to take all reasonable steps necessary to prevent further harassment and discrimination against Plaintiff.

134.    Plaintiff believes the measures MOUNT DIABLO employed in harassing and discriminating plaintiffs were retaliatory and in violation of public policy, California law, Section 504, and the ADA.

135.    Plaintiffs sees no other possible reasons other than their protected right to complain about harassment and discrimination that could conceivably account for why they were treated in such a

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                          - 20 -

**EXHIBIT 2**
**PAGE 20 OF 22**

1   manner.

2       136.  Plaintiff believes MOUNT DIABLO was unwilling to help alleviate the problem because

3   of the nature of their complaints.

4       137.  As a proximate result of the defendants conduct, plaintiffs has suffered substantial

5   injury to their personal, business and professional reputation.  The amount of said damages has not yet

6   been finally ascertained, and is continuing.  Plaintiffs pray leave to amend this complaint to insert these

7   elements of damage when the same are finally ascertained.

8       138.  As a further direct and proximate result of defendants conduct, plaintiffs have suffered

9   and continue to suffer embarrassment, humiliation, and anguish, all to their general damage in the sum

10   which has not been fully ascertained and which will be shown according to proof.

11   **SEVENTH CAUSE OF ACTION**

12   **(Violation of Public Policy Against all Defendants)**

13       139.  Plaintiffs incorporate by reference all of the allegations contained in each of the

14   paragraphs 1 through 126 as if fully set forth herein.

15       140.  Throughout all relevant times set forth in this complaint, Defendants, and each of

16   them, harassed, discriminated and retaliated against plaintiffs, on the basis of STUDENTS "disability"

17   and "handicap" as set forth in the First and Second Causes of Action, in violation of the public policy set

18   forth in Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act ,

19   prohibiting harassment, discrimination and retaliation in education on the basis of "handicap" and

20   "disability". Defendants' conduct also violated the public policy set forth in the California Cal. Govt.

21   Code § 12920, which expresses the public policy of the State of California, to wit, "It is hereby declared

22   as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of

23   all persons to seek, obtain, and hold employment without discrimination or abridgment on account of

24   race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical

25   condition, marital status, sex, or age."

26       141.  Defendants, and each of them, failed to take all reasonable steps necessary to prevent

27   such harassment and discrimination against Plaintiffs.

28   \ \

Peterson v. Mount Diablo et al.
Amended Complaint for Damages        - 21 -

**EXHIBIT 2**
**PAGE 21 OF 22**

1   142. As a proximate result of the defendants conduct, plaintiffs have suffered substantial

2 injury to their personal and business.  The amount of said damages has not yet been finally ascertained,

3 and is continuing.  Plaintiffs pray leave to amend this complaint to insert these elements of damage when

4 the same are finally ascertained.

5   143. As a further direct and proximate result of defendants conduct, plaintiffs have suffered

6 and continue to suffer embarrassment, humiliation, and anguish, all to their general damage in the sum

7 which has not been fully ascertained and which will be shown according to proof.

8        **DEMAND FOR JURY TRIAL**

9 Notice is hereby given that Plaintiffs demand a jury trial in the above-captioned action.

10           **PRAYER**

11 WHEREFORE, Plaintiffs pray judgment as follows:

12   1. For actual and compensatory damages in an amount according to proof;

13   2. For a money judgement for mental pain and suffering;

14   3. For a money judgment awarding plaintiffs an additional sum according to proof as

15 damages for emotional distress;

16   4. For an award of punitive damages;

17   5. For costs of suit;

18   6. Attorneys fees pursuant to the United States Code; and,

19   7. For such other and further relief as the court may deem just and proper.

20

21         Respectfully Submitted,

22         BUZO & HERNANDEZ, LLP

23
Dated: July 2, 2004      By: _____

24          ALFRED R. BUZO
          Attorney for Plaintiffs

25

26

27

28

**Peterson v. Mount Diablo et al.**
**Amended Complaint for Damages**     - 22 -

**EXHIBIT 2**
**PAGE 22 OF 22**