IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDI PETERSEN, MICHAEL PETERSEN and MICHAEL PETERSEN, JR.,<br><br>Plaintiffs,<br><br>v.<br><br>MT. DIABLO UNIFIED SCHOOL DISTRICT, MILDRED BROWN, individually and in her official capacity, CONNIE CUSHING, individually and in her official capacity, and DOES 1 to 50, inclusive,<br><br>Defendants. | No. C 04-01059 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

Defendants have filed a motion to dismiss plaintiffs' Amended Complaint for Damages ("AC"). The Court took the matter under submission without oral argument pursuant to Local Rule 7-1(b). Having carefully considered the papers submitted, defendants' motion is GRANTED for the reasons set forth below.

**BACKGROUND**

**1.     Factual background**

This case concerns the alleged failure of the Mt. Diablo Unified School District ("the District") to properly educate a mentally and physically disabled child. On March 16, 2004, plaintiffs Randi Petersen, Michael Petersen, Sr.,[1] and their son, "M.P.," filed suit against the Mt. Diablo Unified School District ("the District"), Mildred Brown ("Brown"), a member of the District Board of Education and Connie Cushing

---

[1] While this motion was pending, plaintiff Michael Petersen, Sr. notified the Court, by a letter received October 19, 2004, that he was withdrawing as a plaintiff. By another letter received October 20, 2004, he then notified the Court that he wished to be reinstated as a plaintiff.

EXHIBIT 3
PAGE 1 OF 15

("Cushing"), a District special education specialist.

Plaintiff M.P. is an eleven-year-old boy who has been diagnosed with "Auditory Processing Disorder, Sensory Integration Dysfunction, and Pervasive Development Disorder." AC ¶ 6. During the 1997-1998 school year, M.P. was in kindergarten in the Antioch Unified School District. Id. at ¶ 16. During that time, he became eligible for special education services, and an individualized education plan ("IEP") was developed for him. Id. at ¶ 16-17. He transferred to the Mt. Diablo Unified School District in June 1998, and was placed in a special day class beginning in September 1998. Id. at ¶ 18. In the summer of 1999, Randi and Michael Petersen sought to obtain additional services for M.P. because the Mt. Diablo Unified School District did not provide the services recommended by the Antioch IEP team. Id. at ¶ 20.

From September to December 1999, M.P. was "mainstreamed" in a general education class. Decision of the California Special Education Hearing Office ("SEHO Decision") at 2.[2] In November of 1999, the District school psychologist concluded that M.P. had a learning disability and met the criteria for being emotionally disturbed. Id. In January 2000, M.P. was moved into a special day class at another school. AC ¶ 26; SEHO Decision at 3.

During the 2001-2002 school year, M.P. attended fourth grade in a special day class at Highlands school, in the District. Id. at 3. M.P.'s behavioral problems increased during this year. Id. at 4. In May 2002, his IEP team met to discuss his placement for the 2002-2003 school year and decided on a special day class placement at Sunrise School, case management services by a licensed clinical social worker or therapist, a referral for a mental health evaluation, two hours of weekly tutoring, and ongoing monitoring of his progress. Id. at 5.

Michael Petersen agreed to this IEP in August 2002, but then withdrew his consent in a September 2, 2002 letter. Id. at 6.[3] He instead requested placement at Highlands, M.P.'s previous school, and asked that an aide stop "shadowing" the child and collecting ongoing data "through every minute of the school day." Id.

M.P. began the 2002-2003 school year at Highlands on September 4, 2002. His father withdrew him

---

[2] Defendants have requested that this Court take judicial notice of the SEHO Decision, and this Court has done so. See Order Requiring More Definite Statement; Granting Request for Judicial Notice; and Denying Motion to Dismiss, filed June 24, 2004.

[3] In the Amended Complaint, the date of this "written objection" is September 3, 2002. AC ¶ 54.

from school on September 5, 2002, stating that he believed that the District was laying the groundwork for M.P. to fail, thereby reinforcing its case for placing him at Sunrise. He also expressed his suspicions that the District had allowed M.P. to fail during the prior school year with the intent of necessitating his eventual placement at Sunrise. Id.

