1    Michael Petersen, Parent PRO SE
     next of friend of Michael Petersen Jr.
2    And Ryan Petersen
     P.O. Box 2462
3    Visalia Ca. 93291

FILED

OCT 1 9 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11

12   MICHAEL PETERSEN on behalf of himself and          CASE # C07-00646LJO
     parent and next of friend to Mike Jr. and Ryan              #C07- 02400SI
13   disabled minor children PRO SE.
                                                        **PLAINTIFF'S MEMORANDUM OF**
14        PLAINTIFF'S                                   **POINTS AND AUTHORITIES IN**
                                                        **OPPOSITION TO MDUSD ET AL,**
                                                        **SEHO/MCGEORGE ET AL,**
15                                                      **DEFENDANT'S MOTION FOR FRCP**
                                                        **12 (b)(6), 12 (b)(1),12(e)**
16
              V.                                        Hearing date: 11/9/07
17                                                      Time : 9:00am
                                                        Dept: Courtroom 10
18                                                      Judge : Susan Illston

19

20   CALIFORNIA SPECIAL EDUCATION HEARING
     OFFICE, MCGEORGE SCHOOL OF LAW et. al.
21   HEARING OFFICER, VINCENT PASTORINO
     MOUNT DIABLO UNIFIED SCHOOL DISTRICT et. al.
22   MILDRED BROWN, individually and in her official
     capacity as assistant superintendent of special education
23   KEN FERRO, individually and in his official capacity as
     Alternative Dispute Resolution Administrator
24

25        DEFENDANTS

26
          Plaintiff's hereby respond to defendants separately and collectively, in the pre answer motions
27
     filed under F.R.C.P. 12(b) (1), 12(b)(6), and12(e), ( herein throughout, defendants are hereby
28

1  referred to as Mcgeorge and MDUSD .) Plaintiff's requests the court bear in mind that specific

2  arguments are made to specific time periods to which the then codes and laws applied, current

3  codes and laws that were not in effect during times such as the year 2003 or prior to, can not be

4  made applicable in defendants defenses and/or constructed in such a manner to add confusion to

5  the courts or obstruct from the rights of the plaintiff's by the referencing of recent or current code

6  and laws that attempt to relieve defendants of unlawful acts or omissions retroactive. Codes and

7  laws that prospectively take effect in December 2007 should also not be an acceptable form of

8  defense retroactive to the dates mentioned in the original complaint.

9      All claims plaintiff's re allege and incorporate by reference as though fully set forth in the

10  complaint therein are inclusive to McGeorge and  MDUSD with emphasis added to items

11  #14,16,17,18, and 19 whereas plaintiff reiterates in terms of this opposition brief;  "wherever any

12  defendant is alleged to have done or omitted to do anything, said allegation shall be deemed to

13  mean and include an allegation that the corporation did or omitted to do said acts through it's

14  agents, servants, employees and representatives, including but not limited to, it's officers,

15  directors, and managing agents, and that the said officers, directors, and managing agents

16  authorized and approved said acts and omissions and ratified same. Plaintiff's are informed and

17  believe and therefore allege that each of the defendants is responsible for the pattern and practice

18  of events herein alleged, or is a necessary party for obtaining appropriate relief. In performing

19  each of the acts alleged below, and in their failure to fulfill their legal contractual responsibilities

20  set forth below, each defendant acted jointly or individually as agents for each other and for all

21  other defendants. The injuries inflicted upon plaintiff's, and each of them, occurred because of

22  the actions and omissions of the defendants.

23      On 9/13/07 defendant MDUSD filed pre answer motion to plaintiff's complaint siting the

24  sole defense of F.R.C.P. 12 (e).. If the court grants MDUSD's FRCP 12 (e) motion, plaintiff's

25  hereby request a minimum of 30 days to amend the complaint. The courts are to construe

26  pleadings to allow "substantial justice" and give leave to amend "freely"... when justice so

27  requires"

28

1    Plaintiff's hereby request the court note MDUSD pleadings that "if the motion under 12(e) is

2    granted, the court may only strike after such time that the court fixes for amendment of the

3    complaint. Plaintiff specifically points out to the court, his attack on MDUSD pre answer motion

4    where F.R.C.P. 12 (g) consolidation of defenses, and F.R.C.P. 12 (h) waiver of certain defenses,

5    and F.R.C.P. 12 (b) are referenced as follows in no specific order quoting the F.R.C.P.

