1  Michael Petersen, Parent PRO SE
   next of friend of Michael Petersen Jr.
2  And Ryan Petersen
   P.O. Box 2462
3  Visalia Ca. 93291

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11

12  MICHAEL PETERSEN on behalf of himself and          CASE # C07-00646LJO
    parent and next of friend to Mike Jr. and Ryan          #C07- 02400SI
13  disabled minor children PRO SE

14      PLAINTIFF'S
                                                       PLAINTIFF'S REPLY BRIEF TO
15                                                     OPPOSITION FOR CHANGE OF
                                                       VENUE, AFFIDAVIT FOR BIAS
16                                                     AND PREJUDICE, MEMORANDUM
                                                       IN SUPPORT WITH EXHIBITS,
17                                                     CANCEL CAND SCHEDULING
                                                       ORDER
18      V.                                             MEMORANDUM OF POINTS
                                                       AND AUTHORITIES
19
                                                       JUDGE: Susan Illston
20                                                     DATE: November 9, 2007
                                                       TIME: 9:00am
21                                                     DEPT. Courtroom 10

22

23  CALIFORNIA SPECIAL EDUCATION HEARING
    OFFICE, MCGEORGE SCHOOL OF LAW et. al.
24  HEARING OFFICER, VINCENT PASTORINO
    MOUNT DIABLO UNIFIED SCHOOL DISTRICT et. al.
25  MILDRED BROWN, individually and in her official
    capacity as assistant superintendent of special education
26  KEN FERRO, individually and in his official capacity as
    Alternative Dispute Resolution Administrator
27  ////////

28  ///////



**OPENING STATEMENT**

This reply brief and controversy in whole is a representative of difficulties special education students face collectively, change of venue and inquiry thereof shall represent the public importance and protection of all. Plaintiff's are receptive to amicus briefs in support of, and are influenced by support groups like Families For Early Autism treatment, (FEAT) and the Blue Ribbon Autism Commission Task force. All to often it seems the special education due process hearing system are the proving grounds for law firms that take advantage of untrained and unknowing parents vulnerable to the laws, emotions, stress and confusion of their childs disabilities in favor of their school clients. Most often, the disabilities trace back to the parent and a compounded situation occurs. This practice has to stop with new legislation and regulations.

This reply brief applies to MDUSD et. al and McGeorge et. al. individually and collectively as follows:

On 4/27/07 plaintiff's paid court filing fee of 350.00 in the Eastern District court, Fresno and requested jury demand pursuant to FRCP38(b). Plaintiff's are United States citizens and are entitled to just compensation of law. FRCP 1 states, this rule "shall be administered to secure the just, speedy, and inexpensive determination of every action. The word "administered" was added as a amendment " to recognize the affirmative duty of the court to exercise the authority conferred by these rules (see; Rules Enabling Act 28 USC 2072) to ensure that civil litigation is resolved not only fairly, but without undue cost or delay..."

Plaintiff request the court acknowledge McGeorge et. al. has not filed a opposition with points and authorities to challenge plaintiff's change of venue motion and has thereby consented to the change of venue without objection.

Plaintiff's interpretation of the laws and codes as they apply to this case are simply the application of such, to obtain the best possible outcome for the minor children limiting the human emotion factor. On appellant review, plaintiff would ask, are we different in our traits and emotions as humans in relation to the job title we hold,? Even given the superiority of a public official?, are we susceptible to possible mistakes or other influences due to our past experiences... were plaintiff's prejudiced in the process, or lack of, their case in the CAND? An astounding yes, should be the proper answer and in the safety of our process, we should take all precautions to ensure proper due process and equal protection and change the venue to the Eastern District.

Defendants have done their best to paint this plaintiff in bad light with the courts and pit him against a federal judge but they simply have their facts wrong. Appellant question,... What better strategy do the defendants have than to take focus off themselves and the violations they have inflicted upon the minor children than to accuse plaintiff as being vexatious? ( which he is not) MDUSD counsel should re read case files to correct wrong statements pertaining to this plaintiff's involvement in past litigation. It is understandable that defendants employ this bait and switch tactic, minor children have been hurt and defendants have to alter the blame and protect their own.

