1   SUE ANN SALMON EVANS, State Bar No. 151562
    AMY R. LEVINE, State Bar No. 160743
2   MATTHEW JUHL-DARLINGTON, State Bar No. 215375
    MILLER BROWN & DANNIS
3   71 Stevenson Street, 19th Floor
    San Francisco, CA  94105
4   Telephone: (415) 543-4111
    Facsimile: (415) 543-4384
5
    Attorneys for Defendants
6   MOUNT DIABLO UNIFIED SCHOOL DISTRICT, MILDRED
    BROWN, and KEN FERRO
7
8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  MICHAEL PETERSEN on behalf of          Case No.  C07-02400 SI
    himself and parent and next of friend to
12  Mike Jr. and Ryan disabled minor children  **DISTRICT DEFENDANTS' REQUEST FOR**
    PRO SE,                                 **JUDICIAL NOTICE IN SUPPORT OF THEIR**
13                                          **SECOND MOTION TO STRIKE OR DISMISS**
                                            **THE COMPLAINT AND FOR A MORE**
14              Plaintiffs,                 **DEFINITE STATEMENT PURSUANT TO**
                                            **FEDERAL RULE OF CIVIL PROCEDURE**
15         v.                               **12(e)**

16  CALIFORNIA SPECIAL EDUCATION
    HEARING OFFICE, MCGEORGE
17  SCHOOL OF LAW et al. HEARING
    OFFICER, VINCENT PASTORINO          Hearing Date:    February 2, 2008
18  MOUNT DIABLO UNIFIED SCHOOL         Hearing Time:    9:00 a.m.
    DISTRICT et al MILDRED BROWN,       Courtroom:       10, 19th Flr.
19  individually and in her official capacity as  Judge:           Hon. Susan Illston
20  assistant superintendent of special
    education KEN FERRO, individually and  Trial:           None
21  in his official capacity as Alternative
    Dispute Resolution Administrator,
22
23              Defendants.

24

25         Pursuant to Federal Rule of Evidence 201(b), defendants MOUNT DIABLO UNIFIED

26  SCHOOL DISTRICT, MILDRED BROWN, and KEN FERRO, respectfully request that this

27  Court take judicial notice of the following documents which are not subject to reasonable dispute

28                                          1

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA  94105

in that they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned:

1)    Order Requiring More Definite Statement; Granting Request for Judicial Notice; and Denying Motion to Dismiss, dated June 21, 2004 in the matter *Randi Petersen, et al. v. Mt. Diablo Unified School District, et al.*, United States District Court, Northern District of California Case No. C 04-01059 SI;

2)    Amended Complaint for Damages filed on July 2, 2004, in the matter *Randi Petersen, et al. v. Mt. Diablo Unified School District, et al.*, United States District Court, Northern District of California Case No. C 04-01059 SI;

3)    Order Granting Defendants' Motion to Dismiss dated December 20, 2004 in the matter *Randi Petersen, et al. v. Mt. Diablo Unified School District, et al.*, United States District Court, Northern District of California Case No. C 04-01059 SI; and

4)    Judgment filed by the Court on December 20, 2004 in the matter *Randi Petersen, et al. v. Mt. Diablo Unified School District, et al.*, United States District Court, Northern District of California Case No. C 04-01059 SI.

DATED: December 28, 2007                          MILLER BROWN & DANNIS


By:  Amy R. Levine
SUE ANN SALMON EVANS
AMY R. LEVINE
MATTHEW JUHL-DARLINGTON
Attorneys for Defendants
MOUNT DIABLO UNIFIED SCHOOL
DISTRICT, MILDREDE BROWN, and KEN
FERRO

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA  94105

DISTRICT DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR MOTION FOR A MORE DEFINITE STATEMENT AND/OR TO STRIKE THE COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(e); CASE NO. C07-02400

SF 279756v1

# EXHIBIT 1

United States District Court
For the Northern District of California

1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT
6          FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8  RANDI PETERSON, MICHAEL PETERSEN and          No. C 04-01059 SI
   MICHAEL PETERSEN, JR.,
9                                                **ORDER REQUIRING MORE DEFINITE**
                  Plaintiffs,                    **STATEMENT; GRANTING REQUEST**
10                                               **FOR JUDICIAL NOTICE; AND DENYING**
       v.                                        **MOTION TO DISMISS**
11
   MT. DIABLO UNIFIED SCHOOL DISTRICT,
12 MILDRED BROWN, individually and in her
   official capacity, CONNIE CUSHING, individually
13 and in her official capacity, and DOES 1 to 50,
   inclusive,
14                Defendants.
                                          /
15

16      On June 18, 2004, the Court heard argument on defendants' motion to dismiss, or in the alternative,

17 for a more definite statement as well as defendants' request for judicial notice. Having carefully considered the

18 arguments of the parties and the papers submitted, the Court GRANTS defendants' motion for a more definite

19 statement, GRANTS defendants' request for judicial notice, and DENIES defendants' motion to dismiss

20 without prejudice.

21

22                              **BACKGROUND**

23      This case concerns the alleged failure of the Mt. Diablo Unified School District to properly educate a

24 mentally and physically handicapped child. On March 16, 2004, plaintiffs Randi Petersen, Michael Petersen,

25 and their son Michael Petersen, Jr. filed suit against Mt. Diablo, Mildred Brown, and Connie Cushing. The

26 complaint alleges that Mt. Diablo discriminated against Michael Jr., a physically and mentally handicapped

27 student, under both Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act

28 ("ADA"). Compl. at 4. The complaint further alleges that Mt. Diablo has retaliated against Randi and Michael

United States District Court

For the Northern District of California

1   for their efforts in advocating on their son's behalf.  Id.  Additionally, plaintiffs allege that Michael Jr.'s

2   impairments result from both his handicaps and "because of the discrimination [by Mt. Diablo] in failing to

3   provide appropriate programs or provide needed modifications [to his schooling program]."  Id.

4        The instant matter is very closely related to a *pro se* lawsuit that was brought in early 2002 by Randi

5   and Michael Jr. against generally the same defendants.[1]  Petersen v. Mt. Diablo Unified School District, No.

6   C 02-0887 SI (Compl. filed Feb. 21, 2002).  The 2002 complaint challenged the decisions of a family court

7   which denied Randi custody of her children and visitation rights.  The 2002 complaint further alleged that Mt.

8   Diablo, in conspiracy with Randi's former husband Michael and others, denied Randi her constitutional and civil

9   rights, as well as the rights of her children, in the process of developing an educational plan for her two sons,

10  especially Michael Jr.

11       This Court dismissed the 2002 case under Federal Rule of Civil Procedure 12(b)(6) for a failure to

12  state a claim.  Petersen, No. C 02-0887 SI (Order filed July 3, 2002).  The July 3, 2002 Order dismissing the

13  case granted Randi leave to amend her complaint on or before August 2, 2002.  Id.  At oral argument, Randi

14  stated that she was trying to secure attorney services to aid her.  Id. at 18.  Plaintiffs did not file an amended

15  complaint and the case was therefore dismissed pursuant to the July 3, 2002 Order.  Petersen, No. C 02-0887

16  SI (Order filed May 25, 2004).  The instant action was filed on March 16, 2004, and on May 14, 2004, this

17  Court issued an order relating it to the 2002 case.  On May 25, 2004, judgment was entered on the 2002

18  lawsuit in favor of defendants.

19       On June 2, 2003, Randi and Michael entered into a Compromise and Release Agreement ("Settlement

20  Agreement") with Mt. Diablo in order to "resolve any and all disputes, causes of action, and claims which may

21  exist concerning Michael's educational program, placement and related services, past, present, and future,

22  through August 30, 2003 [arising under the Individuals with Disabilities Education Act ("IDEA")]."  Settlement

23  Agreement at 1.

24       It is unclear from the various documents whether Michael Jr. was enrolled in Mt. Diablo following the

25  Settlement Agreement.  Plaintiffs state that he "failed to attend school during the 2002-2003 school year."

26

27

28       [1] One major difference in the complaints is that in the 2002 complaint, Michael Peterson, Michael Jr.'s
    father, was named as a defendant and was alleged to be part of a conspiracy against Randi and Michael Jr.

2

United States District Court

For the Northern District of California

1   Opp. at 1.  Defendants state that "[Michael Jr.] was not *enrolled* in any District school after that date [August

2   30, 2003]."  Mot. at 12 n. 5 (emphasis added).

3          In their instant complaint, plaintiffs allege the following causes of action:  a violation of Section 504 of

4   the Rehabilitation Act of 1973; a violation of the ADA (only against Mt. Diablo); a violation of 42 U.S.C. §

5   1983; conspiracy under 42 U.S.C. § 1985; intentional infliction of emotional distress; retaliation; and violation

6   of public policy.

7          Now before the Court is defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), or in the

8   alternative, for a more definite statement under Fed. R. Civ. P. 12(e), as well as their request for judicial notice.

9

10                                  **LEGAL STANDARD**

11         A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon

12  which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).  Thus, a complaint that is replete with detail but

13  that fails to identify concisely and clearly "whom plaintiffs are suing for what wrongs, fails to perform the

14  essential functions of a complaint." McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996).  Two

15  provisions of the Federal Rules of Civil Procedure address the problem posed by a vague or confusing

16  complaint.  Federal Rule of Civil Procedure 8 provides that a complaint "shall contain . . . a short and plain

17  statement of the claim showing that the pleader is entitled to relief" and that "[e]ach averment of a pleading shall

18  be simple, concise and direct."  Fed. R. Civ. P. 8(a)(2) and (e).  Federal Rule of Civil Procedure 12(e)

19  provides that, "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party

20  cannot reasonably be required to frame a responsive pleading, the party may move for a more definite

21  statement before interposing a responsive pleading."  Fed. R. Civ. P. 12(e).  It is within a district court's

22  discretion to fashion a remedy for violation of Rules 8 and 12, which may include ordering amendment of the

23  complaint, dismissal of a complaint with leave to amend, or dismissal with prejudice.  See Fed. R. Civ. P.

24  41(b); McHenry, 84 F.3d at 1177; Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

25

26                                  **DISCUSSION**

27  1.      **Motion for a more definite statement**

28

                                            3

United States District Court
For the Northern District of California

1          Defendants' motion for a more definite statement is well taken and will be granted. The complaint is

2 completely devoid of an understandable chronology. The complaint makes one reference to a date, during the

3 year 1997; otherwise, the complaint contains only vague and conclusory allegations with no mention of specific

4 dates. Plaintiffs' opposition to defendants' motion to dismiss simply asserts that "[d]ue to the continuous nature

5 of defendants['] illegal and discriminatory acts, plaintiff did not specify as to the dates of the violations. The

6 illegal conduct on the part of the defendants has occurred from 1997 to the present time, or at least to the time

7 of the filing of the complaint." Opp. at 8. Such statements do not allow for a proper evaluation of the timeliness

8 of the claims alleged under the various code sections, which contain varied statutes of limitations, or for an

9 accurate determination whether the Settlement Agreement and/or Michael Jr.'s failure to attend school in

10 2002-2003 will affect the validity of the suit. Likewise, plaintiffs list Brown and Cushing as defendants, yet do

11 not specify when either of these individuals acted in regard to Michael Jr. in either their official or individual or

12 capacities.