By a letter dated September 5, 2002, the District informed Mr. Petersen that it had filed for a due process hearing to establish the appropriateness of its IEP. Id. On September 10, 2002, Michael Petersen obtained a handwritten memo from M.P.'s personal psychologist recommending a "Home and Hospital" placement instead of school attendance. SEHO Decision at 7; AC ¶ 59. On the basis of this recommendation, Michael Peterson requested a Home and Hospital program for M.P. The District informed him that it would need more information to support an IEP recommendation for this placement, and asked to communicate with the psychologist who had examined M.P. AC ¶ 61. Mr. Petersen did not give consent. SEHO Decision at 7. M.P. returned to Highlands on October 4, 2002, but his father removed him that day. With M.P. out of school and receiving no program, his IEP team met on October 30, 2002, to discuss his father's request for a Home and Hospital placement. Id. at 8.[4] The request for Home and Hospital was denied because of the need for additional information. Id. at ¶ 64. Representatives of the District sent letters to Michael Petersen during this period stating that he was in violation of compulsory education laws, and threatening to initiate School Attendance Review Board ("SARB") proceedings against him. Id. at ¶¶ 61, 66-70, 75. In December 2002, Mr. Petersen filed a request for a due process hearing, and on January 15, 2003, the District also filed a hearing request. Mr. Petersen's request was subsequently withdrawn.

A due process hearing was held in March 2003. On April 10, 2003, defendant Browne sent a letter to Randi apologizing for "miscommunication" about the Home and Hospital policy and stating that the District was in the process of drafting such a policy but had only an "Independent Study Program." Id. at ¶ 79. The SEHO hearing decision was issued on May 1, 2003. Neither party appealed the decision within ninety days. M.P. did not return to school for the remainder of the 2002-2003 school year.

In June 2003, the parties engaged in mediation and entered into a Compromise and Release Agreement

---

[4] The IEP team had already met on September 30, 2002, to discuss Michael's father's request for a home and hospital placement. At that meeting, Michael's father announced that he was planning to return Michael to Highlands, which he did on October 4, 2002.

3

EXHIBIT 3
PAGE 3 OF 15

("Settlement Agreement") in order to "resolve any and all disputes, causes of action, and claims which may exist concerning Michael's educational program, placement and related services, past, present and future, through August 30, 2003 [arising under the Individuals with Disabilities Education Act ("IDEA")]." Settlement Agreement at 1.

**2.    Procedural background**

This case is related to a *pro se* lawsuit that Randi and M.P. brought against generally the same defendants in 2002.[5] Petersen v. Mt. Diablo Unified School District, No. C 02-0887 SI (Compl. filed Feb. 21, 2002). The 2002 complaint challenged the decisions of a family court denying Randi custody of her children and visitation rights. The 2002 complaint further alleged that the District, in conspiracy with Randi's former husband Michael and others, had denied Randi her constitutional and civil rights, as well as the rights of her children, in the process of developing an educational plan for M.P. At that time, Randi opposed the special day class placement for M.P. SEHO Decision at 3. Michael Petersen had agreed to this placement. Id.[6]

Plaintiffs, including Michael Petersen, filed this action on March 16, 2004. On May 14, 2004, this Court issued an order relating it to the 2002 case. On May 25, 2004, judgment was entered on the 2002 lawsuit in favor of defendants. The original complaint in the 2004 action alleged seven causes of action.[7] On June 24, 2004, this Court denied defendants' motion to dismiss the original complaint but granted their motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). On July 2, 2004, plaintiffs filed

---

[5] In the 2002 complaint, Michael Petersen, M.P.'s father, was named as a defendant and was alleged to be part of a conspiracy against Randi and M.P. In this case, Michael Peterson is a plaintiff.

[6] This Court dismissed the 2002 case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Petersen, No. C 02-0887 SI (Order filed July 3, 2002). The July 3, 2002 Order dismissing the case granted Randi leave to amend her complaint on or before August 2, 2002. July 3, 2003 Order. At oral argument, Randi stated that she was trying to secure attorney services to aid her. July 3, 2002 Order at 18. Plaintiffs did not file an amended complaint and the case was dismissed pursuant to the July 3, 2002 Order. Petersen, No. C 02-0887 SI (Order filed May 25, 2004).