6    amendments;

7    Certain specified defenses which were available to a party when he made a pre answer

8    motion, but which he omitted from the motion are waived. (in the present matter, rule 12 (b) (1)-

9    (7) ). A party who by motion invites the court to pass upon a threshold defense should bring

10   forward all the specified defenses he then has..., The waiver reinforces the policy of forbidding

11   successive motions. The specified defenses are waived by failure to raise them by a motion

12   under rule 12, the time allowed under F.R.C.P. 15(a) to amend has passed. The specified

13   defenses are of such character that they should not be delayed and brought up for the first time by

14   means of an application to the court to amend the responsive pleading. The language of the

15   subdivisions is made clear. The MDUSD has had ample opportunity to properly motion the court

16   in a pre answer defense and has failed.

17   MDUSD has also failed in it's pre answer motion pleadings  under F.R.C.P. 12 (b) (6) to

18   properly motion for same. Their 9/13/07 motion indicates FRCP 12(e) by itself. The MDUSD

19   proposed order supports this by specifically omitting any such motion in prayer claiming FRCP

20   12 (b)(6) and as such cannot submit papers such as request for judicial notice of matters outside

21   the pleadings when they have not properly motioned before the court under rule 12(b)(6).

22   The extraneous papers submitted for judicial notice can not be taken into consideration in the

23   instant matter. The MDUSD defense in their pre answer motion relies solely on FRCP 12 (e).

24   Moreover, the MDUSD defendants can not simply belatedly file notice of joinder with the

25   McGeorge defendants on their pre answer motion under FRCP 12 because they failed to motion

26   on the threshold defenses and, after the time has passed for MDUSD to amend under FRCP 15

27   (a), and certainly not on a un motioned notice document. The MDUSD passed on all other

28   defenses  other than FRCP 12 (e). Plaintiff's further reserve oral argument as to when the

1   MDUSD actually submitted the joinder notice for filing and when it was actually entered into the
2   courts computer system. The daily printouts of the case documents do not list such a filing until
3   several days after the fact. Of more significance, the MDUSD **never** motions for plaintiff's
4   complaint to be dismissed, they simply ask for a more definitive statement to which plaintiff's
5   request 30 days for amendment and shall plead with greater specificity as to the unprecedented
6   attack on plaintiff's children if the courts are to grant their request.

7       On 9/25/07, the notice of joinder finally appeared on the courts computer system (1 court
8   business day after plaintiff filed his executed summons via the O.S.C. from the CAND, the
9   joinder entry was dated to 9/21/07) as MDUSD realized their mistake regarding the content of
10  the executed summons that they were indeed being sued as a public entity et. al. and attempted to
11  join McGeorge through their un motioned collateral joinder. MDUSD actions are strongly
12  opposed by this opposition brief on all defenses other than FRCP 12(e). Plaintiff's hereby
13  submit exhibit **"A"** to fight their exhaustion argument they attempt to attach to with the
14  McGeorge defendants. MDUSD educators handbook for administrators pg. 23, clearly states that
15  administrative hearings are not required prior to OCR involvement or *(ie; acts of congress, civil*
16  *rights, money damages not available under IDEA, see plaintiff's 1/13/03 issues (case SN03-*
17  *00076) 7-11 & resolutions 5-6)* court action ,compensatory damages possible, under section 504
18  of the rehabilitation act of 1973, State Department of Education has no monitoring, complaint
19  resolution involvement. Further, the doctrine of exhaustion of administrative remedies does not
20  apply when this statutory scheme provides for an administrative remedy that is cumulative to a
21  judicial remedy and the party elects to pursue to judicial remedy. See *California Correctional*
22  *Peace Officers Ass'n V State Personal Bd.(1995) 10 C4th 1133, 1151, 43 CR2d 693; Mckee V*
23  *Bell Carter Olive Co. (1986) 186 CA3d 1230, 1240, 231 CR 304. City of Susanville V. Lee C.*
24  *Hess Co. (1955) 45 C2d 684, 689, 290 P2d 520.*

25  The subject matter that attaches to the exhaustion of remedies is clearly constitutional in nature
26  establishing the nexus to proceed directly to the district courts.