## JURY RIGHTS UNDER CAL. CONST. ART. 1 SEC. 16
## & 7th AMENDMENT OF U.S. CONST.

The complaint was transmitted to the California Northern District Court (CAND) on 5/1/07. Proper commencement of action was delayed and objected thereto pursuant to plaintiff's 5/14/07 affidavit which was timely and sufficient as to the change of venue. Plaintiff's have made an express demand for jury trial and have been substantially delayed in the CAND. The ongoing stress, confusion, intimidation and general discomfort have been extended due to lack of process. Instead, well over 120 days lapse has occurred with the process of the action because plaintiff was denied proper summons in the CAND. thus delaying jury trial in favor of defendants.

The jury pool is prejudiced in the CAND regarding these matters and there is evidence that an impartial trial cannot be had in the CAND. The MDUSD defendants have used resources in the local media community to influence the outcome of the case through article regarding sources of financial concerns within their school district. During these motion proceedings filed by defendants, and as the MDUSD as the source of the article, MDUSD has raised issue that attempts to separate their current legal counsel from contract issues related to plaintiff's case and themselves during exact times retroactive to plaintiff's claims.

On October 12, 2007 the Contra Costa Times, watchdog of public agencies printed a article that prejudiced the jury pool in the CAND due to MDUSDl defendants past legal contract spending,( with their current counsel Miller, Brown & Dannis) including eliminating teacher

1  positions to cut costs and increase in a parcel tax they are gathering support for. (see exhibit
2  "A")
3      In sum, with the district defendants as the source of the information, and in having the
4  influence over public media, they have shown that a impartial trial can not be had therein at the
5  CAND and have tainted the jury pool having already influenced their view, and laid the
6  foundation of <u>their</u> view of "public good" or out of pocket public taxes against proper due
7  process of suit regarding "interests of the litigant" receiving no special education or services for
8  an entire school year, ect.
9      The media group governing the C.C. Times operates adjoining newspapers throughout the
10 entire CAND court system and this case must be transferred back to the Eastern District.
11 The Eastern District Court summons controls this case for personal jurisdiction and venue
12 should be returned to the Eastern District as to not further influence the jury pool. The best
13 interests of justice, must outweigh any inconvenience arguments pertaining to witnesses.
14 Plaintiff's preserve all rights to suit in the event defendants use slander or libel against plaintiff's
15 during or after this litigation as a tool to further damage plaintiff's, or harass, annoy, embarrass
16 or otherwise disturb them in any way shape or form through their influences and control of the
17 public media methods.
18
19 **Pursuant to FRCP 12 in plaintiff's opposition brief filed on 10/19/07 and fully incorporated**
20 **herein, all defendants have previously waived any defense to lack of personal jurisdiction,**
21 **lack of improper venue, insufficiency of process, or insufficiency of service of process and**
22 **their arguments against change of venue must fail. MDUSD defendants have joined with**
23 **Mcgeorge defendants and have thereby consented to the jurisdiction and venue of the**
24 **Eastern district.**
25                         **PERSONAL JURISDICTION**
26
27     Eastern District did not transfer the case siting 28 USC 1631, on 5/1/07 and certainly could
28 not have perceived the events and complaints pertaining to plaintiff's 5/14/07 affidavit. As it

turned out , was meant to be, and previously <u>acknowledged by defendants</u> by their appearance under FRCP 12, the <u>Eastern District summons established personal jurisdiction over the defendants</u>. That is, "the power of the court over the person of a defendant." **Defendants** have specifically **waived** <u>defenses under FRCP 12 (b) (2), lack of jurisdiction over the person, FRCP 12(b) (3),</u> **improper venue** , FRCP 12(b) (4), insufficiency of process, FRCP 12(b) (5), insufficiency of service of process. Moreover, the 1966 amendment to the FRCP states: " if a defendant moves before answer to dismiss the complaint for failure to state a claim, he is **barred** from making a further motion presenting a defense of improper venue, if that defense was available to him when he made his original motion.