13          Plaintiffs do not cite to any specific instances of violations of their rights and they do not specify the

14 conduct that serves as the basis for their claims. As an example, the complaint does not specify what types

15 of actions were conducted by defendants that allegedly caused Michael Jr.'s limitations as to life experiences.

16 Plaintiffs' conclusory statement that "[t]he substantial limitation has been both because of the disability and

17 because of the discrimination in failing to provide appropriate programs or provide needed modifications" does

18 not state any actions by defendants. Compl. at 4. For these reasons, the Court GRANTS defendants' motion

19 for a more definite statement.

20

21 **B.**      **Motion to dismiss for failure to state a claim**

22          Defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to assert a

23 claim upon which relief can be granted. The Court has GRANTED defendants' motion for a more definite

24 statement, making defendants' motion to dismiss unripe. On that basis, the motion to dismiss is DENIED,

25 without prejudice.

26

27 **C.**      **Request for judicial notice**

28

United States District Court

For the Northern District of California

1  Defendants request that this Court take judicial notice of the following documents pursuant to Federal

2  Rule of Evidence 201: (1) the *pro se* Complaint for Money Damages and Injunctive Relief, Case No. C 02-

3  0887 SI, and filed on February 21, 2002, by Randi Petersen, Michael Petersen, Jr., and Ryan Petersen in this

4  Court; (2) this Court's July 3, 2002 Order; (3) the Special Education Hearing Office ("SEHO") Decision by

5  Hearing Officer Vincent L. Pastorino of California SEHO executed on April 30, 2003; and (4) the SEHO

6  Compromise and Release Agreement, in assigned Case No. SN 03-00778.

7  Defendants argue that this Court should take judicial notice of these documents because they are

8  integral to the complaint as the prior proceedings arise from, or have an intimate nexus with, the educational

9  services offered to Michael Jr. by Mt. Diablo. The Court agrees and GRANTS this request for judicial notice.

10

11  **CONCLUSION**

12  For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion

13  for a more definite statement and GRANTS defendants' request for judicial notice. Plaintiffs' amended

14  complaint must be filed and served **on or before July 2, 2004.** [Docket ## 14, 15, 18.]

15

16  **IT IS SO ORDERED.**

17

18  Dated: June 21, 2004                          S/Susan Illston

19                                                          SUSAN ILLSTON
                                                             United States District Judge

20

21

22

23

24

25

26

27

28

5

**EXHIBIT 2**

1  ALFRED R. BUZO, SBN 177377
   BUZO & HERNANDEZ, LLP
2  37 East Hedding Street
   San Jose, CA  95112
3  (408) 971-4303 Telephone
   (408) 971-4393 Facsimile
4
   Attorney for Plaintiffs
5

6
                    UNITED STATES DISTRICT COURT
7
                 NORTHERN DISTRICT OF CALIFORNIA
8

9

10 RANDI PETERSON, MICHAEL PETERSON, )    No. C 04 010059 MHP
   and MICHAEL PETERSON, JR.        )
11                                   )    AMENDED      COMPLAINT     FOR
        Plaintiffs,                  )    DAMAGES
12                                   )    _____
     v.                              )
13                                   )    1. **Violation of Rehabilitation Act of 1973**
   MOUNT   DIABLO   UNIFIED   SCHOOL )       **Against Mount Diablo**
14 DISTRICT, MILDRED BROWN, individually )  2. **Violation of Americans with**
   and   in  her  official  capacity,  CONNIE )    **Disabilities Act Against Mount Diablo**
15 CUSHING,  individually  and  in  her  official )  3. **Violation of 42 U.S.C. § 1983**
   capacity, KEN FERRO, individually and in his )   4. **Violation of 42 U.S.C. § 1983**
16 official capacity, and DOES 1 to 50, inclusive. )  5. **Conspiracy under 42 U.S.C. § 1985**
                                     )    6. **Intentional Infliction of Emotional**
17      Defendants.                  )       **Distress**
                                     )    7. **Retaliation**
18 _____ )    8. **Violation of Public Policy**

19
                                          **DEMAND FOR JURY TRIAL**
20

21
                         **JURISDICTION AND VENUE**
22
        1.      The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1341 (3)
23
   and (4) to secure protection of and to redress deprivation of rights secured by 42 U.S.C. §§ 1983 and
24
   1988, and the Fourth and Fourteenth Amendment to the United States Constitution.
25
        2.      The unlawful practices and violation of plaintiffs civil rights complained of herein
26
   were committed in the County of Contra Costa, within the Northern District of California of the
27
   United States District Court, and the State of California.
28

1      3.     The pendent jurisdiction of the federal district court is invoked with respect to the

2  plaintiffs claims under the laws of the State of California, because the entire action before the court

3  comprises one civil rights case, and the claims arise out of the same operative facts and are such that

4  the plaintiff would ordinarily be expected to try them in one judicial proceeding.

5                                     **PLAINTIFF**

6      4.     Plaintiff RANDI PETERSEN (hereinafter "RANDI"), at all times relevant in this

7  complaint was a resident of the County of Contra Costa in California, and is the mother of co-

8  plaintiff, MICHAEL PETERSEN, JR..

9      5.     Plaintiff MICHAEL PETERSEN  (hereinafter "MICHAEL") was at all times

10  material hereto, a resident of the County of Contra Costa, and is the father of co-plaintiff MICHAEL

11  PETERSEN, JR.

12      6.     Plaintiff MICHAEL PETERSEN, JR.  (hereinafter "STUDENT") is a 11 year old

13  boy who has been diagnosed with Auditory Processing Disorder, Sensory Integration Dysfunction, and

14  Pervasive Development Disorder.  STUDENT is entitled to receive full and equal access to the public

15  educational programs and activities offered within the Mount Diablo Unified School District. He is a

16  qualified individual with a disability within the meaning of all applicable statutes including Section 504

17  of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans With Disabilities Act, 42 U.S.C.

18  § 12131. He was at all relevant times, and all times material hereto, a resident of the County of Contra

19  Costa.

20                                  **DEFENDANTS**

21      7.     At all relevant times, defendant MOUNTY DIABLO UNIFIED SCHOOL

22  DISTRICT (hereinafter "MOUNT DIABLO") has been, and is now, a governmental entity.  The

23  actions described below on the part of defendant MOUNT DIABLO and the other defendants

24  constitute "state action" as that term has been defined by relevant case law.

25      8.     At all relevant times, defendant MOUNT DIABLO was located in the County of

26  Contra Costa, located in the Northern District of California.

27  \ \

28  \ \

1      9.     At all times herein mentioned, defendants MILDRED BROWNE, CONNIE

2  CUSHING, and KEN FERRO (hereinafter "BROWNE", "CUSHING", and "FERRO" respectively),

3  and each of them, were employees and/or agents for MOUNT DIABLO,  and in doing all of the things

4  hereinafter mentioned, acted under color of their authority as, and under color of the statutes,

5  regulations, customs, and usages of MOUNT DIABLO, acting under color of their authority as such.

6      10.    On information and belief, BROWNE, CUSHING, and FERRO are residents of the

7  County of Contra Costa, located in the Northern District of California.

8      11.    The true names and capacities of DOES One through One Hundred are unknown to

9  Plaintiffs. Plaintiffs will amend this Complaint to insert their true names and capacities when they are

10  finally ascertained.  Plaintiffs is informed and believes and thereon alleges that each of the fictitiously

11  named defendants is liable to Plaintiffs for the acts, events and occurrences alleged herein as a result

12  of said Defendants' relationship to the named defendants or participation in said acts, events and

13  occurrences, or approval or ratification thereof.

14      12.    Plaintiffs are informed and believes and thereon alleges that some or all of

15  Defendants, DOES One through One Hundred reside or, in the case of corporations, do business in

16  the County of Contra Costa, or elsewhere in the State of California.

17      13.    Plaintiffs are informed and believes and thereon alleges that each of the Defendants

18  was at all times herein mentioned, the agent, employee, servant, or representative of the remaining

19  Defendants, and was acting, at least in part, within the course, scope and authority of said

20  relationship.

21      14.    Wherever any Defendant is alleged to have done or omitted to do anything,

22  said allegation shall be deemed to mean and include an allegation that the corporation did or omitted

23  to do said acts through its agents, servants, employees and representatives, including but not limited

24  to, its officers, directors, and managing agents, and that the said officers, directors, and managing

25  agents authorized and approved said acts and omissions and ratified same.

26  \ \

27  \ \

28  \ \

1

**STATEMENT OF FACTS**

2      15.      STUDENT was first considered for eligibility for services under the IDEA in April of

3    1997.

4      16.      STUDENT became eligible for special education services while attending

5    Kindergarten at Belshaw Elementary School in Antioch, California during the 1997/1998 school year.

6      17.      The IEP team at Belshaw Elementary recommended that STUDENT remain in a

7    regular education classroom and receive speech & language and resource services.

8      18.      STUDENT began attending Monte Gardens Elementary in MOUNT DIABLO on

9    June 5, 1998.  STUDENT was placed in special day class beginning in September of 1998.

10      19.      MOUNT DIABLO informed RANDI and MICHAEL that STUDENT'S educational

11    needs would be best served in their special day class.  This was done without first providing

12    accommodations in a regular classroom.

13      20.      MOUNT DIABLO did not consider or provide services consistent with the

14    evaluation performed by the IEP team in Antioch.

15      21.      In or around January of 1999, RANDI obtained the services of Special Education

16    Advocate Lynn Gunter.  When Mrs. Gunter began advocating for STUDENT, officials at MOUNT

17    DIABLO became hostile towards RANDI.  MOUNT DIABLO also began to interfere in a custody

18    battle pending before the Contra Costa County Superior Court.

19      22.      In or around March of 1999, MOUNT DIABLO provided information to a family

20    court mediator that resulted in a recommendation that was submitted to the court.  The mediator

21    recommended that RANDI lose her educational decision making rights over STUDENT.  In turn, the

22    court adopted this recommendation.

23      23.      In or around August of 1999, it was agreed STUDENT would be mainstreamed in a

24    regular classroom, receive district Functional Behavior Assessment and full scale evaluations, including

25    an OT assessment.

26      24.      STUDENT mainstreamed at Ayers Elementary School from September of 1999 to

27    December of 1999.  However, when his teacher received STUDENT's special education file, she

28    became very upset and demanded that STUDENT be placed into a special day class.  STUDENT

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                    - 4 -

1   began complaining that his teacher did not like him, refused to assist him in class and wanted him

2   kicked out of her class.  STUDENT developed a facial tick and had difficulty sleeping at night.

3        25.    RANDI faxed complaints of discrimination to principal Karen Sakata requesting she

4   investigate the matter.  She never responded.  RANDI requested Sakata place STUDENT in another

5   classroom with a different teacher, but she refused.