[7] The original causes of action were: (1) a violation of the Rehabilitation Act of 1973; (2) a violation of the Americans with Disabilities Act; (3) a violation of 42 U.S.C. § 1983; (4) conspiracy under 42 U.S.C. § 1985; (5) intentional infliction of emotional distress; (6) retaliation; and (7) violation of public policy.

an amended complaint. In the amended complaint, plaintiffs allege eight causes of action: (1) a violation of the Rehabilitation Act of 1973; (2) a violation of the Americans with Disabilities Act; (3) a violation of 42 U.S.C. § 1983 (Equal Protection); (4) a violation of 42 U.S.C. § 1983 (Due Process); (5) conspiracy under 42 U.S.C. § 1985; (6) intentional infliction of emotional distress; (7) retaliation; and (8) a violation of public policy.[8] Ken Ferro was also added as a defendant and served with the amended complaint.

Now before the Court is defendants' motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to assert a claim upon which relief can be granted.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. See Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. See United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

"The court may also consider documents attached to the complaint in connection with a FRCP 12(b)(6) motion to dismiss." Parks Sch. of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995)(quoting Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)). "If a plaintiff fails to attach to the complaint the documents on which it is based, defendant may also attach to a FRCP 12(b)(6) motion the documents referred to in the complaint." Lee v. City of Los Angeles, 250 F.2d 668, 688-89 (9th Cir. 2001)). "In addition,

---

[8] The seven causes of action in the March 16, 2004 complaint are still present; the plaintiffs have added a second alleged violation of 42 U.S.C. § 1983. In the original complaint, the plaintiffs generally alleged a violation of 42 U.S.C. § 1983. In the amended complaint, one § 1983 claim is brought for an Equal Protection violation and the other for a violation of Due Process.

whether requested or not, the court may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiffs' pleadings." In re Silicon Graphics Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999)). "On a motion to dismiss, [the court] may take judicial notice of matters . . . outside the pleadings." MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

Defendants move to dismiss each of the eight causes of action in the amended complaint on numerous grounds. They contend (1) that defendants are immune from suit; (2) that certain claims and factual allegations are barred by plaintiffs' failure to exhaust IDEA administrative remedies, by the parties' Settlement Agreement, by the applicable statutes of limitations, and by the Court's Order in the 2002 lawsuit; and (3) that plaintiffs have failed to state a claim for any of the eight causes of action. The Court will discuss the immunity issue first and then address each claim.

### 1.     Immunity

Even if plaintiffs were to properly state a claim for one of their eight causes of action, all of the defendants would be immune from suit. States and their entities cannot be sued in federal court under the doctrine of state sovereign immunity, embodied in the Eleventh Amendment. The doctrine of state sovereign immunity applies regardless of whether a plaintiff's suit is for monetary damages or other relief. Federal Maritime Comm'n v. South Carolina Ports Authority, 535 U.S. 743, 765, 122 S. Ct. 1864 (2002). Further, the qualified immunity doctrine "confers immunity on Government officials of suitable rank for the reason that 'officials of government should be free to exercise their duties unembarrassed by fear of damage suits in respect of acts done in course of those duties.'" Doe v. McMillan, 412 U.S. 306, 319, 93 S.Ct 2018 (1973).

### A.    Mt. Diablo Unified School District

The District argues that, as a state entity, it is protected against suit in federal court by the Eleventh Amendment. Plaintiffs argue that school districts are not entitled to immunity from private damage suits, and they cite authority from other state and federal jurisdictions to this effect. Pls.' Mot. at 9.

None of the cases cited by plaintiffs is binding on this Court. To the contrary, the Ninth Circuit has held that California school districts are arms of the State of California and enjoy Eleventh Amendment immunity. See Belanger v. Madera Unified School District, 963 F.2d 248, 251 (9th Cir. 1992). Because Mt. Diablo is a school district within the State of California, the Eleventh Amendment bars all of plaintiffs' claims against the Mt. Diablo school district in federal court.[9]

Accordingly, defendant Mt. Diablo's motion to dismiss is GRANTED as to the entire complaint.