27      MDUSD can not purport to plead the insignificance of Ryan's Federal contract by
28  attempting to attach to McGeorge for complete dismissal. They were personally involved with

1  the execution of this contract and it states " This agreement is entered into, and shall be construed
2  and interpreted in accordance with the laws of the State of California and the laws of the United
3  States.

4

5  Plaintiff exhausted personal talks with Dr. Lou Barber, Federal Consent Decree
6  Administrator at public input session. In review of these talks, Dr. Barber specifically stated
7  plaintiff children are part of the consent decree even though they were not original claimants and
8  MDUSD violated this decree by denying student 1 full year of education and special education
9  services.

10  To place this opposition brief against McGeorge in proper perspective, one must understand
11  the history behind their role in this matter as McGeorge School of Law, Institute for
12  Administrative Justice, Special Education Hearing Office. Plaintiff alleges the following history
13  as motive leading up to the complaint. In the event the court grants McGeorge motion under
14  FRCP 12 (e), plaintiff requests a minimum of 30 days to submit a amended complaint.

15  Federal law prohibits California Department of Education (C.D.E.) from conducting special
16  education and due process hearings itself. From 1981 through 1988 The Office of Administrative
17  Hearings (O.A.H.) Conducted the due process hearings, but not the mediation conferences for
18  C.D.E.. From 1989 to mid 2005, C.D.E. has contracted with McGeorge to conduct both the
19  special education mediation conferences and the due process hearings until the second half of
20  2005 when the O.A.H. took over again via appeal of the contract by order through the State of
21  California Personal Board, an agency of constitutional origin. (see , SPB Board Decision PSC#
22  03-04 and SPB Board Decision PSC# 04-05)

23  Plaintiff's position must be understood by the Federal courts to place the scope of the matter
24  in proper perspective regarding the futility of any exhaustion of CDE administrative remedies at
25  the state resolution process (SRP). Plaintiff's Michael Jr. SEHO decision was ordered on
26  4/30/03. At all times during Michael Jr.s due process hearing, McGeorge and CDE were
27  engaged in intense contract battle with OAH and their appeal decision was pending at all times
28  during. Plaintiff contends any involvement at the SRP level would have been denied no matter

1   what the submissions were. In that premises it would have been futile to attempt to exhaust those

2   remedies.  The high stakes contract bid war was of such magnitude, and importance to the

3   players, Michael Jr's issues or case would have been futile given the nature of his issues and the

4   discriminatory treatment he already received at the due process level.

5      Michael Jr's. history is replete with the fact that the MDUSD IEP team determined that his

6   behavior was a direct manifestation of his disability (autism) at the manifestation determination

7   IEP, and before the MDUSD gave him 10 assault and battery charges to him against the

8   untrained yard duty /shadow aid and 10 suspensions with crime report numbers sent to the state

9   of California, and had authorized the 4 point restraint hold down system to be used on him by

10   staff prior to, and  at the emotionally disturbed placement they initiated upon Michael Jr. that

11   triggered the state due process hearing, and the fact that they knowingly let him sit at home with

12   no special education schooling or services for the entire 2002-2003 school year, and the fact that

13   he vomited in cycles several times a day due the stress, that was hidden from his school file,

14   created an insurmountable obstacle and futility  for plaintiff's to overcome exhaustion at the SRP

15   level.