As 28 USC Sec 1631 states "want of jurisdiction" plaintiff's specifically note, and would certainly make appellant argument, that the C.A.N.D. lacks personal jurisdiction over defendants, *(as also applied in plaintiff's opposition brief filed 10/19/07 re: exhaustion of administrative remedies)* ie; A lack of authority to exercise in a particular manner a power which board or tribunal has; the doing of something in excess of authority possessed. see (*Evans V. Superior Court in and for the City and County of San Francisco, 14 Cal.2d 563, 96 P.2d 107,116* )

The plaintiff's demanded the cancellation of the "alias" summons wrongly issued by the CAND and submitted 5 new individual summons enclosed to the CAND for re issuance. The <u>CAND took no action</u>. Plaintiff's have proven the alias summons to be defective and of no effect, thereby establishing <u>no</u> personal jurisdiction over the defendants in the CAND. Defendants have acknowledged the Eastern District summons and it is clear that the eastern summons writ controls. Plaintiff's specifically acknowledge and agree that the Federal District Court system, as it relates to the subject matter jurisdiction of this case has horizontal uniformity in the District Court laws.

The reference of this 28USC Sec. 1631 also reiterates that the correct filing stamp date should be and is, 4/27/07. The District courts run concurrently in the state and a transfer does not and should not alter the filing date of the initial action to infringe upon the statue of limitations period of Plaintiff's action to protect the defendants.

**VENUE**

1   28 USC Sec. 1392 sites defendants or property in different districts in same state as " Any
2   civil action, of a local nature, involving property located in different districts in the same state,
3   may be brought in any of such districts"Plaintiff argues, the plaintiff children's property rights
4   that have been established regarding their education property rights qualify under this statute and
5   preserve as issue under appellant review the same. Complaint was correctly filed in the Eastern
6   District.

7   It is hereby included that McGeorge et. al.,University of the Pacific, Institute For
8   Administrative Justice, Special Education Hearing Office is located in Sacramento Ca., ancillary
9   to their campus's located in the Central Valley of Ca., also within the Eastern District of Ca. are
10  amenable to service of process therein including but not limited to provisions of Cal. Const
11  ART. IX Sec 9 (f).

12  Pursuant to Eastern District Local Rule 3-120 (f), a reverse form of forum shopping may have
13  occurred. Due to past litigation from others, the Eastern District Fresno, could have been
14  influenced negatively and sent this case to the CAND out of habit without considering the
15  Sacramento division for venue. Upon appellant review by plaintiff, and in the instant matter, an
16  obvious question entails that, if this local rule states that the Eastern court, Fresno... " upon it's
17  own motion... thought that an action may not have commenced in the proper court in accordance
18  with this rule, (although this has not been proved) the court must <u>transfer the same to another</u>
19  <u>venue **within** the district"</u> or Sacramento as was the case, and, as these courts are also in
20  continuous session, was the plaintiff's case prejudiced from the beginning and should it never
21  have arrived in the CAND in the first place, thus making precedence that should have granted the
22  instant change of venue back to the Eastern District from the CAND?. Were the plaintiff's
23  unfairly prejudiced by the CAND by not sending the case back to the Eastern District for
24  disposition especially considering the overwhelming facts plaintiff's have presented to the
25  CAND in the change of venue motion and reply brief?. Were the plaintiff's further damaged by
26  the CAND not transferring the case back to the eastern District?. The answer is yes, this case
27  should be returned back to the Eastern District by law, in the best interests of justice, that out
28  weigh any convenience of witnesses.

1  MDUSD's counsel, Miller, Brown & Dannis is located throughout the state of California and is
2  amenable to service as agents thereof on behalf of the defendants. MDUSD defendants are
3  adjoined with McGeorge defendants through interagency contracts making them amenable to
4  process in the Eastern District. The claims arose in the Eastern District. The Eastern District has
5  personal jurisdiction over all defendants. The transferee court has subject matter jurisdiction over
6  the case. The requirements noticed under 28 USC 1404 and 28 USC 1391 have been met.

## LEGAL FRAMEWORK

### PLAINTIFF'S SEEK TO TRANSFER BACK TO THE EASTERN DISTRICT

Pursuant to 28 USC Sec. 1404(a), which states that in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought. The court is afforded broad discretion to decide whether transfer from one jurisdiction to another is proper. *SEC v. Savoy Indus. Inc., 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955))*. The decision to transfer is made by an individualized, case by case consideration of convenience and fairness..." *Van Dusan v. Barrack, 376 U.S. 612, 622 (1964)* The threshold question under Section 1404 (a) is whether the action might have been brought in the Eastern District. According to 28 USC Sec. 1391(e)(2),(C), a suit based on federal question, as is this one, may be brought "in any judicial district in which ... a substantial part of the events or omissions giving rise to the claim occurred, or a judicial district in which any defendant is subject to personal jurisdiction. Accordingly, it has already been established that the contractual nexus to the claims arose in the Eastern District and personal jurisdiction has been established via Eastern District summons. Thus the action could have been brought, and was brought in the Eastern District.