6        26.    Instead, Sakata insisted STUDENT be removed from her school and placed in a

7   special day class at another school site.  STUDENT was forced against RANDI's will into their

8   Special Day Class, denying STUDENT access to their regular education classroom/program.

9        27.    On or about April 12, 2000, the principal of STUDENT's school wrote a letter to be

10   used against RANDI at a family law hearing scheduled on April 17, 2000.  The court appointed

11   attorney reported to the court in the family law matter that RANDI's advocacy was harmful to

12   STUDENT.  RANDI was reprimanded by the court for her alleged harmful advocacy.

13        28.    Around this same time, March of 2000, MOUNT DIABLO contradicted their own

14   assessments by claiming STUDENT did not have learning disabilities.  MOUNT DIABLO refused to

15   consider STUDENT's deteriorating behavior and continuing failure to make educational progress

16        29.    Again in June of 2000, officials from MOUNT DIABLO interfered with the

17   family court process by submitting a declaration that RANDI's advocacy was harmful, and

18   misrepresenting the school's program was meeting STUDENT's educational needs.  MOUNT

19   DIABLO again misinformed the court appointed attorney for the child that RANDI's advocacy was

20   harmful to STUDENT because she disagreed with the school.  The court once again reprimanded

21   RANDI for her alleged harmful advocacy.

22        30.    In June of 2000, STUDENT's pediatrician after reviewing school assessments,

23   provided a written request he undergo a neuropsychological assessment, which was immediately

24   forwarded to MOUNT DIABLO.  MOUNT DIABLO refused.

25        31.    MOUNT DIABLO refused to assess STUDENT per moms request for suspected

26   disability of PDD and independent assessments.

27        32.    In September of 2000, CUSHING informed the court appointed attorney for the child

28   that RANDI's advocacy was harming STUDENT.  As a result, the attorney for the child

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                    - 5 -

1    recommended to the court that RANDI's lose custody of STUDENT.  RANDI would not regain any

2    custodial rights over STUDENT until mid-2003 via stipulation with MICHAEL.

3        33.    In November of 2000, MOUNT DIABLO recommended in writing to the family

4    court mediator mom have supervised visits because her advocacy was harming STUDENT.  This

5    position was in contradiction to MOUNT DIABLO's own expert, Dr. Maier's.  The court adopted

6    MOUNT DIABLO's recommendation.

7        34.    In August of 2001, MOUNT DIABLO requested MICHAEL dismiss the due

8    process hearing by misrepresenting that their educational program met STUDENT's needs, even

9    though their own school records showed he had not made educational progress for about three years.

10       35.    Moreover, at this time, MICHAEL knew very little about the entire process, he was

11   tricked into dismissing a scheduled due process hearing in exchange for signing-off on an education

12   program that had been recommended nearly a year earlier in October of 2000.  STUDENT would be

13   in the program for the 2001-2002 school year, during which time he would be suspended for more

14   than 10 days in 2002.

15       36.    In October of 2001, CUSHING once again contacted the court appointed attorney for

16   STUDENT and requested that the attorney ask the family court to stop RANDI's advocacy.

17       37.    RANDI was not notified of STUDENT's January 8, 2002 IEP.

18       38.    On or about February 2, 2002, RANDI filed a lawsuit against MOUNT DIABLO

19   and various personnel and agents of MOUNT DIABLO.

20       39.    On March 12, 2002, STUDENT was suspended from school for 1 ½ days, and a

21   School Crime and Incident Report was filed.

22       40.    On April 12, 2002, an IEP took place.  RANDI was not notified of the IEP.

23       41.    On April 23, 2002, STUDENT was suspended from school for 2 days, and a

24   School Crime and Incident Report was filed.

25       42.    On May 9, 2002, STUDENT was suspended for 3 days.

26       43.    On or about May 20, 2002, MOUNT DIABLO completed its neuropsychological

27   report of STUDENT.  The report confirmed STUDENT's weaknesses as outlined in the Antioch

28   report five years earlier.  Instead, the neuropsychologist blames RANDI in her report as the cause of

1    STUDENT's problems.

2        44.    The initial draft of the neuropsychological report recommends a private school

3    placement for STUDENT. However, CUSHING asks the neuropsychologist to withdraw her

4    recommendation private education, and to instead recommend MOUNT DIABLO's program.

5        45.    On or about May 31, 2002, the neuropsychologist and consequently, MOUNT

6    DIABLO did not make service recommendations for STUDENT's severe Auditory Processing

7    Disorder or Sensory Integration Dysfunction. Furthermore, she misrepresented that STUDENT did not

8    have PDD. The neuropsychologist said, and MOUNT DIABLO agreed, that STUDENT's disabilities

9    did not effect him at school. Instead, they blamed STUDENT's problems on parents.

10       46.    On May 31, 2002, STUDENT was suspended for 1 ½ days, and a School Crime and

11   Incident Report was filed.

12       47.    On June 5, 2002, STUDENT was suspended for 2 days, and a School Crime and

13   Incident Report was filed.

14       48.    Most of the suspensions were the result of alleged aggressive behavior toward

15   instructional aide Carol Peneloza. Ms. Peneloza had absolutely no training in dealing with disabled

16   children such as STUDENT.

17       49.    In contrast to their position that RANDI had no decision making authority over

18   STUDENT's education, on June 7, 2002, CUSHING mails a letter to RANDI wherein she notified

19   them that an IEP was being scheduled because STUDENT had been suspended for more than 10 days

20   during the 2001-2002 school year.

21       50.    The school psychologist referred STUDENT to Contra Costa Mental Health for

22   on a AB3832 referral, which is for those children who are seriously emotionally disturbed. Had this

23   gone through, STUDENT would have been placed in a secure facility.

24       51.    During the 2001-2002 school year, STUDENT vomited on several occasions in the

25   nurses office of his school. This was never documented by MOUNT DIABLO.

26       52.    On August 14, 2002, MOUNT DIABLO issues their proposal for STUDENT's

27   placement for the 2002-2003 school year, wherein they seek to have STUDENT placed in a Special

28   Day Classroom at Sunrise School.

1    53.    Under duress, MICHAEL agrees to MOUNT DIABLO's proposal on August 30,

2    2002.

3    54.    On September 3, 2002, MICHAEL issues a written objection to MOUNT DIABLO's

4    placement of STUDENT in a Special Day Class at Sunrise School, and requests that STUDENT's

5    placement continue to be at Highlands Elementary School.

6    55.    STUDENT begins the 2002-2003 school at Highlands Elementary on September 4,

7    2002.  STUDENT's desk is placed in front of the class and next to the teachers desk.  STUDENT was

8    also placed next to an autistic student with whom he had had negative interaction in the past.  On

9    September 4, 2002, MICHAEL forwards a letter to MOUNT DIABLO requesting that STUDENT's

10    desk be moved to another location in the classroom.

11    56.    On September 5, 2002, MICHAEL receives a letter from ADR Administrator for

12    MOUNT DIABLO, Ken Ferro, indicating that as a result of MICHAEL's objection to their suggested

13    placement, MOUNT DIABLO has filed for a due process hearing.

14    57.    On September 9, 2002, MICHAEL forwards another letter to MOUNT DIABLO

15    regarding STUDENT's seating in his classroom, and their unwillingness to do anything about it.

16    58.    On September 12, 2002, MICHAEL receives a letter from Ken Ferro indicating that as

17    September 5, 2002, STUDENT's desk had been moved.

18    59.    On September 9, 2002, STUDENT's psychiatrist at Kaiser recommended that

19    STUDENT be placed on a Home and Hospital Program.  On September 13, 2002, MICHAEL informs

20    MOUNT DIABLO of the recommendation for Home and Hospital, and requests that STUDENT

21    placed on Home and Hospital..

22    60.    On September 18, 2002, MICHAEL submits a letter to counsel for MOUNT DIABLO

23    wherein he restates his request for Home and Hospital.

24    61.    On September 26, 2002, MICHAEL receives a letter from counsel for MOUNT

25    DIABLO indicating that the IEP team cannot make a determination regarding Home and Hospital

26    placement for STUDENT without further information from STUDENT's psychiatrist.  The letter also

27    states that MICHAEL is in violation of compulsory education laws which MOUNT DIABLO is

28    obligated to enforce.

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                    - 8 -

1        62.     On October 4, 2002, October 7, 2002, and October 17, 2002, MICHAEL forwards

2    letters to MOUNT DIABLO requesting an IEP regarding Home and Hospital placement.

3        63.     An IEP is schedule for October 30, 2002.  MOUNT DIABLO fails to notify RANDI of

4    the IEP.

5        64.     At the October 30, 2002 IEP, MICHAEL's request for Home and Hospital is denied.

6    MOUNT DIABLO's reason for denying the request is that they need more information from

7    STUDENT's psychiatrist.

8        65.     On November 6, 2002, counsel for MOUNT DIABLO informs MICHAEL that they

9    will be submitting a list of questions to STUDENT's psychiatrist regarding her recommendation for

10   Home and Hospital placement.

11       66.     On November 13, 2002, counsel for MOUNT DIABLO faxes letter to MICHAEL

12   wherein, among other things, she threatens to institute SARB proceedings against him.

13       67.     On January 9, 2003, counsel for MOUNT DIABLO faxes a letter to MICHAEL

14   wherein she threatens to institute SARB proceedings against him.

15       68.     On January 14, 2003, MICHAEL receives a letter from FERRO stating that

16   MOUNT DIABLO is firm on its position that the Special Day Class is the appropriate placement for

17   STUDENT.  In this letter, FERRO also threatens to institute SARB proceedings against MICHAEL.

18       69.     On January 31, 2003, Carolyn Stuckey, SARB Chairperson for MOUNT DIABLO,

19   mails a truancy letter to MICHAEL, and threatens SARB proceedings against him.

20       70.     In an undated letter received my MICHAEL in and around January 31, 2003,

21   Toby Montez, Director of Student Services for MOUNT DIABLO once again threatens to bring SARB

22   proceedings against MICHAEL.

23       71.     On February 5, 2003, MICHAEL receives a letter advising him that an IEP meeting

24   regarding his request for Home and Hospital placement has been scheduled for February 13, 2003.

25       72.     On the same date, MICHAEL receives another letter from Toby Montez asking

26   him to disregard the truancy letter from Ms. Stuckey.

27       73.     On February 10, 2003, MICHAEL receives a proposed compromise and release

28   agreement to settle all outstanding issues.  The agreement specifically calls for MICHAEL and RANDI

1    to waive any and all claims including "504" and "ADA" claims. The proposal is rejected by MICHAEL

2    and RANDI.

3         74.    MOUNT DIABLO then forwards another proposed compromise and release

4    agreement without the "504" and "ADA" language. However, the agreement still calls for MICHAEL

5    and RANDI to waiver any and all claims, including "tort, contract, or other theories of recovery." This

6    proposal is rejected by MICHAEL and RANDI.

7         75.    On February 12, 2003, MICHAEL receives a letter from FERRO wherein he advises

8    him a new IEP date for the Home and Hospital request. The letter also once again threatens SARB

9    proceedings against MICHAEL.

10         76.    On February 11th and Februrary 17th of 2003, RANDI sends letters to BROWNE

11    regarding MOUNT DIABLO's interference in the family law court proceedings, and the bad faith on

12    the part of FERRO in dealing with the request for Home and Hospital placement.