### B.    District Employees

Plaintiffs also bring suit against District employees Browne, Cushing, and Ferro in both their official and individual capacities.

#### i.    Eleventh Amendment immunity of District employees in their official capacities

The Eleventh Amendment also bars suits against state officials who are sued in their official capacities. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 109 S. Ct. 2304 (1989). While "state officials literally are persons . . . a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Id. at 71. Defendants Browne, Cushing, and Ferro are Mt. Diablo Unified School District employees, and therefore are considered state employees for purposes of the Eleventh Amendment. Plaintiffs cannot sue these employees in their official capacities in federal court.

---

[9] The District appears to be a defendant in all of plaintiffs' eight causes of action: a named defendant in the five federal claims, and one of "all defendants" against whom the three state claims are brought.

### ii. Immunity of District employees in their individual capacities

Defendants also argue that plaintiffs are barred from bringing suit against the District Employees in their individual capacities.[10] Qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). A court considering a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of a constitutional right, then proceed to determine if the right was "clearly established." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001). If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiry concerning qualified immunity. See id.

For the reasons discussed below, plaintiffs have failed to state a claim for violations of their constitutional rights. Consequently, under the first step of the Saucier analysis, defendants are entitled to qualified immunity.

Plaintiffs' claims against the District employees in both their official and individual capacities must be dismissed on grounds of immunity.

### 2. Federal claims

Even if defendants were not immune from suit in this Court, plaintiffs' federal claims must be dismissed. As defendants point out, the facts alleged in the amended complaint span seven years and include many of the family court proceedings at issue in the 2002 lawsuit. Accordingly, defendants identify several "overarching problems" with the complaint that bar the federal claims or portions of certain claims. Defs.' Mot. at 1. The Court will address each claim separately.

### A. Section 504 claim

Plaintiffs bring their first cause of action under Section 504 of the Rehabilitation Act of 1973. Section 504 is a general civil rights provision enacted "to prevent discrimination against all handicapped individuals .

---

[10] Plaintiffs' Fifth Cause of Action (labeled "Fourth Cause of Action"), the 42 U.S.C. § 1985 claim, appears to be the only claim brought against the District employees in their individual capacities. AC ¶¶ 119-124.

. . in employment, housing, transportation, education, health services, or any other Federally-aided programs." S. Rep. No. 1297, 93d Cong., 2d Sess. 38.

Here, plaintiffs allege that defendants have denied M.P. the opportunity to benefit from the District's educational services because of his disabilities. AC ¶ 89. Defendants argue that, although plaintiffs do not mention the IDEA in their amended complaint, this claim is in fact based entirely on the IDEA and, since plaintiffs have not exhausted their administrative remedies, must be dismissed. Defendants contend that the action is in fact based on the IDEA because it involves M.P.'s educational evaluation, placement, and services.[11] Plaintiffs state that "this case is not simply about [M.P.'s] educational evaluation, placement, and services" but instead involves three plaintiffs whose injuries are "non-educational" and ones for which "the IDEA does not provide a remedy." Pls' Opp'n at 14. In their opposition, plaintiffs clarify that their Section 504 claim is based on defendants' "fraud" in misrepresenting that M.P. could be placed in a Home and Hospital program when in fact no such program existed in the District. Id. at 17-18.

Based on the allegations in the amended complaint, the Court finds that plaintiffs' Section 504 claim is entirely IDEA-based. The complaint alleges, among other practices, that "STUDENT has been denied the opportunity to benefit from the educational services offered by MOUNT DIABLO . . . [and] was provide[d] no services whatsoever during the school year of 2002-2003"; "MOUNT DIABLO did not demonstrate, before removing STUDENT from a regular setting, whether . . . STUDENT could be educated satisfactorily in that regular setting"; and "MOUNT DIABLO used tests that were invalid for testing STUDENT's complex needs." See AC ¶¶ 89a, d, e; see generally id. at ¶¶ 89a-h. The facts alleged are based on M.P.'s educational evaluation (i.e., whether the testing used was appropriate), placement (i.e., whether he was properly removed from the regular classroom setting), and services (i.e., whether the services provided to him were effective or appropriate).[12]

---

[11] Defendants point out that, in plaintiffs' original complaint, they specifically stated that the Section 504 and ADA claims were based on the IDEA; in the amended complaint, they have omitted reference to the IDEA. Regardless of this history, the Court will assess whether each claim is based on educational evaluation, placement, and services.