16      SEHO and CDE appealed from the SPB executive officer's 4/30/03 disapproval of their

17   contract or on the same day (4/30/03) Michael Jr's due process decision was issued, this meant,

18   during all times of Michael's due process hearing and prior to,  defendants had advance

19   knowledge of the high stakes contract that was pending. Plaintiff states this influenced Michael's

20   due process rights. Therefore, any exhaustion sent to CDE would have been futile and was most

21   likely a factor for McGeorge to violate Michael's contract rights relating to the complaint and

22   specifically 1st, 5th and 14th amendment. The contract bid war created such a conflict as to render

23   any exhaustion remedy through the defendants futile. Surely it would have been used against

24   them by the OAH.

25      The subject matter in plaintiff's 4/27/07 complaint is appropriate under 28 U.S.C. Sec.1331 ,

26   1343(a)(3), and 1343(a) (4) pertaining to the United States District Courts original jurisdiction of

27   this matter, under the constitution, laws or treaties of the United States. ie; Acts of Congress.

28      The "origin of the agency" under Cal. Const. Article IX Sec 7  that governs the

1    SEHO/McGeorge due process hearings is constitutional.  The provisions that regulate the due
2    process hearings are the administrative procedure act (APA)  found in the California Government
3    Code (GOV) as lawfully  adopted or promulgated  by the CDE on file with the secretary of state
4    in accordance with the regulations as drafted, including but not limited to the California Code of
5    Regulations (CCR). With that said, plaintiff's due process hearings were to be implemented
6    under the APA. The CCR section 3089 specifically states the exclusion of all  non formal
7    hearings regarding special education due process proceedings thus rendering them "formal"
8    under the APA.

9         In noting a sole argument in the event of a FRCP 12(e) is granted, plaintiff's site failure to
10   provide a administrative law judge as required by the APA is grounds for nullifying the decision,
11   or in the instant matter, voiding any exhaustion, claimed immunities that were not within the
12   scope of judicial jurisdiction, judicial discretion, state personal board, conduct of the hearings or
13   applicable law thus substantiating the context of the contract violations named in the complaint,
14   insofar as that conduct violated  clearly established statutory or constitutional rights of which a
15   reasonable person would have known.  A court considering a claim of qualified immunity must
16   first determine whether the plaintiff has alleged the deprivation of a constitutional right, then
17   proceed to determine if the right was "clearly established".  If the agency adopts a policy without
18   proper procedure, it is a under ground regulation and is unenforceable. If the agency has issued,
19   used, enforced or attempted to enforce a regulation not formally adopted by the agency by statute
20   to be on file with the secretary of State it is also unenforceable. In the instant matter, the
21   contractual based complaint filed on 4/27/07 includes acts of congress, treaties and the
22   constitution. All formal hearings under the APA were to be presided over by a administrative law
23   judge during that time span in question.

24        The defendant McGeorge issued a regular hearing officer to preside over plaintiff's hearing
25   even after the 1st one was recused for ex parte talks with the MDUSD. Defendants McGeorge
26   and MDUSD can not utilize the cleanup legislation regarding Ed. Code 56000-56507 adopted in
27   2005 to escape the then requirements  including 56504.5 and 56505, with emphasis on (k) The
28   then standards in 2003 specifically also made McGeorge an employee of MDUSD by way of

1  partial payment through interagency agreement and bias was evident from the onset.

2  Constitutional due process requires a competent and impartial tribunal in administrative hearings.

3  *Peters V. Kiff (1972) 407 US 493, 33 L Ed 2d 83, 92 S Ct 2163.* which did not occur in plaintiff's

4  case. The exhaustion would have been futile in that it would have offered inadequate relief, as

5  the defendants have implemented a policy or pursued a practice of general applicability that was

6  contrary to law.

7  Since the origin of the agency was created by the constitution, McGeorge can not escape by

8  its then contractual obligations to special education students and plaintiff's siting immunity or

9  attempting to argue its part of the legislative branch.