### THE BALANCE OF PRIVATE AND PUBLIC INTERESTS WEIGHS IN FAVOR OF TRANSFER BACK TO EASTERN DISTRICT

**Private interest factor #1,**

The plaintiff's initial choice of forum is afforded substantial deference, and the case should not have been transferred from plaintiff's chosen forum simply because another forum, in the courts view, may be superior to that chosen by the plaintiff. *(Pain v. United Technologies Corp.,*

1  *637 F.2d 775, 783 (D.C. Cir 1980)*. There is a factual nexus in the Eastern District.

**Private interests factor #2,**

Where the action arose, weighs heavily in favor of transfer back to the Eastern District. *(Blease v. Safety Transit Co., C.C.A.S.C., 50 F.2d 852, 854)* University of the Pacific, McGeorge School of Law, Institute For Administrative Justice, Special Education Hearing Office are located in the Eastern district and the contractual nexus with C.D.E. and counterparts has been established in the Eastern District. McGeorge has not challenged plaintiff's transfer motion and has thereby consented.

**Private interest factor #3,**

Convenience of the parties, as the court is well aware, a significant amount of the case is attended to by e-filing documents and personal appearances are far and few between. Even then, a more significant portion of the parties is located in the Eastern District. MDUSD counsel is located throughout the state and can represent their clients accordingly.

**Private interests factor #4**

Convenience of witnesses, may not be relevant in this case such that the court would factor it into it's analysis. This case involves contractual violations premised in the Eastern District and it is not clear that witnesses will be used in that the case can be largely adjudicated through documents. Even though, the majority of the witnesses that could be called are located within the Eastern District and therefore this change of venue and transfer would weigh in on the plaintiff's side.

**Private interest factor #5,**

The ease of access to sources of proof weighs in favor of transfer to the Eastern District. As previously mentioned, the contractual antecedent nexus is located in the Eastern District. The agencies, governing or connected to the issues are located in the same. Given our e-file/Internet capabilities in this modern day world, the parties have access to what ever they need in addition to any antecedent sources of proof that would be accessed in the Eastern District.

In sum, the court should find the private interest factors in favor of transfer back to the Eastern District.

**Public interest factor #1,**

The first public interest factor to be weighed by the court is the transferee courts familiarity with the governing laws. plaintiff has already established the District courts have horizontal uniformity of the laws and the case is federal question. Thus both courts are competent to interpret the federal statutes involved with this case and Eastern District should not be discounted on this factor.

**Public interest factor #2,**

The relative congestion of the calendars of the transferee and transferor courts weigh in favor of transfer to the Eastern District. The Populus of the CAND alone is enormous and the case load of the CAND is far greater than the Eastern District. Although the congestion is not sufficient reason to transfer alone, *(Starnes v. McGuire, 512 F.2d 918, 932 (D.C. Cir. 1974)*

**Public interest factor #3,**

The Supreme Court has emphasized the importance of this public interest factor in that there is a local interest in having localized controversies decided at home. *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)* The court must find that the public interest factor weighs most heavily in favor of transfer to the Eastern District. The court must consider where plaintiff's original venue choice was made given the controversy in the Eastern District, whether the issues involved constitutional issues rather than local laws or statutes, whether the controversy has some national significance and whether there was any involvement from significant parties in the Sacramento area and could the litigation benefit all special education students.

As the interests of public factors and justice are promoted when a localized controversy is resolved in the antecedent region that it arose in and impacts the most, the court should find that the final public interest factor supports transfer back to the Eastern District.

Respectfully submitted,

Michael Petersen

October 26, 2007

TIMES WATCHDOG •
AN EYE ON YOUR PUBLIC AGENCIES

PAGE A3

# District paid lawyers without board approval

Mt. Diablo schools remitted more than $5 million to law firm in five years without ever holding an open hearing

By Shirley Dang
STAFF WRITER

Mt. Diablo school district administrators paid more than $5 million to a law firm in the past five years without having obtained public school board approval of a contract, the district revealed this week.