13         77.    On February 18, 2003, MICHAEL requests a copy of MOUNT DIABLO's Home and

14    Hospital policy.

15         78.    The due process hearing takes place for one week in March of 2003, wherein agents

16    for MOUNT DIABLO, Dr. Arlee Maier and Dr. Peterson, both failed to provide complete testimony

17    about STUDENT's disabilities. CUSHING testified STUDENT's psychiatrists note for Home and

18    Hospital met their policy.

19         79.    On April 10, 2003, a letter is sent to RANDI from BROWNE wherein she apologizes

20    if there has been any miscommunication with regard to the Home and Hospital policy. Moreover,

21    BROWNE goes on to say it was her understanding that FERRO explained to RANDI that MOUNT

22    DIABLO only has a formal Independent Study Program, and is currently in the process of drafting a

23    Home and Hospital policy.

24         80.    After the hearing officer issues his decision, the parties agree to attend mediation in

25    effort to resolve outstanding issues.

26         81.    On June 2, 2003, the parties attend mediation. At the mediation, the initial agreement

27    drafted by MOUNT DIABLO contains language constituting a waiver of claims "based on tort,

28    contract, or other theories of recovery." This language is rejected by MICHAEL and RANDI. The

1    final draft signed by all parties does not include this language.

2    **FIRST CAUSE OF ACTION**

3    **(Violations of Section 504 of the Rehabilitation Act of 1973 (hereinafter "Section 504") Against**
     **Defendant MOUNT DIABLO, and DOES 1 through 100)**

4

5         82.     Plaintiffs incorporate by reference all of the allegations contained in each of the

6    paragraphs 1 through 81 as if fully set forth herein.

7         83.     MOUNT DIABLO is a recipient of federal financial assistance as defined in Section

8    504 of the Rehabilitation Act.   Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §

9    794, and the regulations promulgated thereunder, 34 C.F.R., Part 104, prohibits discrimination against

10   persons with disabilities.  Section 504 prohibits the exclusion from the participation in, or being denied

11   benefits of, or being subjected to discrimination under any program or activity receiving Federal

12   financial assistance.

13        84.     STUDENT is a qualified disabled individual eligible for protection under both

14   Section 504 and the ADA.

15        85.     STUDENT has a mental impairments are as follows: Auditory Processing Disorder,

16   Sensory Integration Dysfunction, and Pervasive Development Disorder.

17        86.     STUDENT has a physical impairment as follows: Cyclic Vomiting Syndrome.

18        87.     STUDENT's impairment(s) substantially limit one or more major life activities as

19   follows:  learning, inability to reach gainful employment, inability to socialize, inability to function

20   independently, and inability to establish and maintain meaningful relationships.

21        88.     The practices described above violate the prohibition against discrimination solely on

22   the basis of disability.

23        89.     The practices and course of conduct also included, but was not limited to, the

24   following:

25             a.      STUDENT has been denied the opportunity to benefit from the educational

26                    services offered by MOUNT DIABLO, in violation of 34 CFR 104.4(b)(1)(I).

27                    In fact, he was provide no services whatsoever during the school year of 2002-

28                    2003.

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                    - 11 -

1        b.     STUDENT was provided with services that were not as effective as those
2              provided to other students, in violation of 34 CFR 104.4(b)(1)(iii). While other
3              students were provided a Home and Hospital placement, STUDENT was
4              provide no services, much less Home and Hospital during the school year of
5              2002-2003.

6        c.     The aids, benefits and services offered to STUDENT did not afford him an
7              equal opportunity to reach the same level of achievement offered to others, in
8              violation of 34 CFR 104.4(b)(2). Home and Hospital was not available for
9              children such as STUDENT.

10       d.     MOUNT DIABLO did not demonstrate, before removing STUDENT from a
11             regular setting, whether, with the use of supplementary aids and services in a
12             regular setting, that STUDENT could be educated satisfactorily in that regular
13             setting, in violation of 34 CFR 104.34(a).

14       e.     MOUNT DIABLO used tests that were invalid for testing STUDENT's
15             complex needs in that they did not take into account STUDENT's sensory,
16             manual and speaking skills; tests were not administered by trained personnel;
17             and the tests were not administered in a way that accurately reflected
18             STUDENT's abilities, in violation of 34 CFR 104.35(b)(1), (2) and (3).

19       f.     MOUNT DIABLO did not establish the system of procedural safeguards prior
20             to taking action regarding identification, evaluation or educational placement, in
21             violation of 34 CFR 104.36.

22       g.     Recipient MOUNT DIABLO did not establish a system of procedural
23             safeguards with regard to access to records by parents, in violation of 34 CFR
24             104.36.

25       h.     Recipient MOUNT DIABLO did not establish a system of procedural
26             safeguards that includes an impartial hearing on Section 504 issues, in violation
27             of 34 CFR 104.36.

28   \ \

1      90.     Defendants, and each of them, have violated STUDENT's rights under Section 504

2   and the regulations promulgated by denying STUDENT the benefits of receiving full and equal access

3   to the public education program and activities offered within MOUNT DIABLO.

4      91.     As a proximate result of Defendants' violation of Section 504, Plaintiffs have suffered

5   and will continue to suffer embarrassment, humiliation and mental anguish all to their damage in an

6   amount according to proof.

7      92.     Plaintiffs were forced to hire an attorney to represent them in this matter and plaintiffs

8   should be awarded attorneys fees and costs.

9                              **SECOND CAUSE OF ACTION**

10   **(Violations of Americans with Disabilities Act Against Defendant MOUNT DIABLO,
     and DOES 1 through 100)**

11

12      93.     Plaintiffs incorporate by reference all of the allegations contained in each of the

13   paragraphs 1 through 92 as if fully set forth herein.

14      94.     Title II of the ADA, 42 U.S.C. § 12131 et seq. And the regulations promulgated

15   thereunder, 28 C.F.R. Part 35, governing state and local government entities, protects persons from

16   discrimination on the basis of disability by public entities.  The ADA prohibits the exclusion from

17   participation in, or being denied the benefits of the services, programs, or activities of the public entity,

18   or being subjected to discrimination by such entity.

19      95.     MOUNT DIABLO is a public entity covered by the ADA Title IIA, as defined in 28

20   CFR 35.102(a).

21      96.     STUDENT is an individual with a disability as defined in the ADA, 28 CFR 35.104.

22      97.     The practices described above violate the prohibition against discrimination solely on

23   the basis of disability.

24      98.     The practices and course of conduct also included, but was not limited to, the

25   following:

26               a.     MOUNT DIABLO did not evaluate its current services, policies and practices;

27                      the effects thereof of any services, policies or practices that do not meet the

28                      requirements of the ADA; and the modifications required, as ordered in 28 CFR

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                    - 13 -

1    35.105(a).  MOUNT DIABLO refused to evaluate it policy and practice of not

2    offering Home and Hospital to children such as STUDENT.

3    b.    MOUNT DIABLO has not investigated complaints communicated to it alleging

4    noncompliance or alleging actions that would be prohibited by the ADA, in

5    violation of 28 CFR 35.107(a).  Several complaints, as set forth above, were

6    submitted by RANDI and MICHAEL on behalf of STUDENT.  However, there

7    is no indication that any of the complaints were investigated.

8    c.    MOUNT DIABLO has not adopted or published grievance procedures that

9    provide for prompt or equitable resolution of complaints alleging actions

10    prohibited by the ADA, as required by 28 CFR 35.107(b).

11    d.    MOUNT DIABLO has taken action in retaliation against RANDI, MICHAEL,

12    and STUDENT because of RANDI and MICHAEL's advocacy on behalf of

13    STUDENT.  Such retaliation has taken the form of "coercion", "intimidation",

14    "threats", and "interference" in violation of 28 CFR 35.134(a) and (b).  As set

15    forth above, retaliation against RANDI was in the form of "interference" in the

16    family court process.  MICHAEL was retaliated against in the form of "threats"

17    of SARB proceedings.  STUDENT was retaliated against in the form of

18    suspensions from school,  and the "threat" of an AB3832 referral.  All of

19    STUDENT's suspensions took place during the time RANDI's lawsuit was

20    pending in court.

21    99.    Defendants, and each of them, have violated Plaintiffs rights under the ADA and the

22    regulations promulgated by denying Plaintiffs the benefits of the services, programs, and activities to

23    which they are otherwise entitled to from MOUNT DIABLO.

24    100.    As a proximate result of Defendants' violation of the ADA 504, Plaintiffs have suffered

25    and will continue to suffer embarrassment, humiliation and mental anguish all to their damage in an

26    amount according to proof.

27    101.    Plaintiffs were forced to hire an attorney to represent them in this matter and plaintiffs

28    should be awarded attorneys fees and costs.

**Peterson v. Mount Diablo et al.**
**Amended Complaint for Damages**                    - 14 -

1

### THIRD CAUSE OF ACTION

2     **(Violation of 42 U.S.C. § 1983 (Equal Protection) Against Defendants MOUNT DIABLO,
and DOES 1 through 100)**

3

4          102.     Plaintiffs incorporate by reference all of the allegations contained in each of the

5     paragraphs 1 through 101 as if fully set forth herein.

6          103.     The actions of Defendants, as described above, violated the Equal Protection Clause of

7     the Fourteenth Amendment of the United States Constitution in that such actions are not taken upon

8     young children at MOUNT DIABLO who do not have disabilities, nor are such actions taken against

9     the parents of children at MOUNT DIABLO who do not have disabilities.  In all of this, Defendants,

10    and each of them, have, acting under color of state law, deprived STUDENT of rights, privileges, or

11    immunities secured to him by the Constitution and laws of the United States in violation of 42 U.S.C. §

12    1983.

13         104.     Furthermore, the actions of Defendants, as described above, violated the Equal

14    Protection Clause of the Fourteenth Amendment of the United States Constitution in that such actions

15    are not taken upon the parents of young children at MOUNT DIABLO who do not advocate for their

16    children who have disabilities.

17         105.     The practices and course of conduct also included, but was not limited to, the

18    following:

19               a.     MOUNT DIABLO has a policy of not offering Home and Hospital placement

20                      to children such as STUDENT.

21               b.     MOUNT DIABLO has a policy of not investigated complaints communicated

22                      to it alleging noncompliance or alleging actions that would be prohibited by the

23                      ADA, in violation of 28 CFR 35.107(a).  Several complaints, as set forth above,

24                      were submitted by RANDI and MICHAEL on behalf of STUDENT.

25                      However, there is no indication that any of the complaints were investigated.

26               c.     MOUNT DIABLO has not adopted or published grievance procedures that

27                      provide for prompt or equitable resolution of complaints alleging actions

28                      prohibited by the ADA, as required by 28 CFR 35.107(b).

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                     - 15 -

1            d.    MOUNT DIABLO has a policy of retaliating against disabled students and

2                parents who advocate for their disabled children. As set forth above, retaliation

3                against RANDI was in the form of "interference" in the family court process.

4                MICHAEL was retaliated against in the form of "threats" of SARB

5                proceedings. STUDENT was retaliated against in the form of suspensions from

6                school, and the "threat" of an AB3832 referral. All of STUDENT's

7                suspensions took place during the time RANDI's prior lawsuit was pending in

8                court, from February to July of 2002.

9        106.    As a direct and proximate result of the actions described above, Plaintiffs sustained

10   actual damages, including injuries to their person, pain , severe and grievous mental and emotional

11   suffering, humiliation, worry dear, anguish, shock, nervousness, and anxiety in an amount according to

12   proof.

13       107.    Defendants committed the acts alleged herein maliciously, despicably, fraudulently and

14   oppressively, with the wrongful intention of injuring plaintiff, from an improper and evil motive

15   amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover

16   punitive damages from Defendants in an amount according to proof.