[12] Plaintiffs "fraud" allegation does not alter the Court's conclusion, because the District's representations about what placements were available and its decisions about whether to give M.P. the Home and Hospital placement are also matters pertaining to his educational services.

9

EXHIBIT 3
PAGE 9 OF 15

Because the claim is IDEA-based, plaintiffs must exhaust their administrative remedies under the IDEA before bringing it. 20 U.S.C. § 1415(l); Robb v. Bethel School Dist., 308 F.3d 1047, 1049 (9th Cir. 2002). Here, plaintiffs participated in a May 1, 2003 SEHO hearing, but they did not file a timely appeal from the decision withing the 90 days required.[13] Plaintiffs claim that they have exhausted their administrative remedies because they seek money damages, which cannot be obtained from an administrative SEHO appeal. Pls.' Opp'n at 13-14. However, in Robb v. Bethel School Dist., the Ninth Circuit held that plaintiffs must exhaust their IDEA administrative remedies before filing all IDEA-related claims even when those claims are for money damages, and it specifically found that "a plaintiff cannot avoid the IDEA's exhaustion requirement merely by limiting a prayer for relief to money damages." Id. at 1049.

Plaintiffs also claim that exhaustion is not required of them because the administrative tribunal was not "competent" to hear their Section 504 and ADA claims. Plaintiffs cite no authority for this proposition, and Robb is once again instructive: "[w]here the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem." Id. at 1050. Thus, until plaintiffs exhaust all administrative remedies, this Court lacks jurisdiction over their Section 504 claim.

Because the Court lacks jurisdiction, it will not reach defendants' other arguments. The Court hereby GRANTS defendants' motion to dismiss the Section 504 claim.

**B.    ADA claim**

Plaintiffs also allege a violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. To state a claim under the ADA, a plaintiff must allege four elements:

> (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (quoting Weinreich v. L.A. County Metro. Transp.

---

[13] The SEHO hearing was only held regarding the 2002-2003 school year, so to the extent that plaintiffs' claim arises out of other conduct, it is also unexhausted.

10

EXHIBIT 3
PAGE 10 OF 15

Auth, 114 F.3d 976, 978 (9th Cir. 1997)).

Here, plaintiffs' ADA allegations are based primarily on M.P.'s educational placement and services: that the District did not evaluate its current services, policies, and practices for ADA compliance, "refused to evaluate it[s] policy and practice of not offering Home and Hospital" to M.P., and retaliated against plaintiffs in the form of threatened SARB proceedings and suspensions of M.P. from school. AC ¶¶ 98(a)-(d). Thus, this claim is partially IDEA-based, and plaintiffs have failed to exhaust administrative remedies before bringing it. The Court lacks subject matter jurisdiction over the claim to the extent that it rests on these allegations.

Plaintiffs' ADA claim is also based on the District's alleged failures to "investigate[] complaints of non-compliance with the ADA" and "adopt[] grievance procedures for ADA complaints," AC ¶¶ 98(b), (c), and refers to retaliation in the form of interference in the Petersens' family court proceedings. Id. Because these allegations are not IDEA-related, the Court will consider some of defendants' other arguments for dismissal.

First, the ADA claim appears to be barred by the statute of limitations. The ADA does not contain its own statute of limitations; it adopts the forum state's statute of limitations for personal injury torts. California's limitations period for personal injury torts is two years. Cal. Code Civ. P. § 335.1. Thus, all of plaintiffs' allegations before March 16, 2002 are time-barred. The only specific allegation about the District's failure to investigate ADA complaints is that Randi Petersen "faxed complaints of discrimination" to the principal of the elementary school in which M.P. was enrolled from September to December 1999, and received no response. AC ¶ 25. While plaintiffs argue that there are many other examples of M.P.'s ill-treatment, they point to no facts in the amended complaint that fall within the limitations period. Moreover, they cite neither facts nor authority for their argument that the "continuous" nature of defendants' actions defeats the statute of limitations. Second, the alleged retaliation based on defendants' interference with family court proceedings took place prior to March 16, 2002, and fall outside the limitations period.