10  The United States Constitution provides that no state shall deprive any person of life, liberty,

11  or property without due process of law. U.S. Const.amend XIV Sec1. The due process clause

12  applies to state agency decision making and is the foundational requirement of fair state agency

13  administration adjudication. *See Goldberg V. Kelly (1970) 397 US 254, 25 L Ed 2d 287, 90 S Ct*

14  *1011.*

15  Due process imposes procedural constraints on a governmental decision that may deprive an

16  individual of a liberty or property interest within the meaning of the due process clause of the 5th

17  and 14th amendments. *See Mathews V. Eldridge (1976) 424 US 319, 332, 47 L Ed 2d 18, 96 S Ct*

18  *893.*

19  Property interests protected under the United States Constitution include more than tangible

20  items. The 14th amendment's procedural protection of property is a safe guard of the security of

21  interests that a person has already acquired in specific benefits. These interests take many forms

22  specifically including education and have been recognized as property within the 5th and 14th

23  amendments. The entitlements can further be determined by the reference to the statutes,

24  regulations, contracts and practices. *408 US at 577, 33 L Ed 2d at 561; Perry V. Sinderman*

25  *(1972) 408 US 593, 601, 33 L Ed 2d 570, 92 S Ct 2694. See, e.g., Brock V. Roadway Express,*

26  *Inc.(1987) 481 US 252, 95 L Ed 2d 239, 107 S Ct 1740 (contract); Goldberg V Kelly (1970) 397*

27  *US 254, 25 L Ed 287, 90 S Ct 1011 (statute); Traverso V. People ex rel Dept. of Transp. (1993) 6*

28  *C4th 1152, 26 CR2d 217 (state permits); Williams V. County of Los Angeles (1978) 22 C3d 731,*

1  *150 CR 475 (county ordinance);Bush V. California Conserv. Corps (1982) 136 CA3d 194,* 185
2  *CR 892 (contact)*

3      The California Constitution also provides that a person may not be deprived of life, liberty, or
4  property without due process of law Cal. Const. art I Sec. 7 (a) . The California due process
5  clause is construed to be identical in scope and purpose to the due process clause of the United
6  States Constitution. *Kruger V. Wells Fargo Bank (1974) 11 C3d 352, 113 CR 449.* Other
7  provisions of the California Constitution directly affect California Administration adjudication.
8  The most notable of these is the separation of powers principle found in the Cal. const. art III,
9  Sec. 3.5: regarding an administrative created by the constitution. (save for 12(e) argument)
10  There are also provisions of the Cal. Const. that control the hearing procedures of specific
11  agencies. It should be noted that, while the Cal. Const. may provide specific procedures for
12  administrative adjudication by particular constitutional agencies, these procedures must also meet
13  the due process test of the U.S. Const. California law has expanded on federal due process
14  protections. *See Ryan V California Interscholastic fed'n (2001) 94 CA4th 1048, 1069, 114 CR2d*
15  *798.* While McGeorge argues the federal courts are generalists regarding plaintiff's claims,
16  plaintiff states the civil rights claims are not in the subject matter of the administrative tribunals
17  and the federal courts are better suited to hear such matters.

18      During the plaintiff's due process hearing, plaintiff attempted to lay the foundation making
19  the necessary procedural pre requisites for relief and was blocked by the hearing officer of
20  McGeorge as per the 4/27/07 complaint.

21      Plaintiff argues the doctrine of preservation of issues is related to the doctrine of exhaustion
22  of remedies *( See Pierce Administrative Law Treaties Sec. 15.8 (4th ed 2002)* and does not bar a
23  court from considering an issue not raised before the agency when circumstances warrant eg;
24  when an injustice would result. ( as contained in 4/27/07 complaint) See *Hormel V. helvering*
25  *(1941) 312 US 522, 557, 85 L Ed 1037, 1041, 61 S Ct 719. See also Greenblatt V. Munro (1958)*
26  *161 CA2d 596, 606, 326 P2d 929.*

27      Even at this juncture, the plaintiff's are excused from the exhaustion requirement because
28  irreparable injury would result from pursuing the administrative remedy. And, pursuing the