By eliminating an open hearing on agreements, the district quelched public oversight of the firm's high fees, close to $1 million a year on average.

A parent and some trustees questioned the spending in a district with significant fiscal problems. One trustee questioned the superintendent's role.

The lapse in contract oversight violated board policy but also cast doubt on the district's overall fiscal management under superintendent Gary McHenry, aid board President Gary Eberhart.

"If it's happening in the in-

## BY THE NUMBERS

Fees paid to Miller, Brown & Dannis

| Year | |
|---|---|
| 2002-03 | $1,178,909 |
| 2003-04 | $784,032 |
| 2004-05 | $1,254,852 |
| 2005-06 | $1,084,697 |
| 2006-07 | $591,774 |
| 2007-08 to date | $200,568 |
| Yearly average | $978,853 |
| Total | $5,094,833 |

Source: Mt. Diablo Unified School District

stance of a single legal contract, where else is it happening? That's the bigger problem," said Eberhart, who called for an internal investigation. "We have to go through and find out why we got into this position, and if it's possible it's going on somewhere else."

Eberhart blamed McHenry for neglecting to bring the rate sheets or contracts to the board for approval. McHenry said he assumed the district had an ongoing agreement.

"I didn't know this is something that needed to be done year

See DISTRICT, Page 4

## District

FROM PAGE 3

to year," McHenry said Wednesday.

The district has used Miller, Brown & Dannis, a large San Francisco law firm, for more than 20 years. Gregory Dannis often bargains on behalf of the school district during teachers union contract negotiations.

School board members on Tuesday decided in a split vote to retain the firm at an estimated cost of $55,000 a month, or more than $660,000 this school year.

It was the first agreement the Mt. Diablo school board has signed with the company since 1999, said the district's in-house attorney, Greg Rolen.

Rolen had worked at Miller, Brown & Dannis and left in 2002. He joined the district in spring of 2005 and discovered the district was working without a contract while negotiating rates with the firm.

The firm had little to say. Responding to questions from the Times on Thursday, it issued a brief e-mail statement saying it sends fee agreements and rate information to all clients annually.

The firm's spokesman, Jerry Cooksey, said he lacked sufficient information on other firms' rates to comment on whether Miller Brown's were higher.

"Miller Brown & Dannis is proud to have served as principal outside legal counsel to the Mt. Diablo Unified School District for 30 years," Cooksey said.

According to the new contract, the company will charge the school district $215 to $275 an hour for work by the firm's partners, $215 an hour for special counsel, $185 to $215 an hour for associates and $110 to $125 an hour for paralegals. Nearly all other law firms employed by the district charge no more than $175 an hour, Rolen said.

"The attorneys are the ones getting rich at the taxpayers' expense," said Dorothy Englund, a parent of two students in the district. She asked the board to scrutinize the firm's legal fees more closely. She has filed several complaints against the district and faced Miller, Brown & Dannis lawyers during settlement negotiations.

Board members were divided in their reaction to the revelations. The high rates and lack of a contract concerned some. The other reaction was appreciation for good service and a rebuke for the district's failure to track its fiscal affairs.

Board member Paul Strange, who was a lawyer for the school district before joining the board, called the company's rates exorbitant. "They should be the firm that's giving us the biggest deal,"

Strange said.

Board member Linda Mayo said Miller, Brown & Dannis offered good service and said board members knew about legal costs and should be held equally accountable for any contracting errors. "It is the board's responsibility to decide what issues to bring before the public," Mayo said. "The board bears as much responsibility as the superintendent and staff."

After a debate, the board voted 3-2 to approve the contract. Eberhart and Strange voted against it. Mayo, April Treece and Dick Allen voted in favor.

Questions over the district's legal costs are coming to light as the district is attempting to gather support for a parcel tax that would bring in more money. The East Bay's second-largest district has a general fund budget of nearly $315 million.

McHenry said he would soon be looking to eliminate positions to cut costs.

Englund said the district could use money saved on lawyers for teacher compensation before turning to real estate taxes.

"I believe we do need a parcel tax," Englund said. "But I'm not sure I trust the management with these extra dollars."

*Shirley Dang covers education. Reach her at 925-977-8418 or sdang@bayareanewsgroup.com.*

"A"