17       108.    Plaintiffs were forced to hire an attorney to represent them in this matter and Plaintiffs

18   should be awarded attorneys fees pursuant to Section 1988 of Title 42 of the United States Code.

19   **FOURTH CAUSE OF ACTION**

20   **(Violation of 42 U.S.C. § 1983 (Due Process) Against Defendants MOUNT DIABLO, and DOES 1 through 100)**

21

22       109.    Plaintiffs incorporate by reference all of the allegations contained in each of the

23   paragraphs 1 through 108 as if fully set forth herein.

24       110.    By their actions described herein, the Defendants, under color of statute, ordinance,

25   regulation, custom, or usage, subjected Plaintiffs to the deprivation of rights, privileges, or immunities

26   secured by the Constitution and laws. In particular, as a student in a public school, STUDENT has an

27   property interest in his public education, and liberty interest in personal security and freedom from

28   infliction of pain.

Peterson v. Mount Diablo et al.
Amended Complaint for Damages        - 16 -

111.    The practices and course of conduct of Defendant also included, but was not limited to, the following:

    a.    Suspending STUDENT for more than 10 days and labeling him a "predatory" child in attempt to place him in a more restrictive school.

    b.    Placing STUDENT next to an autistic child with whom MOUNT DIABLO knew he had had a negative history.

    c.    By placing him in situations which caused STUDENT to vomit on numerous occasions.

    d.    By placing him with an aide who had not had any "one-to-one" training, but in fact was only a "noon aide."

    e.    Refusing to provide any services to STUDENT for an entire school year (2002-2003).

    f.    By failing to institute SARB proceedings.

    g.    By promoting STUDENT from year to year even though he had not demonstrated achievement required for satisfactory performance in the subsequent grade.  For example, STUDENT was promoted after the 2002-2003 school despite the fact that he had not received any formal education from MOUNT DIABLO for that entire school.

    h.    By failing to offer a Home and Hospital program for disabled children such as STUDENT.

    i.    By informing MICHAEL and RANDI that a Home and Hospital policy existed for children such as STUDENT when in fact it did not.

112.    Defendants inflicted such practices upon Plaintiffs in an attempt to punish them because of incidents that occurred as a result of STUDENT's disability, and because MICHAEL and RANDI were not in agreement with MOUNT DIABLO's proposed program for STUDENT.

113.    The actions of Defendants, as described above, including, but not limited to, not providing Home and Hospital to disabled students, are policies at MOUNT DIABLO .

\ \

1      114.    The actions taken, or not taken, in response to Defendants BROWNE, FERRO and

2   CUSHING's conduct, , and Defendant MOUNT DIABLO's policies and practices amounted to the

3   adoption of such practices, customs, or policies.

4      115.    Defendant MOUNT DIABLO knew, or should have known, about the discriminatory

5   practices with respect to Plaintiffs and other students and former students as such are so well settled as

6   to constitute a custom or usage in MOUNT DIABLO.  In fact, MOUNT DIABLO is subject to a

7   consent decree issued in May of 2000, wherein they are required to, among other things: (1) eliminate

8   all policies that would bar children with disabilities from taking part in academic and extracurricular

9   activities; (2) train school district employees on curriculum to accommodate students with special

10  needs, and to foster integration; and (3) to train classroom aides.  Yet, MOUNT DIABLO failed to take

11  affirmative actions to provide for the well being of young children such as STUDENT.

12     116.    As a direct and proximate result of the actions described above, Plaintiffs sustained

13  actual damages, including injuries to their person, pain , severe and grievous mental and emotional

14  suffering, humiliation, worry dear, anguish, shock, nervousness, and anxiety in an amount according to

15  proof.

16     117.    Defendants committed the acts alleged herein maliciously, despicably, fraudulently and

17  oppressively, with the wrongful intention of injuring plaintiff, from an improper and evil motive

18  amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff is thus entitled to recover

19  punitive damages from Defendants in an amount according to proof.

20     118.    Plaintiffs were forced to hire an attorney to represent them in this matter and Plaintiffs

21  should be awarded attorneys fees pursuant to Section 1988 of Title 42 of the United States Code.

22                          **FOURTH CAUSE OF ACTION**

23  **(Conspiracy to Violate Plaintiff RANDI'S and STUDENT'S rights under 42 U.S.C. § 1985
    Against all Defendants, and DOES 1 through 100)**

24

25     119.    Plaintiff incorporates by reference all of the allegations contained in each of the

26  paragraphs 1 through 118 as if fully set forth herein.

27     120.    Defendants BROWNE, CUSHING, and FERRO acting in their individual capacities

28  and under color of law, having conspired together and with others, reached a mutual understanding and

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                    - 18 -

1    acted to undertake a course of conduct that violated Plaintiffs civil rights, to wit:

2              a.      Defendants BROWNE and CUSHING agreed and acted to intentionally

3                      interfere with plaintiff RANDI'S custodial rights.

4              b.      Defendants BROWNE, CUSHING and FERRO agreed and acted to

5                      intentionally interfere with STUDENT's right to an education.

6              c.      All defendants agreed and acted with others to punish Plaintiffs for having

7                      exercised constitutionally and statutorily protected rights; and

8        121.    As a direct and proximate result of the conspiracy between defendants and others as

9    afore described, plaintiffs were deprived their rights under the Fourteenth Amendment of United States

10   Constitution and protected by 42 U.S.C. § 1983.

11       122.    As a direct and proximate result of the actions described above, Plaintiffs sustained

12   actual damages, including injuries to their person, pain , severe and grievous mental and emotional

13   suffering, humiliation, worry dear, anguish, shock, nervousness, and anxiety in an amount according to

14   proof.

15       123.    Defendants committed the acts alleged herein maliciously, despicably, fraudulently and

16   oppressively, with the wrongful intention of injuring plaintiff, from an improper and evil motive

17   amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiffs are thus entitled to

18   recover punitive damages from Defendants in an amount according to proof.

19       124.    Plaintiffs were forced to hire an attorney to represent them in this matter and Plaintiffs

20   should be awarded attorneys fees pursuant to Section 1988 of Title 42 of the United States Code.

21                              **FIFTH CAUSE OF ACTION**

22      **(Intentional Infliction of Emotional Distress of PLAINTIFFS against all Defendants)**

23       125.    Plaintiffs incorporate by reference all of the allegations contained in each of the

24   paragraphs 1 through 124 as if fully set forth herein.

25       126.    Defendants committed the acts alleged herein maliciously, despicably, fraudulently and

26   oppressively, with the wrongful intention of injuring Plaintiffs, from an improper and evil motive

27   amounting to malice.

28

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                    - 19 -

127.  Defendants' conduct in was both extreme and outrageous and caused Plaintiffs to suffer physical injuries as well as severe mental anguish.

128.  Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

129.  As a proximate result of the defendants conduct, Plaintiffs have suffered substantial injury to their personal, business and professional reputation.  The amount of said damages has not yet been finally ascertained, and is continuing.  Plaintiffs pray leave to amend this complaint to insert these elements of damage when the same are finally ascertained.

130.  As a further direct and proximate result of defendants conduct, Plaintiffs have suffered and continues to suffer embarrassment, humiliation, and anguish, all to his general damage in the sum which has not been fully ascertained and which will be shown according to proof.

131.  Defendants committed the acts alleged herein maliciously, despicably, fraudulently and oppressively, with the wrongful intention of injuring plaintiffs, from an improper and evil motive amounting to malice, and in willful and conscious disregard of Plaintiffs rights.  Plaintiffs thus are entitled to recover punitive damages from defendants, and each of them, in an amount according to proof.

## SIXTH CAUSE OF ACTION

### (Retaliation against all Defendants)

132.  Plaintiffs incorporate by reference all of the allegations contained in each of the paragraphs 1 through 131 as if fully set forth herein.

133.  Defendants, and each of them, retaliated against plaintiff for complaints about harassment and discrimination.  Moreover, Defendants, and each of them, failed to take all reasonable steps necessary to prevent further harassment and discrimination against Plaintiff.

134.  Plaintiff believes the measures MOUNT DIABLO employed in harassing and discriminating plaintiffs were retaliatory and in violation of public policy, California law, Section 504, and the ADA.

135.  Plaintiffs sees no other possible reasons other than their protected right to complain about harassment and discrimination that could conceivably account for why they were treated in such a

1  manner.

2      136.  Plaintiff believes MOUNT DIABLO was unwilling to help alleviate the problem because

3  of the nature of their complaints.

4      137.  As a proximate result of the defendants conduct, plaintiffs has suffered substantial

5  injury to their personal, business and professional reputation.  The amount of said damages has not yet

6  been finally ascertained, and is continuing.  Plaintiffs pray leave to amend this complaint to insert these

7  elements of damage when the same are finally ascertained.

8      138.  As a further direct and proximate result of defendants conduct, plaintiffs have suffered

9  and continue to suffer embarrassment, humiliation, and anguish, all to their general damage in the sum

10  which has not been fully ascertained and which will be shown according to proof.

11                          **SEVENTH CAUSE OF ACTION**

12                  **(Violation of Public Policy Against all Defendants)**

13      139.  Plaintiffs incorporate by reference all of the allegations contained in each of the

14  paragraphs 1 through 126 as if fully set forth herein.

15      140.  Throughout all relevant times set forth in this complaint, Defendants, and each of

16  them, harassed, discriminated and retaliated against plaintiffs, on the basis of STUDENTS "disability"

17  and "handicap" as set forth in the First and Second Causes of Action, in violation of the public policy set

18  forth in Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act ,

19  prohibiting harassment, discrimination and retaliation in education on the basis of "handicap" and

20  "disability". Defendants' conduct also violated the public policy set forth in the California Cal. Govt.

21  Code § 12920, which expresses the public policy of the State of California, to wit, "It is hereby declared

22  as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of

23  all persons to seek, obtain, and hold employment without discrimination or abridgment on account of

24  race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical

25  condition, marital status, sex, or age."

26      141.  Defendants, and each of them, failed to take all reasonable steps necessary to prevent

27  such harassment and discrimination against Plaintiffs.

28  \ \

Peterson v. Mount Diablo et al.
Amended Complaint for Damages                 - 21 -

1      142.    As a proximate result of the defendants conduct, plaintiffs have suffered substantial

2  injury to their personal and business.  The amount of said damages has not yet been finally ascertained,

3  and is continuing.  Plaintiffs pray leave to amend this complaint to insert these elements of damage when

4  the same are finally ascertained.

5      143.    As a further direct and proximate result of defendants conduct, plaintiffs have suffered

6  and continue to suffer embarrassment, humiliation, and anguish, all to their general damage in the sum

7  which has not been fully ascertained and which will be shown according to proof.

8                      **DEMAND FOR JURY TRIAL**

9      Notice is hereby given that Plaintiffs demand a jury trial in the above-captioned action.

10                      **PRAYER**

11      WHEREFORE, Plaintiffs pray judgment as follows:

12      1.    For actual and compensatory damages in an amount according to proof;

13      2.    For a money judgement for mental pain and suffering;

14      3.    For a money judgment awarding plaintiffs an additional sum according to proof as

15  damages for emotional distress;

16      4.    For an award of punitive damages;

17      5.    For costs of suit;

18      6.    Attorneys fees pursuant to the United States Code; and,

19      7.    For such other and further relief as the court may deem just and proper.