Consequently, defendants' motion to dismiss this claim is GRANTED.

C.  **42 U.S.C. § 1983 (Equal Protection)**

Plaintiffs' third cause of action is brought under 42 U.S.C. § 1983 for a violation of the Equal

Protection Clause of the Fourteenth Amendment. To state a claim under § 1983, "the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." See West v. Atkins, 487 U.S. 42, 48 (1988). For an Equal Protection violation, plaintiffs must show that there was unequal treatment of persons similarly situated, or that the defendants acted with an intent to discriminate against plaintiffs based on membership in a protected class. See Washington v. Davis, 426 U.S. 229, 239-40, 96 S. Ct. 2040 (1976).

Plaintiffs allege that "[t]he actions of Defendants, as described" in the complaint's statement of facts, violate the Equal Protection Clause, as do the District's policies of not offering Home and Hospital placements, and not investigating or providing grievance procedures to resolve ADA complaints. AC ¶¶ 103, 105(a)-(c). They also allege that the District retaliated against plaintiffs by interfering in the family court proceedings and suspending M.P. from school. Id. at ¶ 105(d). Defendants contend that this § 1983 claim is also IDEA-based and barred by the Settlement Agreement, by the statute of limitations, and by this Court's order dismissing the 2002 lawsuit.

The Court agrees that plaintiffs' § 1983 claim is partially IDEA-based because it is based on the appropriateness of a Home and Hospital placement. In addition, the allegations regarding interference in the family court proceedings are barred by the two-year statute of limitations.

Consequently, defendants' motion to dismiss as to this claim is also GRANTED.

### D.     42 U.S.C. § 1983 (Due Process)

Plaintiffs' fourth cause of action is for a violation of the Due Process Clause of the Fourteenth Amendment. To allege a Due Process violation, plaintiffs must establish (1) a liberty or property interest protected by the Constitution, (2) a deprivation of that interest by the government, and (3) the lack of process. Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). Plaintiffs allege that M.P. has a property interest in his public education and a liberty interest in "personal security and freedom from infliction of pain." AC ¶ 110. Plaintiffs contend that the District violated this right by various actions, including suspending M.P., placing him with a certain classroom aide and next to a certain child in the classroom, refusing to provide him with services for a year, and promoting him from year to year. Id. at ¶ 111. The Court finds

that these actions are related to M.P.'s educational evaluation, placement, and services, and that IDEA remedies are available and appropriate. Thus, plaintiff has failed to exhaust his IDEA administrative remedies, and the Court lacks jurisdiction over this claim.

Defendants' motion to dismiss is GRANTED as to plaintiffs' § 1983 Due Process claim.

### E. 42 U.S.C. § 1985

Plaintiffs' fifth cause of action is for a violation of 42 U.S.C. § 1985. Assuming that plaintiffs are referring to 42 U.S.C. § 1985(c), they must allege that (1) the purpose of the conspiracy was to deprive the plaintiff of equal protection, equal privileges and immunities, or to obstruct the course of justice in the state; (2) the defendant intended to discriminate against the plaintiff; (3) the defendant acted under color of state law and authority; and (4) the acts done in furtherance of the conspiracy resulted in an injury to the plaintiff's person or property or prevented him from exercising a right or privilege of a U.S. citizen. Sykes v. California (Dept. of Motor Vehicles), 497 F.2d 197, 200 (9th Cir. 1974).

Plaintiffs fail to state a claim under section 1985. Plaintiffs' amended complaint contains the same conclusory allegations as the original complaint: "Defendants BROWNE and CUSHING agreed and acted to intentionally interfere with plaintiff RANDI's custodial rights. Defendants BROWNE, CUSHING and FERRO agreed and acted to intentionally interfere with STUDENT's right to an education. All defendants agreed and acted with others to punish Plaintiffs for having exercised constitutionally and statutorily protected rights." AC ¶ 120(a)-(c). Nowhere do they allege facts that demonstrate the requisite intent for a § 1985 claim or any specific facts that support the existence of a conspiracy. Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989).