1  administrative remedy would be futile. See *(In re Locks (2000) 79 CA4th 890, 893, 94 CR2d*
2  *495; )* The agency itself, lacks jurisdiction over the party or subject matter (ie; civil rights) and,
3  more importantly, the agency is estopped to raise the defense of failure to exhaust administrative
4  remedies because the agency itself prevented plaintiff from pursuing the complete process by
5  denying plaintiff's civil rights, 504/ADA issues at hearing, thus denying the process of laying
6  the foundation, due process, and equal protection. *(Shuer V. County of San Diego (2004) 117*
7  *CA4th 476, 486, 11 CR3d 776.)*

8    Moreover, any exhaustion argument must go back to the previous contract violations that
9  precluded plaintiff's issues. Under FRCP 12 (e), if ordered, specific arguments shall be made
10 regarding the absence of the violations, that would have sufficed the exhaustion claim.

11

12   The exhaustion doctrine is inapplicable when the agency does not have exclusive jurisdiction
13 over a case *(Miller V. Superior Court (1996) 50 CA 4th 1665, 1675, 58 CR2d 584* (common law
14 case) and, *South bay Creditors Trust V. General Motors Acceptance Corp. (1999) 69 CA4th*
15 *1068, 1076, 82 CR2d 1* (citing Miller, court held exhaustion not required before complainant
16 brings action for common law claims)

17   Inapplicably also applies when remedies are inadequate or nonexistent (Rosenfield V.
18 Malcolm (1967) 65 C2d 559, 566, 55 CR 505; Payne V. Anaheim Mem. Med. Ctr. Inc. (2005)
19 130 CA4th 729, 30 CR3d 230)

20 / / / / / / /

21 See also, *Witte V. Clark County School District, 197 F.3d 127, (9th Cir. 1999)*, *Christopher S. V.*
22 *Stanislaus County Office of Education (2004) (9th Cir. 2004)*

23   If the statute or procedure providing the administrative remedy does not establish " clearly
24 defined machinery for the submission, evaluation, and resolution of complaints by aggrieved
25 parties", the exhaustion doctrine does not apply. *See Jacob V. State Bd. of Optometry (1978) 81*
26 *CA3d 1022, 147 CR 255. See also Unfair Fire Tax Comm. V. City of Oakland (2006) 136 CA4th*
27 *1424, 39 CR3d 701.In Endler V. Schutzbank (1968) 68 C2d 162, 168, 65 CR 297*, for example,
28 the petitioner was not required to exhaust what the court characterized as an informal sort of

1  'heads I win, tails you loose" procedure when the agency refused to comply with the APA and

2  choose to rule regardless of the issues presented such as documented in the 4/27/07 complaint.

3  Plaintiff also argues the defendants used "hide the ball" strategies to prevent any parties

4  aggrieved at a due process hearing of the clearly defined mechanism for exhaustion.

5  A distinct subset of the exhaustion doctrine is the requirement for preservation of specific

6  issues during the administrative process so that those issues can be raised at a later judicial

7  proceeding. Thus, McGeorge blocked this requirement and made it an impossibility for

8  plaintiff's as alleged in the 4/27/07 complaint.

9  A State can not impair claims under the federal Civil Rights Act (42USC sec 1983) by

10  imposing substantive limitations or creating judicial or administrative remedies that claimants

11  must first exhaust. *See Williams V. Horvath (1976) 16 C3d 834, 841, 129 CR 453. This exception*

12  *to the exhaustion requirement prevents frustration of (16 C3d at 841) the purposes underlying*

13  *(the federal civil rights act)- ie., to serve as an antidote to discriminatory state laws, to protect*

14  *federal rights where state law is inadequate, and to protect federal rights where state processes*

15  *are available in theory but not in practice.* Numerous United States Supreme Court cases

16  reiterate the rule that exhaustion of administrative remedies is not required, based on the unique

17  history of the Civil Rights Act and its role in protecting federal civil rights. See e.g., *Darby V.*

18  *Cisneros (1993) 509 US 137, 144, 125 L Ed 2d 113, 113 S Ct. 2539; Patsy V. Florida Bd. of*

19  *Regents (1982) 457 US 496, 500, 73 L Ed 2d 172, 177, 102 S Ct. 2557. See also Brosterhous V.*

20  *State Bar (1995) 12 C4th 315, 326, CR2d 87* (supreme court reviewed extensive United State

21  Supreme Court decisions holding that party need not exhaust alternative remedies before

22  initiating 42 USC Sec. 1983 action)

23  Plaintiff contends mandamus was satisfied during the harvest season within the context of

24  the requirements of the California Administrative Mandamus Manual.