20

21                      Respectfully Submitted,

22                      BUZO & HERNANDEZ, LLP

23

Dated: July 2, 2004                By: _____

24                      ALFRED R. BUZO
                    Attorney for Plaintiffs

25

26

27

28

**EXHIBIT 3**

**United States District Court**
For the Northern District of California

1

2

3

4

5                        IN THE UNITED STATES DISTRICT COURT

6                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   RANDI PETERSEN, MICHAEL PETERSEN and         No. C 04-01059 SI
    MICHAEL PETERSEN, JR.,
9                                                 **ORDER GRANTING DEFENDANTS'**
                    Plaintiffs,                   **MOTION TO DISMISS**
10
       v.
11
    MT. DIABLO UNIFIED SCHOOL DISTRICT,
12  MILDRED BROWN, individually and in her official
    capacity, CONNIE CUSHING, individually and in
13  her official capacity, and DOES 1 to 50, inclusive,
14                  Defendants.
                                              /
15

16        Defendants have filed a motion to dismiss plaintiffs' Amended Complaint for Damages ("AC"). The

17  Court took the matter under submission without oral argument pursuant to Local Rule 7-1(b). Having carefully

18  considered the papers submitted, defendants' motion is GRANTED for the reasons set forth below.

19

20                                  **BACKGROUND**

21  1.    **Factual background**

22        This case concerns the alleged failure of the Mt. Diablo Unified School District ("the District") to

23  properly educate a mentally and physically disabled child. On March 16, 2004, plaintiffs Randi Petersen,

24  Michael Petersen, Sr.,[1] and their son, "M.P.," filed suit against the Mt. Diablo Unified School District ("the

25  District"), Mildred Brown ("Brown"), a member of the District Board of Education and Connie Cushing

26

27  _____
        [1] While this motion was pending, plaintiff Michael Petersen, Sr. notified the Court, by a letter received
28  October 19, 2004, that he was withdrawing as a plaintiff. By another letter received October 20, 2004, he
    then notified the Court that he wished to be reinstated as a plaintiff.

United States District Court
For the Northern District of California

1    ("Cushing"), a District special education specialist.

2        Plaintiff M.P. is an eleven-year-old boy who has been diagnosed with "Auditory Processing Disorder,

3    Sensory Integration Dysfunction, and Pervasive Development Disorder." AC ¶ 6.  During the 1997-1998

4    school year, M.P. was in kindergarten in the Antioch Unified School District.  Id. at ¶ 16.  During that time,

5    he became eligible for special education services, and an individualized education plan ("IEP") was developed

6    for him.  Id. at ¶ 16-17.  He transferred to the Mt. Diablo Unified School District in June 1998, and was placed

7    in a special day class beginning in September 1998.  Id. at ¶ 18.  In the summer of 1999, Randi and Michael

8    Petersen sought to obtain additional services for M.P. because the Mt. Diablo Unified School District did not

9    provide the services recommended by the Antioch IEP team.  Id. at ¶ 20.

10       From September to December 1999, M.P. was "mainstreamed" in a general education class.  Decision

11   of the California Special Education Hearing Office ("SEHO Decision") at 2.[2]  In November of 1999, the

12   District school psychologist concluded that M.P. had a learning disability and met the criteria for being

13   emotionally disturbed.  Id.  In January 2000, M.P. was moved into a special day class at another school.  AC

14   ¶ 26; SEHO Decision at 3.

15       During the 2001-2002 school year, M.P. attended fourth grade in a special day class at Highlands

16   school, in the District.  Id. at 3.  M.P.'s behavioral problems increased during this year.  Id. at 4.  In May 2002,

17   his IEP team met to discuss his placement for the 2002-2003 school year and decided on a special day class

18   placement at Sunrise School, case management services by a licensed clinical social worker or therapist, a

19   referral for a mental health evaluation, two hours of weekly tutoring, and ongoing monitoring of his progress.

20   Id. at 5.

21       Michael Petersen agreed to this IEP in August 2002, but then withdrew his consent in a September 2,

22   2002 letter.  Id. at 6.[3]  He instead requested placement at Highlands, M.P.'s previous school, and asked that

23   an aide stop "shadowing" the child and collecting ongoing data "through every minute of the school day."  Id.

24       M.P. began the 2002-2003 school year at Highlands on September 4, 2002.  His father withdrew him

25

26       [2] Defendants have requested that this Court take judicial notice of the SEHO Decision, and this Court
    has done so.  See Order Requiring More Definite Statement; Granting Request for Judicial Notice; and Denying
27   Motion to Dismiss, filed June 24, 2004.

28       [3] In the Amended Complaint, the date of this "written objection" is September 3, 2002.  AC ¶ 54.

1   from school on September 5, 2002, stating that he believed that the District was laying the groundwork for

2   M.P. to fail, thereby reinforcing its case for placing him at Sunrise. He also expressed his suspicions that the

3   District had allowed M.P. to fail during the prior school year with the intent of necessitating his eventual

4   placement at Sunrise. Id.

5       By a letter dated September 5, 2002, the District informed Mr. Petersen that it had filed for a due

6   process hearing to establish the appropriateness of its IEP. Id. On September 10, 2002, Michael Petersen

7   obtained a handwritten memo from M.P.'s personal psychologist recommending a "Home and Hospital"

8   placement instead of school attendance. SEHO Decision at 7; AC ¶ 59. On the basis of this recommendation,

9   Michael Peterson requested a Home and Hospital program for M.P. The District informed him that it would

10   need more information to support an IEP recommendation for this placement, and asked to communicate with

11   the psychologist who had examined M.P. AC ¶ 61. Mr. Petersen did not give consent. SEHO Decision at

12   7. M.P. returned to Highlands on October 4, 2002, but his father removed him that day. With M.P. out of

13   school and receiving no program, his IEP team met on October 30, 2002, to discuss his father's request for

14   a Home and Hospital placement. Id. at 8.[4] The request for Home and Hospital was denied because of the

15   need for additional information. Id. at ¶ 64. Representatives of the District sent letters to Michael Petersen

16   during this period stating that he was in violation of compulsory education laws, and threatening to initiate

17   School Attendance Review Board ("SARB") proceedings against him. Id. at ¶¶ 61, 66-70, 75. In December

18   2002, Mr. Petersen filed a request for a due process hearing, and on January 15, 2003, the District also filed

19   a hearing request. Mr. Petersen's request was subsequently withdrawn.

20       A due process hearing was held in March 2003. On April 10, 2003, defendant Browne sent a letter

21   to Randi apologizing for "miscommunication" about the Home and Hospital policy and stating that the District

22   was in the process of drafting such a policy but had only an "Independent Study Program." Id. at ¶ 79. The

23   SEHO hearing decision was issued on May 1, 2003. Neither party appealed the decision within ninety days.

24   M.P. did not return to school for the remainder of the 2002-2003 school year.

25       In June 2003, the parties engaged in mediation and entered into a Compromise and Release Agreement

26

27       [4] The IEP team had already met on September 30, 2002, to discuss Michael's father's request for a
home and hospital placement. At that meeting, Michael's father announced that he was planning to return

28   Michael to Highlands, which he did on October 4, 2002.

United States District Court
For the Northern District of California

1 ("Settlement Agreement") in order to "resolve any and all disputes, causes of action, and claims which may exist

2 concerning Michael's educational program, placement and related services, past, present and future, through

3 August 30, 2003 [arising under the Individuals with Disabilities Education Act ("IDEA")]." Settlement

4 Agreement at 1.

6 **2.      Procedural background**

7      This case is related to a *pro se* lawsuit that Randi and M.P. brought against generally the same

8 defendants in 2002.[5]  Petersen v. Mt. Diablo Unified School District, No. C 02-0887 SI (Compl. filed Feb.

9 21, 2002).  The 2002 complaint challenged the decisions of a family court denying Randi custody of her

10 children and visitation rights.  The 2002 complaint further alleged that the District, in conspiracy with Randi's

11 former husband Michael and others, had denied Randi her constitutional and civil rights, as well as the rights

12 of her children, in the process of developing an educational plan for M.P.  At that time, Randi opposed the

13 special day class placement for M.P.  SEHO Decision at 3.  Michael Petersen had agreed to this placement.

14 Id.[6]

15      Plaintiffs, including Michael Petersen, filed this action on March 16, 2004.  On May 14, 2004, this

16 Court issued an order relating it to the 2002 case.  On May 25, 2004, judgment was entered on the 2002

17 lawsuit in favor of defendants.  The original complaint in the 2004 action alleged seven causes of action.[7]  On

18 June 24, 2004, this Court denied defendants' motion to dismiss the original complaint but granted their motion

19 for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).  On July 2, 2004, plaintiffs filed

22      [5] In the 2002 complaint, Michael Petersen, M.P.'s father, was named as a defendant and was alleged to be part of a conspiracy against Randi and M.P.  In this case, Michael Peterson is a plaintiff.

23      [6] This Court dismissed the 2002 case under Federal Rule of Civil Procedure 12(b)(6) for failure to state

24 a claim. Petersen, No. C 02-0887 SI (Order filed July 3, 2002).  The July 3, 2002 Order dismissing the case granted Randi leave to amend her complaint on or before August 2, 2002.  July 3, 2003 Order.  At oral

25 argument, Randi stated that she was trying to secure attorney services to aid her.  July 3, 2002 Order at 18. Plaintiffs did not file an amended complaint and the case was dismissed pursuant to the July 3, 2002 Order.

26 Petersen, No. C 02-0887 SI (Order filed May 25, 2004).

27      [7] The original causes of action were: (1) a violation of the Rehabilitation Act of 1973; (2) a violation of the Americans with Disabilities Act; (3) a violation of 42 U.S.C. § 1983; (4) conspiracy under 42 U.S.C.

28 § 1985; (5) intentional infliction of emotional distress; (6) retaliation; and (7) violation of public policy.

4

1   an amended complaint.  In the amended complaint, plaintiffs allege eight causes of action: (1) a violation of the

2   Rehabilitation Act of 1973; (2) a violation of the Americans with Disabilities Act; (3) a violation of 42 U.S.C.

3   § 1983 (Equal Protection); (4)  a violation of 42 U.S.C. § 1983 (Due Process); (5) conspiracy under 42

4   U.S.C. § 1985; (6) intentional infliction of emotional distress; (7) retaliation; and (8) a violation of public

5   policy.[8]  Ken Ferro was also added as a defendant and served with the amended complaint.

6            Now before the Court is defendants' motion to dismiss the amended complaint under Federal Rule of

7   Civil Procedure 12(b)(6) for failure to assert a claim upon which relief can be granted.

8

9                                          **LEGAL STANDARD**

10           Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to

11  state a claim upon which relief can be granted.  The question presented by a motion to dismiss is not whether

12  the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim.

13  See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974), overruled on other grounds by

14  Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012 (1984).

15           In answering this question, the Court must assume that the plaintiff's allegations are true and must draw

16  all reasonable inferences in the plaintiff's favor.  See Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.

17  1987).  Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow

18  the plaintiff to develop the case at this stage of the proceedings.  See United States v. City of Redwood City,

19  640 F.2d 963, 966 (9th Cir. 1981).