Consequently, defendants' motion to dismiss is GRANTED as to plaintiffs' fifth cause of action.

### 3. State claims

Plaintiffs have brought state law claims for intentional infliction of emotional distress, retaliation, and violation of public policy. Defendants argue that these claims should be dismissed because (1) the state claims against the District are barred by plaintiffs' failure to comply with the California Tort Claims Act, and (2) if all

federal claims have been dismissed, the Court should decline to exercise supplemental jurisdiction over the pendent state law claims. In addition, defendants contend that plaintiffs have failed to allege sufficient facts for each claim.

### A.     Tort Claims Act

The three state tort claims against the District fall under the purview of the California Tort Claims Act, Cal. Gov. Code § 900 et seq. The California Court of Appeal has held that California Government Code sections 905 and 945.4 require "as a condition precedent to bring suit for 'money or damages' against a local entity, the timely presentation to the defendant of a *written* claim and the rejection of that claim in whole or part." Loehr v. Ventura County Community College District, 147 Cal. App. 3d 1071, 1078 (1983) (emphasis in original). "Plaintiff [is] therefore required to file a timely claim as a mandatory prerequisite to the filing of [a] complaint." Id. at 1080. Here, plaintiffs apparently did not file a claim with the District before bringing suit.

Plaintiffs argue that they "substantially complied" with the filing requirements because defendants were aware of the issues throughout the time in question, and because "defense counsel in this action is the same firm that has been handling this matter from its administrative inception . . . [and] are extremely familiar with this case." Pls.' Opp'n at 22. However, "[c]ompliance with the filing requirements . . . may not be excused simply because the defendant public entity has full knowledge of the facts constituting the basis of the claim." Loehr, 147 Cal. App. 3d at 1084. In addition, as defendants point out, "substantial compliance" refers only to attempts to comply with the filing procedures in Cal. Gov. Code § 910. Loehr, 147 Cal. App. 3d at 1082-83 ("[a]lthough a claim need not conform to pleading standards, the facts constituting the causes of action pleaded in the complaint must substantially correspond with the circumstances described in the claims as the basis of plaintiff's injury"). Here, plaintiffs make no mention of ever filing a claim with the District. In their Opposition, they state that "Plaintiffs have at various times over the past several years faxed and/or mailed letters to defendants regarding claims against the district." Pls.' Opp'n at 22. It is not possible to tell whether or not any of those letters "substantially correspond with the circumstances described in the [complaint] as the basis of plaintiff's injury."

Because plaintiffs have not followed the procedures as set forth in the California Tort Claims Act, Cal. Gov. Code § 900 et seq., their state tort claims against the District must be dismissed.

### B.    Supplemental jurisdiction

It is well-settled that "[w]hen federal claims are dismissed before trial . . . pendent state claims also should be dismissed." Jones v. Cmty. Redevelopment Agency of the City of Los Angeles, 733 F.2d 648, 651 (9th Cir. 1984). Pursuant to 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over plaintiffs' pendent state law claims.

### 4.    Dismissal without leave to amend

The Court has already afforded plaintiffs an opportunity to file an amended complaint. Because of plaintiffs' failure to exhaust administrative remedies and because several claims are barred by the statute of limitations, the Court finds that further amendment would be futile. The complaint is dismissed without leave to amend.

### 5.    Punitive Damages

Because the Court dismisses all of plaintiffs' causes of action, plaintiffs are not entitled to punitive damages.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss the amended complaint. Plaintiffs' amended complaint is DISMISSED with prejudice. [Docket # 14]

**IT IS SO ORDERED.**

Dated: December 20, 2004

　　　　　　　　　　　　　　　　　　　　　S/Susan Illston
　　　　　　　　　　　　　　　　　　　　　SUSAN ILLSTON
　　　　　　　　　　　　　　　　　　　　　United States District Judge