25  If defendants should proceed down this avenue further, in doing so, they will have

26  taken these proceedings outside the four corners of the original complaint.

27  In opposition to the FRCP 12(b) (6) motion, plaintiff states, the question presented by a

28  motion to dismiss is not whether the plaintiff will prevail in the action at this stage of the

1  proceedings, but whether the plaintiff is entitled to offer evidence in support of the claim. The

2  court must assume that plaintiff's allegations are true and must draw all reasonable inferences in

3  plaintiff's favor. Even if the face of the pleadings suggests that the chance of recovery is remote,

4  the court must allow the plaintiff to develop the case at this stage of the proceedings. On each

5  claim stated, plaintiff's re allege and incorporate by reference as through fully set forth therein,

6  the paragraphs 1-39 inclusive and damages sustained as a result of the claims paragraphs 43

7  through 45.

8  This opposition brief responds to defendants both separately and collectively.

9

10  Respectfully submitted,

11

12  Michael Peterson Pro Se

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mt. Diablo Unified School District

## *"ACCESS TO SUCCESS"*

A Procedural Handbook for Educators
*Section 504 of Rehabilitation Act of 1973*

## Table of Contents

| *Section* | | *Page* |
|---|---|---|
| I. | Overview of Section 504/Eligibility | 4 |
| II. | Section 504 & IDEA/Special Education | 5 |
| III. | Definitions | 6 |
| IV. | Section 504 Protection | 7 |
| V. | Identification Process | 8 |
| VI. | Procedural Safeguards and Parent/Guardian Rights | 9 |
| VII. | IDEA/Section 504 Chart: Identification Steps | 10 |
| VIII. | Section 504 Team Membership | 11 |
| IX. | Development Of A Section 504 Accommodation Plan | 11 |
| X. | Follow Up Steps | 12 |
| XI. | Discipline & Section 504 | 12 |
| XII. | Resolving Disputes | 17 |
| XIII. | A Comparison: IDEA/Section 504 | 19 |
| XIV. | Appendix | 24 |
| | A. Notice of Parent/Guardian and Student Rights — 25 | |
| | B. Section 504 Notice of Nondiscrimination — 27 | |
| | C. Sample Parent/Guardian Letter — 28 | |
| | D. Section 504 Student Identification Report and Accommodation Plan — 29 | |
| | E. Examples of Section 504 Accommodations — 33 | |
| | F. Manifestation Determination Finding Form — 37 | |
| | G. Attention Deficit/Hyperactivity Disorder — 38 | |
| | H. Frequently Asked Questions — 41 | |

3
"
*A*"

*A Comparison:  IDEA and Section 504*

| COMPONENT | IDEA | SECTION 504 |
|---|---|---|
| **Due Process** | Both statutes require districts to provide impartial hearings for parent/guardian who disagree with the identification, evaluation, or placement of the student. | Same as IDEA. |
| **Placement Procedures** | Delineates specific requirements. | Requires that the parent/guardian have an opportunity to participate and be represented by counsel.  Other details are left to the discretion of the local school district.  Policy statements should clarify specific details. |
| **Exhaustion** | Requires the parent/guardian to pursue administrative hearing before seeking redress in the courts. | Administrative hearings not required prior to OCR involvement or court action; compensatory damages possible. |
| **Enforcement** | Enforced by the U.S. Office of Special Education Programs.  Compliance is monitored by the State Department of Education and the Office of Special Education Programs. | Enforced by the U.S. Office of Civil Rights. |
|  | The State Department of Education resolves complaints. | State Department of Education has no monitoring, complaint resolution, or funding involvement. |