20           "The court may also consider documents attached to the complaint in connection with a FRCP 12(b)(6)

21  motion to dismiss."  Parks Sch. of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995)(quoting

22  Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).  "If a plaintiff fails to attach to the complaint the

23  documents on which it is based, defendant may also attach to a FRCP 12(b)(6) motion the documents referred

24  to in the complaint."  Lee v. City of Los Angeles, 250 F.2d 668, 688-89 (9th Cir. 2001)).  "In addition,

25

26

27           [8] The seven causes of action in the March 16, 2004 complaint are still present; the plaintiffs have added
     a second alleged violation of 42 U.S.C. § 1983.  In the original complaint, the plaintiffs generally alleged a
28   violation of 42 U.S.C. § 1983.  In the amended complaint, one § 1983 claim is brought for an Equal Protection
     violation and the other for a violation of Due Process.

5

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  whether requested or not, the court may consider documents whose contents are alleged in a complaint and

2  whose authenticity no party questions, but which are not physically attached to the plaintiffs' pleadings." In re

3  Silicon Graphics Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999)). "On a motion to dismiss, [the court] may

4  take judicial notice of matters . . . outside the pleadings." MGIC Indem. Corp. v. Weisman, 803 F.2d 500,

5  504 (9th Cir. 1986).

6        If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth

7  Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the

8  pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other

9  facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

10

11                                **DISCUSSION**

12        Defendants move to dismiss each of the eight causes of action in the amended complaint on numerous

13  grounds. They contend (1) that defendants are immune from suit; (2) that certain claims and factual allegations

14  are barred by plaintiffs' failure to exhaust IDEA administrative remedies, by the parties' Settlement Agreement,

15  by the applicable statutes of limitations, and by the Court's Order in the 2002 lawsuit; and (3) that plaintiffs

16  have failed to state a claim for any of the eight causes of action. The Court will discuss the immunity issue first

17  and then address each claim.

18

19  **1.    Immunity**

20        Even if plaintiffs were to properly state a claim for one of their eight causes of action, all of the

21  defendants would be immune from suit. States and their entities cannot be sued in federal court under the

22  doctrine of state sovereign immunity, embodied in the Eleventh Amendment. The doctrine of state sovereign

23  immunity applies regardless of whether a plaintiff's suit is for monetary damages or other relief.    Federal

24  Maritime Comm'n v. South Carolina Ports Authority, 535 U.S. 743, 765, 122 S. Ct. 1864 (2002). Further,

25  the qualified immunity doctrine "confers immunity on Government officials of suitable rank for the reason that

26  'officials of government should be free to exercise their duties unembarrassed by fear of damage suits in respect

27  of acts done in course of those duties.'" Doe v. McMillan, 412 U.S. 306, 319, 93 S.Ct 2018 (1973).

28

United States District Court
For the Northern District of California

1

2       **A.      Mt. Diablo Unified School District**

3              The District argues that, as a state entity, it is protected against suit in federal court by the Eleventh

4       Amendment.  Plaintiffs argue that school districts are not entitled to immunity from private damage suits, and

5       they cite authority from other state and federal jurisdictions to this effect.  Pls.' Mot. at 9.

6              None of the cases cited by plaintiffs is binding on this Court.  To the contrary, the Ninth Circuit has held

7       that California school districts are arms of the State of California and enjoy Eleventh Amendment immunity.

8       See Belanger v. Madera Unified School District, 963 F.2d 248, 251 (9th Cir. 1992).  Because Mt. Diablo is

9       a school district within the State of California, the Eleventh Amendment bars all of plaintiffs' claims against the

10      Mt. Diablo school district in federal court.[9]

11             Accordingly, defendant Mt. Diablo's motion to dismiss is GRANTED as to the entire complaint.

12

13      **B.      District Employees**

14             Plaintiffs also bring suit against District employees Browne, Cushing, and Ferro in both their official and

15      individual capacities.

16

17             **i.      Eleventh Amendment immunity of District employees in their official**
                       **capacities**
18

19      The Eleventh Amendment also bars suits against state officials who are sued in their official capacities.

20      Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 109 S. Ct. 2304  (1989).  While "state officials

21      literally are persons . . . a suit against a state official in his or her official capacity is not a suit against the official

22      but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." Id.

23      at 71.  Defendants Browne, Cushing, and Ferro are Mt. Diablo Unified School District employees, and

24      therefore are considered state employees for purposes of the Eleventh Amendment.  Plaintiffs cannot sue these

25      employees in their official capacities in federal court.

26

27      —————————————————

28             [9] The District appears to be a defendant in all of plaintiffs' eight causes of action: a named defendant
        in the five federal claims, and one of "all defendants" against whom the three state claims are brought.

7

United States District Court
For the Northern District of California

ii.     **Immunity of District employees in their individual capacities**

Defendants also argue that plaintiffs are barred from bringing suit against the District Employees in their individual capacities.[10]  Qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982).  A court considering a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of a constitutional right, then proceed to determine if the right was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001).  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiry concerning qualified immunity.  See id.

For the reasons discussed below, plaintiffs have failed to state a claim for violations of their constitutional rights.  Consequently, under the first step of the Saucier analysis, defendants are entitled to qualified immunity.

Plaintiffs' claims against the District employees in both their official and individual capacities  must be dismissed on grounds of immunity.

**2.     Federal claims**

Even if defendants were not immune from suit in this Court, plaintiffs' federal claims must be dismissed.  As defendants point out, the facts alleged in the amended complaint span seven years and include many of the family court proceedings at issue in the 2002 lawsuit.  Accordingly, defendants identify several "overarching problems" with the complaint that bar the federal claims or portions of certain claims.  Defs.' Mot. at 1.  The Court will address each claim separately.

**A.     Section 504 claim**

Plaintiffs bring their first cause of action under Section 504 of the Rehabilitation Act of 1973.  Section 504 is a general civil rights provision enacted "to prevent discrimination against all handicapped individuals .

---

[10] Plaintiffs' Fifth Cause of Action (labeled "Fourth Cause of Action"), the 42 U.S.C. § 1985 claim, appears to be the only claim brought against the District employees in their individual capacities.  AC ¶¶ 119-124.

8

United States District Court
For the Northern District of California

1    . . in employment, housing, transportation, education, health services, or any other Federally-aided programs."

2    S. Rep. No. 1297, 93d Cong., 2d Sess. 38.

3        Here, plaintiffs allege that defendants have denied M.P. the opportunity to benefit from the District's

4    educational services because of his disabilities. AC ¶ 89. Defendants argue that, although plaintiffs do not

5    mention the IDEA in their amended complaint, this claim is in fact based entirely on the IDEA and, since

6    plaintiffs have not exhausted their administrative remedies, must be dismissed. Defendants contend that the

7    action is in fact based on the IDEA because it involves M.P.'s educational evaluation, placement, and

8    services.[11]  Plaintiffs state that "this case is not simply about [M.P.'s] educational evaluation, placement, and

9    services" but instead involves three plaintiffs whose injuries are "non-educational" and ones for which "the

10   IDEA does not provide a remedy." Pls' Opp'n at 14. In their opposition, plaintiffs clarify that their Section

11   504 claim is based on defendants' "fraud" in misrepresenting that M.P. could be placed in a Home and Hospital

12   program when in fact no such program existed in the District. Id. at 17-18.

13       Based on the allegations in the amended complaint, the Court finds that plaintiffs' Section 504 claim

14   is entirely IDEA-based. The complaint alleges, among other practices, that "STUDENT has been denied the

15   opportunity to benefit from the educational services offered by MOUNT DIABLO . . . [and] was provide[d]

16   no services whatsoever during the school year of 2002-2003"; "MOUNT DIABLO did not demonstrate,

17   before removing STUDENT from a regular setting, whether . . . STUDENT could be educated satisfactorily

18   in that regular setting"; and "MOUNT DIABLO used tests that were invalid for testing STUDENT's complex

19   needs." See AC ¶¶ 89a, d, e; see generally id. at ¶¶ 89a-h. The facts alleged are based on M.P.'s educational

20   evaluation (i.e., whether the testing used was appropriate), placement (i.e., whether he was properly removed

21   from the regular classroom setting), and services (i.e., whether the services provided to him were effective or

22   appropriate).[12]

23

24   _____

25   [11] Defendants point out that, in plaintiffs' original complaint, they specifically stated that the Section 504
     and ADA claims were based on the IDEA; in the amended complaint, they have omitted reference to the

26   IDEA. Regardless of this history, the Court will assess whether each claim is based on educational evaluation,
     placement, and services.

27   [12] Plaintiffs "fraud" allegation does not alter the Court's conclusion, because the District's
     representations about what placements were available and its decisions about whether to give M.P. the Home

28   and Hospital placement are also matters pertaining to his educational services.

1     Because the claim is IDEA-based, plaintiffs must exhaust their administrative remedies under the IDEA

2     before bringing it. 20 U.S.C. § 1415(l); Robb v. Bethel School Dist., 308 F.3d 1047, 1049 (9th Cir. 2002).

3     Here, plaintiffs participated in a May 1, 2003 SEHO hearing, but they did not file a timely appeal from the

4     decision withing the 90 days required.[13] Plaintiffs claim that they have exhausted their administrative remedies

5     because they seek money damages, which cannot be obtained from an administrative SEHO appeal. Pls.'

6     Opp'n at 13-14. However, in Robb v. Bethel School Dist., the Ninth Circuit held that plaintiffs must exhaust

7     their IDEA administrative remedies before filing all IDEA-related claims even when those claims are for money

8     damages, and it specifically found that "a plaintiff cannot avoid the IDEA's exhaustion requirement merely by

9     limiting a prayer for relief to money damages." Id. at 1049.

10     Plaintiffs also claim that exhaustion is not required of them because the administrative tribunal was not

11     "competent" to hear their Section 504 and ADA claims. Plaintiffs cite no authority for this proposition, and

12     Robb is once again instructive: "[w]here the IDEA's ability to remedy a particular injury is unclear, exhaustion

13     should be required to give educational agencies an initial opportunity to ascertain and alleviate the alleged

14     problem." Id. at 1050. Thus, until plaintiffs exhaust all administrative remedies, this Court lacks jurisdiction

15     over their Section 504 claim.

16     Because the Court lacks jurisdiction, it will not reach defendants' other arguments. The Court hereby

17     GRANTS defendants' motion to dismiss the Section 504 claim.

18

19     **B.**    **ADA claim**

20     Plaintiffs also allege a violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C.

21     § 12132. To state a claim under the ADA, a plaintiff must allege four elements:

22     (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to
        participate in or receive the benefit of some public entity's services, programs or activities; (3)

23     the plaintiff was either excluded from participation in or denied the benefits of the public entity's
        services, programs, or activities, or was otherwise discriminated against by the public entity;

24     and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's
        disability.

25

26     Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (quoting Weinreich v. L.A. County Metro. Transp.

27

28     [13] The SEHO hearing was only held regarding the 2002-2003 school year, so to the extent that
plaintiffs' claim arises out of other conduct, it is also unexhausted.

1  Auth, 114 F.3d 976, 978 (9th Cir. 1997)).

2      Here, plaintiffs' ADA allegations are based primarily on M.P.'s educational placement and services:

3  that the District did not evaluate its current services, policies, and practices for ADA compliance, "refused to

4  evaluate it[s] policy and practice of not offering Home and Hospital" to M.P., and retaliated against plaintiffs

5  in the form of threatened SARB proceedings and suspensions of M.P. from school. AC ¶¶ 98(a)-(d). Thus,

6  this claim is partially IDEA-based, and plaintiffs have failed to exhaust administrative remedies before bringing

7  it. The Court lacks subject matter jurisdiction over the claim to the extent that it rests on these allegations.

8      Plaintiffs' ADA claim is also based on the District's alleged failures to "investigate[] complaints of non-

9  compliance with the ADA" and "adopt[] grievance procedures for ADA complaints," AC ¶¶ 98(b), (c), and

10  refers to retaliation in the form of interference in the Petersens' family court proceedings. Id. Because these

11  allegations are not IDEA-related, the Court will consider some of defendants' other arguments for dismissal.

12

13      First, the ADA claim appears to be barred by the statute of limitations. The ADA does not contain

14  its own statute of limitations; it adopts the forum state's statute of limitations for personal injury torts.

15  California's limitations period for personal injury torts is two years. Cal. Code Civ. P. § 335.1. Thus, all of

16  plaintiffs' allegations before March 16, 2002 are time-barred. The only specific allegation about the District's

17  failure to investigate ADA complaints is that Randi Petersen "faxed complaints of discrimination" to the principal

18  of the elementary school in which M.P. was enrolled from September to December 1999, and received no

19  response. AC ¶ 25. While plaintiffs argue that there are many other examples of M.P.'s ill-treatment, they

20  point to no facts in the amended complaint that fall within the limitations period. Moreover, they cite neither

21  facts nor authority for their argument that the "continuous" nature of defendants' actions defeats the statute of

22  limitations. Second, the alleged retaliation based on defendants' interference with family court proceedings

23  took place prior to March 16, 2002, and fall outside the limitations period.

24      Consequently, defendants' motion to dismiss this claim is GRANTED.

25

26  **C.     42 U.S.C. § 1983 (Equal Protection)**

27  Plaintiffs' third cause of action is brought under 42 U.S.C. § 1983 for a violation of the Equal

28

**United States District Court**
For the Northern District of California

1    Protection Clause of the Fourteenth Amendment.   To state a claim under § 1983, "the plaintiff must

2    demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation

3    of a constitutional right or federal statutory right." See West v. Atkins, 487 U.S. 42, 48 (1988).  For an Equal

4    Protection violation, plaintiffs must show that there was unequal treatment of persons similarly situated, or that

5    the defendants acted with an intent to discriminate against plaintiffs based on membership in a protected class.

6    See Washington v. Davis, 426 U.S. 229, 239-40, 96 S. Ct. 2040 (1976).

7          Plaintiffs allege that "[t]he actions of Defendants, as described" in the complaint's statement of facts,

8    violate the Equal Protection Clause, as do the District's policies of not offering Home and Hospital placements,

9    and not investigating or providing grievance procedures to resolve ADA complaints.  AC ¶¶ 103, 105(a)-(c).

10   They also allege that the District retaliated against plaintiffs by interfering in the family court proceedings and

11   suspending M.P. from school.  Id. at ¶ 105(d).  Defendants contend that this § 1983 claim is also IDEA-based

12   and barred by the Settlement Agreement, by the statute of limitations, and by this Court's order dismissing the

13   2002 lawsuit.

14         The Court agrees that plaintiffs' § 1983 claim is partially IDEA-based because it is based on the

15   appropriateness of a Home and Hospital placement.  In addition, the allegations regarding interference in the

16   family court proceedings are barred by the two-year statute of limitations.

17         Consequently, defendants' motion to dismiss as to this claim is also GRANTED.

18

19   **D.     42 U.S.C. § 1983 (Due Process)**

20         Plaintiffs' fourth cause of action is for a violation of the Due Process Clause of the Fourteenth

21   Amendment.  To allege a Due Process violation, plaintiffs must establish (1) a liberty or property interest

22   protected by the Constitution, (2) a deprivation of that interest by the government, and (3) the lack of process.

23   Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).  Plaintiffs allege that M.P. has a

24   property interest in his public education and a liberty interest in "personal security and freedom from infliction

25   of pain."  AC ¶ 110.  Plaintiffs contend that the District violated this right by various actions, including

26   suspending M.P., placing him with a certain classroom aide and next to a certain child in the classroom, refusing

27   to provide him with services for a year, and promoting him from year to year.  Id. at ¶ 111.  The Court finds

28

1  that these actions are related to M.P.'s educational evaluation, placement, and services, and that IDEA

2  remedies are available and appropriate. Thus, plaintiff has failed to exhaust his IDEA administrative remedies,

3  and the Court lacks jurisdiction over this claim.

4      Defendants' motion to dismiss is GRANTED as to plaintiffs' § 1983 Due Process claim.

5

6      **E.    42 U.S.C. § 1985**

7      Plaintiffs' fifth cause of action is for a violation of 42 U.S.C. § 1985. Assuming that plaintiffs are

8  referring to 42 U.S.C. § 1985(c), they must allege that (1) the purpose of the conspiracy was to deprive the

9  plaintiff of equal protection, equal privileges and immunities, or to obstruct the course of justice in the state; (2)

10  the defendant intended to discriminate against the plaintiff; (3) the defendant acted under color of state law and

11  authority; and (4) the acts done in furtherance of the conspiracy resulted in an injury to the plaintiff's person or

12  property or prevented him from exercising a right or privilege of a U.S. citizen. Sykes v. California (Dept. of

13  Motor Vehicles), 497 F.2d 197, 200 (9th Cir. 1974).

14      Plaintiffs fail to state a claim under section 1985. Plaintiffs' amended complaint contains the same

15  conclusory allegations as the original complaint: "Defendants BROWNE and CUSHING agreed and acted to

16  intentionally interfere with plaintiff RANDI's custodial rights. Defendants BROWNE, CUSHING and FERRO

17  agreed and acted to intentionally interfere with STUDENT's right to an education. All defendants agreed and

18  acted with others to punish Plaintiffs for having exercised constitutionally and statutorily protected rights." AC

19  ¶ 120(a)-(c). Nowhere do they allege facts that demonstrate the requisite intent for a § 1985 claim or any

20  specific facts that support the existence of a conspiracy. Burns v. County of King, 883 F.2d 819, 821 (9th

21  Cir. 1989).

22      Consequently, defendants' motion to dismiss is GRANTED as to plaintiffs' fifth cause of action.

23

24  **3.    State claims**

25      Plaintiffs have brought state law claims for intentional infliction of emotional distress, retaliation, and

26  violation of public policy. Defendants argue that these claims should be dismissed because (1) the state claims

27  against the District are barred by plaintiffs' failure to comply with the California Tort Claims Act, and (2) if all

28

13

1   federal claims have been dismissed, the Court should decline to exercise supplemental jurisdiction over the

2   pendent state law claims.  In addition, defendants contend that plaintiffs have failed to allege sufficient facts for

3   each claim.

4

5       **A.    Tort Claims Act**

6       The three state tort claims against the District fall under the purview of the California Tort Claims Act,

7   Cal. Gov. Code § 900 et seq.  The California Court of Appeal has held that California Government Code

8   sections 905 and 945.4 require "as a condition precedent to bring suit for 'money or damages' against a local

9   entity, the timely presentation to the defendant of a *written* claim and the rejection of that claim in whole or

10  part."  Loehr v. Ventura County Community College District, 147 Cal. App. 3d 1071, 1078 (1983) (emphasis

11  in original).  "Plaintiff [is] therefore required to file a timely claim as a mandatory prerequisite to the filing of [a]

12  complaint."  Id. at 1080.  Here, plaintiffs apparently did not file a claim with the District before bringing suit.

13

14      Plaintiffs argue that they "substantially complied" with the filing requirements because defendants were

15  aware of the issues throughout the time in question, and because "defense counsel in this action is the same firm

16  that has been handling this matter from its administrative inception . . . [and] are extremely familiar with this

17  case."  Pls.' Opp'n at 22.  However, "[c]ompliance with the filing requirements . . . may not be excused simply

18  because the defendant public entity has full knowledge of the facts constituting the basis of the claim."  Loehr,

19  147 Cal. App. 3d at 1084.  In addition, as defendants point out, "substantial compliance" refers only to

20  attempts to comply with the filing procedures in Cal. Gov. Code § 910.  Loehr, 147 Cal. App. 3d at 1082-83

21  ("[a]lthough a claim need not conform to pleading standards, the facts constituting the causes of action pleaded

22  in the complaint must substantially correspond with the circumstances described in the claims as the basis of

23  plaintiff's injury").  Here, plaintiffs make no mention of ever filing a claim with the District.  In their Opposition,

24  they state that "Plaintiffs have at various times over the past several years faxed and/or mailed letters to

25  defendants regarding claims against the district."  Pls.' Opp'n at 22.  It is not possible to tell whether or not any

26  of those letters "substantially correspond with the circumstances described in the [complaint] as the basis of

27  plaintiff's injury."

28

1    Because plaintiffs have not followed the procedures as set forth in the California Tort Claims Act, Cal.

2    Gov. Code § 900 et seq., their state tort claims against the District must be dismissed.

3

4    **B.    Supplemental jurisdiction**

5        It is well-settled that "[w]hen federal claims are dismissed before trial . . . pendent state claims also

6    should be dismissed." Jones v. Cmty. Redevelopment Agency of the City of Los Angeles, 733 F.2d 648, 651

7    (9th Cir. 1984).  Pursuant to 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction

8    over plaintiffs' pendent state law claims.

9

10   **4.    Dismissal without leave to amend**

11       The Court has already afforded plaintiffs an opportunity to file an amended complaint.  Because of

12   plaintiffs' failure to exhaust administrative remedies and because several claims are barred by the statute of

13   limitations, the Court finds that further amendment would be futile.  The complaint is dismissed without leave

14   to amend.

15   **5.    Punitive Damages**

16       Because the Court dismisses all of plaintiffs' causes of action, plaintiffs are not entitled to punitive

17   damages.

18

19                                **CONCLUSION**

20       For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion

21   to dismiss the amended complaint.  Plaintiffs' amended complaint is DISMISSED with prejudice. [Docket #

22   14].

23

24   **IT IS SO ORDERED.**

25

26   Dated: December 20, 2004                           S/Susan Illston
                                                        SUSAN ILLSTON
27                                                      United States District Judge

28

*United States District Court*
*For the Northern District of California*

**EXHIBIT 4**

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RANDI PETERSEN, MICHAEL PETERSEN and
MICHAEL PETERSEN, JR.,

              Plaintiffs,

     v.

MT. DIABLO UNIFIED SCHOOL DISTRICT,
MILDRED BROWN, individually and in her official
capacity, CONNIE CUSHING, individually and in
her official capacity, and DOES 1 to 50, inclusive,

              Defendants.

No. C 04-01059 SI

**JUDGMENT**

---

Plaintiffs' amended complaint is dismissed without leave to amend. Judgment is entered accordingly.

**IT IS SO ORDERED AND ADJUDGED.**

Dated: December 20, 2004

                                   S/Susan Illston
                                   SUSAN ILLSTON
                                   United States District Judge