SUE ANN SALMON EVANS, State Bar No. 151562
AMY R. LEVINE, State Bar No. 160743
MATTHEW JUHL-DARLINGTON, State Bar No. 215375
MILLER BROWN & DANNIS
71 Stevenson Street, 19th Floor
San Francisco, CA 94105
Telephone: (415) 543-4111
Facsimile: (415) 543-4384

Attorneys for Defendants
MOUNT DIABLO UNIFIED SCHOOL DISTRICT, MILDRED
BROWNE, and KEN FERRO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PETERSEN on behalf of himself and parent and next of friend to Mike Jr. and Ryan disabled minor children PRO SE,<br><br>    Plaintiffs,<br><br>    v.<br><br>CALIFORNIA SPECIAL EDUCATION HEARING OFFICE, MCGEORGE SCHOOL OF LAW et al., HEARING OFFICER, VINCENT PASTORINO, MOUNT DIABLO UNIFIED SCHOOL DISTRICT et al., MILDRED BROWN, individually and in her official capacity as assistant superintendent of special education, KEN FERRO, individually and in his official capacity as Alternative Dispute Resolution Administrator,<br><br>    Defendants. | Case No.  C07-02400 SI<br><br>**DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AN ORDER DECLARING THE PETERSONS VEXATIOUS LITIGANTS AND IMPOSING PREFILING CONDITIONS**<br><br>Hearing Date:      March 21, 2008<br>Hearing Time:      9:00 a.m.<br>Courtroom:          10, 19th Flr.<br>Judge:                  Hon. Susan Illston<br><br>Trial:                    None |

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 294105

DISTRICT DEFENDANTS' MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF AN ORDER DECLARING THE PETERSENS VEXATIOUS LITIGANTS & IMPOSING PREFILING CONDITIONS; CASE NO. C07-02400

SF 294449v1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................... 1

      1.    Case No. C-02-887 SI– The 2002 Case ...................................... 2

      2.    Case No. C-04-01059 SI – The 2004 Case ................................. 3

      3.    Case No. C-05-01032 CRB – The 2005 Case............................. 5

      4.    The Instant Litigation - Case No. C-07-02400 SI ....................... 6

II.   LEGAL ARGUMENT ..................................................................................... 8

   A.    The Court Has the Inherent Authority to Prevent Abuse of the Judicial
      Process .................................................................................................... 8

   B.    The Frivolous and Harassing Nature of the Petersens' Conduct ......................... 10

      1.    Vexatious and Duplicative *Pro Per* Litigation ........................... 10

      2.    Burden to the Parties, the Court and Its Staff ........................... 12

      3.    Litigant's Motive ........................................................................ 14

   C.    The Petersens' Numerous Frivolous and Harassing Tactics Justify a Pre-
      Filing Order .............................................................................................. 18

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

TABLE OF AUTHORITIES

Page

**Cases**

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991) ...................................................................................14, 18

*Christian v. Garment Co. v. EEOC,*
  434 U.S. 412 (1978) ...........................................................................................15

*De Long v. Hennessey,*
  912 F.2d 1144 (9th Cir. 1990)....................................................................8, 9, 17

*Doran v. Vicorp Rests., Inc.,*
  407 F.Supp.2d 1115 (C.D.Cal. 2005)...................................................................9, 12

*Hernandez v. City of El Monte,*
  138 F.3d 393 (9th Cir. 1998)...........................................................................13

*Molski v. Evergreen Dynasty Corp.,*
  500 F.3d 1047 (9th Cir. 2007)........................................................................9, 10

*Molski v. Mandarin Touch Restaurant,*
  347 F.Supp.2d 860 (C.D. Cal. 2004)...................................................................17, 18

*Molski v. Rapazzini Winery,*
  400 F.Supp.2d 1208 (N.D. Cal. 2005) ................................................................10

*O'Laughlin v. Doe,*
  920 F.2d 614 (9th Cir. 1990)...............................................................................8

*Oliva v. Sullivan,*
  958 F.2d 272 (9th Cir. 1992).............................................................................14

*Roadway Express, Inc. v. Piper,*
  447 U.S. 752 (1980) ............................................................................................18

*Safir v. United States Lines, Inc.*
  792 F.2d 19 (2nd Cir. 1986) .................................................................................8

*Urban v. United Nations,*
  768 F.2d 1497 (D.C. Cir. 1985) .......................................................................12

*Weissman v. Quail Lodge Inc.,*

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

ii

1    179 F.3d 1194 (9th Cir. 1999).................................................................8, 15

2  **Treatises**

3  Black's Law Dictionary 1596 (8th Ed. 2004).............................................1

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

TABLE OF AUTHORITIES

SF 294449v1

## I.    **INTRODUCTION**

A "vexatious suit" is a lawsuit instituted maliciously and without reasonable or probable good cause. Black's Law Dictionary 1596 (8th Ed. 2004). There is no doubt that this lawsuit meets that definition.

A review of plaintiffs' litigation history in the United States District Court over the past five years clearly demonstrates the frivolous, unreasonable and litigious conduct of plaintiff Michael Petersen and his ex-wife, Randi Petersen, who have filed numerous actions on behalf of themselves and their sons, Michael Petersen, Jr. ("Mikey") and Ryan ("Petersens") against the Mt. Diablo Unified School District ("District"), and its officers, directors, employees, and agents ("District Defendants"). The instant case is the latest in a series of four cases in the District Court and a Ninth Circuit appeal filed by the Petersens, who continue to litigate despite the fact that their three previous cases in this Court (U.S. District Court Case Nos. C-02-887 SI, C-04-1059 SI, and C-05-1032 CRB) and their appeal to the Ninth Circuit (of Case No. C-04-1059 SI), all involving substantially similar claims, have been dismissed for failure to state any claim upon which relief could be granted and/or for lack of prosecution. The present action evidences the Petersens' pursuit of baseless claims brought for the sole purpose of harassing the District Defendants and causing them to waste public dollars defending such claims.

Their filing of this latest suit is particularly shocking, in light of the fact that the Petersen children do not even reside within the Mount Diablo Unified School District and have not done so since the fall of 2003. (Declaration of Mildred D. Browne, pp. 1, 11). This fact has been admitted by the parents and conclusively determined by both the Special Education Hearing Office ("SEHO") and this Court.[1] As recently December 2007, the District's attorney asked Mr. Petersen directly whether his children attend Mt. Diablo schools or reside in Mt. Diablo. He

---

[1] Those tribunals found that Mikey began the 2002-2003 school year at Highlands School on September 4, 2002, but that his father, Michael Petersen, withdrew him from school on September 5, 2002, stating he believed the District was laying the groundwork for Mikey to fail. (December 20, 2004 Order Granting Defendants' Motion to Dismiss, Case No. C-04-01059 SI, p. 3, ll. 1-4; SEHO Decision, at 6; District's Request for Judicial Notice, Ex. I and C) Mikey returned to Highlands on October 4, 2002, but his father removed him that day. *Id.*, at 8. Michael Petersen then sent a letter stating that he had moved out of the District's jurisdiction. *Id.*, at 8 fn 10.

1

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

SF 294449v1

1    evaded the question and never denied that they live outside the District's boundaries.

2    (Declaration of Amy R. Levine, at ¶ 2.)

3    **II.    STATEMENT OF FACTS**

4         **A.    Plaintiffs' History of Frivolous Litigation**

5         A review of the cases the Petersens have filed with this Court reveals that they are nearly

6    all identical in terms of the facts alleged, the claims presented, and the damages requested. A

7    summary of the allegations contained in the three previous *pro se* lawsuits and the final

8    disposition of those suits, together with a summary of the claims in the instant action will clearly

9    show that the Petersens continue to litigate the same claims, even after those claims have been

10   identified as groundless, and ultimately dismissed. Plaintiffs' complaints, when viewed in the

11   aggregate, reveal a clear intent to harass the District and this Court.

12         **1.    Case No. C-02-887 SI– The 2002 Case**

13        The first *pro se* lawsuit was filed on February 21, 2002 by Randi Petersen, Mikey

14   Petersen, and Ryan Petersen, and was later ordered related to a subsequent 2004 case on May

15   14, 2004, because it involved substantially the same parties, events, and/or questions of law as

16   defined in Local Rule 3-12(b). In the 2002 case, Mikey and Ryan's father, Michael Petersen,

17   was named as a defendant along with the District and several District employees, who were

18   alleged to be part of a conspiracy against the mother Randi Peterson, Mikey, and Ryan. The

19   2002 complaint challenged the decisions of the Contra Costa Superior Court (Family Court),

20   which denied Randi custody of her children, and named several court officers also as

21   defendants. It further alleged that the District denied Randi her constitutional rights, as well as

22   the rights of her children, in the process of developing an educational plan for her two sons

23   during the 1997-1998, 1999-2000, and 2000-2001 school years. The complaint against the

24   District and District employees Mildred Browne, Connie Cushing, Peggy Holt, Karen Sakata

25   and Arlee Maier also included numerous claims of alleged discrimination, retaliation, and

26   tortious conduct, and alleged violations of 42 U.S.C. sections 1983 and 1985, the American with

27   Disabilities Act (42 U.S.C §§12101, *et seq.*) ("ADA"), Section 504 of the Rehabilitation Act

28

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

2

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO.
C07-02400

1   (29 U.S.C. § 794), and the Individuals with Disabilities Education Act ("IDEA"). (Complaint in

2   C-02-887 SI and Order Relating it to C-04-01509 SI; Request for Judicial Notice, Ex. A and E)

3       This 2002 filing was dismissed with leave to amend under Federal Rule of Civil

4   Procedure 12(b)(6) for failure to state a claim for which relief could be granted on the grounds

5   that 1) plaintiff was requesting that this Court step into the role of the family court and resolve

6   her legal custody dispute, which is not within the Court's jurisdiction, and plaintiff had not

7   stated any grounds for federal jurisdiction; 2) plaintiff lacked standing to bring suit on her

8   children's behalf because she did not have legal custody and because she was proceeding *in pro*

9   *per*; 3) none of plaintiff's causes of action stated a valid claim; and 4) plaintiff failed to specify

10  how each cause of action related to the conduct of each defendant.

11      Because plaintiff lacked standing to pursue her children's claims and was not herself

12  disabled, all the causes of action predicated on disability discrimination or retaliation were

13  barred. Of further relevance here, the court held that plaintiff's IDEA claims were barred for

14  failure to exhaust her administrative remedies, that her Section 1983 and 1985 claims were

15  barred by the Eleventh Amendment and by qualified immunity, and that most of the acts alleged

16  in the complaint occurred more than one year prior to the filing of the complaint, and would

17  therefore barred by the statute of limitations. After plaintiff failed to amend, judgment was

18  entered in favor of the defendants on May 25, 2004. (*Petersen v. Mt. Diablo Unified School*

19  *District*, No. C 02-0887 SI, July 3, 2002 Order of Dismissal With Leave to Amend; May 25,

20  2004 Judgment; Request for Judicial Notice, Ex. B and F).

21          **2.    Case No. C-04-01059 SI – The 2004 Case**

22      On March 16, 2004, the second in the series of four lawsuits was filed by Randi

23  Petersen, Michael Petersen, and their son Mikey Petersen against the District, and District

24  employees Mildred Browne and Connie Cushing. The Petersen plaintiffs again alleged the

25  following causes of action: 1) violation of Section 504 of the Rehabilitation Act of 1973; 2)

26  violation of the ADA; 3) violation of 42 U.S.C. section 1983; 4) conspiracy under 42 U.S.C.

27  section 1985; 5) intentional infliction of emotional distress; 6) retaliation; and 7) violation of

28

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

3

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO.
C07-02400

SF 294449v1

1    public policy. The claims of retaliation against Randi and Michael Petersen were allegedly for

2    their efforts in advocating on their son's behalf. Additionally, the Petersen plaintiffs again

3    alleged that Mikey's impairments were the result of discrimination by the District in failing to

4    provide appropriate educational programs for him during the 2001-2002 and 2002-2003 school

5    years. (Complaint in C-04-01509 SI; Request for Judicial Notice, Ex. D)

6        On June 21, 2004, the Court granted the defendants' motion for a more definite

7    statement and noted that the complaint was "completely devoid of an understandable

8    chronology" and that the plaintiffs did "not cite to any specific instances of violations of their

9    rights and … [did] not specify the conduct that serves as the basis for their claims." (*Petersen v.*

10   *Mt. Diablo Unified School District*, No. C 04-01059 SI, June 21, 2004 Order, at 2:1-2 and 13-

11   14; Request for Judicial Notice, Ex. G).

12       That case too was ultimately dismissed for failure to state a claim on December 20,

13   2004, with the Court noting that "the facts alleged in the amended complaint span seven years

14   and include many of the family court proceedings at issue in the 2002 lawsuit." (July 2, 2004

15   Amended Complaint; December 20, 2004 Order, p. 8; Request for Judicial Notice, Ex. H and I)

16   All of the claims were dismissed based on Eleventh Amendment immunity, which precluded

17   plaintiffs' claims against the District and District employees in their official capacities in federal

18   court, and qualified immunity, which precluded plaintiffs' claims against the employees in their

19   individual capacities because no violation of a clearly established constitutional right was

20   alleged. The Court alternatively granted the motion on the following grounds: 1) the plaintiffs'

21   Section 504 and due process (Section 1983) claims were barred because they were based on the

22   alleged failure to provide educational evaluations, placements, and/or services and plaintiffs

23   failed to exhaust their administrative remedies under the Individuals with Disabilities Education

24   Act; 2) the plaintiffs' ADA and equal protection (Section 1983) claims were also barred by the

25   failure to exhaust administrative remedies to the extent they were based on the children's

26   educational placement and services, and to the extent they were not, they were barred by the two

27   year statute of limitations; 3) the plaintiffs' Section 1985 claims failed to state a cause of action

28

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

4

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO. C07-02400

1    as the complaint failed to allege facts to show unlawful intent or the existence of a conspiracy;

2    4) the plaintiffs' state law claims were barred by the failure to comply with the Government

3    Claims Act presentation requirements, and, in any case, the Court declined to exercise

4    supplemental jurisdiction over them.

5    Judgment was entered in favor of defendants on December 23, 2004, yet the Petersens

6    proceeded to attempt to file second and third amended complaints with the Court. (December

7    23, 2004 Judgment, January 12, 2005 Proposed Second Amended Complaint (filed with an ex

8    parte request to reconsider, vacate, or amend the judgment, and/or grant leave to amend the

9    complaint), January 20, 2005 Order Denying Plaintiffs' Ex Parte Request, January 21, 2005

10   Proposed Third Amended Complaint, and January 28, 2005 Order Denying Plaintiff's Ex Parte

11   Motion for Leave to Amend Complaint; Request for Judicial Notice, Ex. J, K, L, M and N) The

12   Petersens' appeal to the Ninth Circuit was dismissed for lack of prosecution.[2] (February 8, 2005

13   Notice of Appeal, February 18, 2005 Motion to Dismiss, and August 1, 2005 Order of

14   Dismissal; Request for Judicial Notice, Ex. O, Q and X)

15   **3.    Case No. C-05-01032 CRB – The 2005 Case**

16   On March 11, 2005, less than three months after Case No. C-04-01059 was dismissed

17   for failure to state a claim, and while their Ninth Circuit appeal was pending, Randi Petersen

18   brought suit on behalf of Mikey and Ryan against the Contra Costa Superior Court, the Family

19   Court Presiding Judge, the Family Court appointed attorney, the District, District employees

20   Mildred Browne, Connie Cushing, and Ken Ferro, Superintendent Gary McHenry, the District

21   Governing Board President, Vice President and three District Governing Board members (Gary

22   Eberhart, Linda Mayo, and E. Williams Leal), attorney Peter Sturges (former attorney with

23   Miller Brown & Dannis), attorney Jennifer Dunn of Miller Brown & Dannis, the entire United

24   States District Court, Northern District of California, and United States District Court Judge

25   Susan Illston. (Complaint in C-05-01032 CRB; Request for Judicial Notice, Ex. W) On April

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 294105

---

[2]   Plaintiffs had counsel in C-04-01059 SI, but that attorney substituted out before the Petersens' request for reconsideration of the judgment and the appeal was filed.

5

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO. C07-02400

SF 294449v1

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1  27, 2005, the Court ordered that this case was related to Case No. C-02-887 SI because it

2  involved substantially the same parties, events, and/or questions of law as defined in Local Rule

3  3-12(b). (April 27, 2005 Order; Request for Judicial Notice, Ex. T) The Petersen plaintiffs had

4  again set forth the same unsubstantiated claims of retaliation and discrimination. This case was

5  dismissed for failure to prosecute on July 1, 2005, and Randi Petersen thereafter filed a

6  "Responsive Declaration" to "Clarify the Record." (Brief in Support of Motion to Dismiss;

7  Order Dismissing Case; Responsive Declaration; Request for Judicial Notice, Ex. U, V, and W)

8  ### 4.    The Instant Litigation - Case No. C-07-02400 SI

9  After having virtually identical allegations dismissed three times, the Petersens filed the

10  instant case on April 27, 2007 in the United States District Court, Eastern District, Fresno

11  Division, and the case was transferred to the Northern District on May 3, 2007.[3] (April 27,

12  2007Complaint in C-07-02400 SI and May 1, 2007 Order of Transfer) This case is predictably

13  similar to the previous three cases, and was also deemed related to those previous cases. (May

14  18, 2007 Order Relating Cases) Again, the Petersens fail to plead anything other than vague,

15  conclusory and ultimately meritless allegations, do not state the factual basis for each claim

16  alleged, and do not identify how each of the defendants allegedly violated the law, rendering the

17  complaint so ambiguous that a responsive pleading could not be formulated. In fact, the original

18  complaint completely failed to even identify *any* cause of action against the District itself, even

19  though it was named as a defendant.

20  Without oral argument, on November 6, 2007 the Court granted the District Defendants'

21  motion for a more definite statement and gave plaintiffs until November 28, 2007 to file an

22  amended complaint. After filing with the Court a random request for judicial notice on

23  November 7, 2007, and settlement communications on November 21, 2007 suggesting that they

24

25  ---

26  [3]  Michael Petersen challenged the Court's transfer of the case to the Northern District and sought to have the case returned to the Fresno Division of the Eastern District, a venue in which none of the defendants reside. He also sought to disqualify Judge Illston and the entire Northern District bench, presumably because of the filing in C-05-01302 CRB in which all the judges in the District were named as defendants. (Plaintiffs' Motion to Change Venue and Disqualify, October 5, 2007)

27

28

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO. C07-02400

SF 294449v1

did not intend to prosecute this action as well,[4] plaintiffs did file an amended complaint. Without any basis, that amended complaint defiantly requests "reconsideration" of the Court's November 6, 2007 ruling that the District Defendants were entitled to file the motion for a more definite statement to begin with.  (Amended Complaint, pp. 1-2)  Amazingly, it also asks the Court to "[r]eopen case # C04-1059SI on behalf of Michael Jr. for disposition."  (*Id.*, p. 18)  (See, Plaintiffs' Request for Judicial Notice, November 21, 2007 letter, and Amended Complaint)

Although the amended complaint is still largely unintelligible, it appears that it continues to regurgitate claims that have already been dismissed, pleading alleged violations of law based on the same educational decisions that were previously at issue.  The amended complaint cites to at least six prior SEHO cases between the parties filed between 1999 and 2003. (Amended Complaint, at pp. 7-16)  Even a cursory glance at the complaint shows that it is subject to dismissal based on any number of grounds, including res judicata, collateral estoppel, failure to exhaust administrative remedies, failure to comply with the Government Claims Act, statute of limitations, immunity, and/or the failure to obtain legal representation to pursue the claims of the minor children.  It is thus utterly frivolous, like the three previous actions filed against the District.   (See the District Defendants' Amended Motion to Strike and/or Dismiss filed December 28, 2007).

Moreover, consistent with their pattern, in this action, the Petersens blame the judges and agencies who have previously ruled against them.  In C-02-887 SI, they sued several court officers involved with the alleged conspiracy to deprive Randi Petersen of her custody rights.  In C-05-01032, they sued the Contra Costa Superior Court, the Family Court Presiding Judge, the Family Court appointed attorney, Judge Illston, and the entire United States District Court, Northern District of California.  Here, they name the Special Education Hearing Office and Vincent Pastorino, one of its former hearing officers, and have threatened to bring in the

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

---

[4]   Indeed, Michael Petersen has made several recent requests to defendants' attorney to "put the case on hold" in a purported attempt to resolve this matter.  However, despite several requests, he has failed to make any proposal for how to resolve the case. (Levine Decl. at ¶ 2)

7

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO. C07-02400

SF 294449v1

1   District's attorneys as defendants.  There is no question that such conduct is vexatious and

2   subject to sanctions.

3   **II.**     **LEGAL ARGUMENT**

4          **A.**     **The Court Has the Inherent Authority to Prevent Abuse of the Judicial**

5                  **Process**

6          The All Writs Act, 28 U.S.C. section 1651(a), provides district courts with the inherent

7   power to enter appropriate sanctions, including pre-filing orders, against vexatious litigants.

8   *Weissman v. Quail Lodge Inc.*, 179 F.3d 1194, 1197 (9th Cir. 1999). While a court should enter a

9   pre-filing order constraining a litigant's future behavior cautiously, "[f]lagrant abuse of the

10  judicial process cannot be tolerated because it enables one person to preempt the use of judicial

11  time that properly could be used  to consider the meritorious claims of other litigants." *De Long*

12  *v. Hennessey,* 912 F.2d 1144, 1148 (9th Cir. 1990); *O'Laughlin v. Doe,* 920 F.2d 614, 618 (9th

13  Cir. 1990).

14                  **1.**     **Second Circuit Court of Appeals**

15         In deciding whether or not to restrict a litigant's access to the courts, the Second Circuit

16  has instructed district courts to look at five factors:

17         (1)     The litigant's history of litigation and in particular whether it
                   entailed vexatious,  harassing or duplicative lawsuits;
18

19         (2)     The litigant's motive in pursuing the litigation, e.g., does the
                   litigant have an objective good faith expectation of prevailing;
20

21         (3)     Whether the litigant is represented by counsel;

22         (4)     Whether the litigant has caused needless expense to other parties
                   or has posed an unnecessary burden on the courts and their personnel; and
23

24         (5)     Whether other sanctions would be adequate to protect the courts and
                   other parties.

25  *Safir v. United States Lines, Inc.* 792 F.2d 19 (2nd Cir. 1986).  The *Safir* court further noted that

26  "[u]ltimately, the question the court must answer is whether a litigant who has a history of

27  vexatious litigation is likely to continue to abuse the judicial process and harass other parties."

28

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

8

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO.
C07-02400

SF 294449v1

1    *Id.*, at 23.

2              ##### 2.     Ninth Circuit Court of Appeals

3         At least one district court in the Ninth Circuit has correctly observed that the *Safir*

4    factors "have never been adopted by the Ninth Circuit." *Doran v. Vicorp Rests., Inc.*, 407

5    F.Supp.2d 1115, 1117, fn.3 (C.D.Cal. 2005).  The Ninth Circuit in *De Long v. Hennessey*, 912

6    F.2d 1144, 1146 (9th Cir. 1990) outlined four requirements for district courts before entering

7    pre-filing orders:

8         1.     The litigant must be given notice and a chance to be heard
9                before the order is entered;

10        2.     The district court must compile "an adequate record for review;"

11        3.     The district court must make substantive findings about the frivolous or
12               harassing nature of the plaintiff's litigation;

13        4.     The vexatious litigant order "must be narrowly tailored to closely fit
                 the specific vice encountered."

14   *De Long*, at 1147-48.  However, as the Ninth Circuit noted in *Molski v. Evergreen Dynasty*

15   *Corp.*, 500 F.3d 1047 (9th Cir. 2007),

16

17           [t]he Second Circuit's standard is not irreconcilable with our
18           standard, but rather can be viewed as a tool for analyzing some of
             the factors we set forth in *De Long*, insofar as *Safir* and *De Long*
19           in substance cover much of the same ground .... We held in *De
             Long* that district courts considering imposing a pre-filing order
20           on a vexatious litigant should consider four factors.  The first two
             requirements, (1) notice and opportunity to be heard and (2) the
21           creation of an adequate record, are procedural considerations . . .
             The latter two factors, requiring (3) findings of frivolousness or
22           harassment and (4) that the order be narrowly tailored to prevent
             the litigant's abusive behavior, are substantive considerations –
23           that is, the factors help the district court define who is, in fact, a
             "vexatious litigant" and construct a remedy that will stop the
24           litigant's abusive behavior while not unduly infringing the
             litigant's right to access the courts.
25

26   *Id.*, at 1057, 1058.

27        The Ninth Circuit in *Molski* further held that the Second Circuit five factor standard

28                                              9

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

---

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO.
C07-02400

outlined in *Safir* "provides a helpful framework for applying the two substantive factors (factors three and four) of our own four-factor standard." *Id.*, at 1058, *citing Molski v. Rapazzini Winery,* 400 F.Supp.2d 1208, at 1210 (N.D. Cal. 2005) ("The *Safir* test['s] examination of history of litigation, motive, and needless burden [is] useful in determining whether the current filings are frivolous and the question of whether other sanctions are adequate [is] similar to the Ninth Circuit's requirement that any pre-filing order may be narrowly tailored").

**B.    The Frivolous and Harassing Nature of the Petersens' Conduct**

Plaintiffs here easily meet all five of the *Safir* criteria for vexatious litigants and therefore also meet the *De Long* and *Molski* substantive requirement that the litigant have engaged in frivolous or harassing conduct.

**1.    Vexatious and Duplicative *Pro Per* Litigation**

First, as set forth above, plaintiffs have filed four lawsuits in five years naming the District and various District-affiliated individuals. All of these suits were prosecuted *in pro per*. All of them were based on the results of other administrative, state, or federal proceedings and all named court or administrative officials as defendants. All four suits arise from or are related to Mikey and/or Ryan's educational evaluations, program, placement or related services, and allege discrimination and retaliation against the children and their parents. In fact, the current case, which raises claims from 1999 to 2003, brings the educational disputes raised in the prior proceedings within its scope. Yet, none of the cases were supported by sufficient facts or law to result in favorable rulings. In each instance, plaintiffs' claims were deficient, meritless, and resulted in dismissal for either failure to state a claim or for lack of prosecution.

Despite these rulings, the subsequent suits repeated some of the exact same contentions that have previously been dismissed with prejudice. For example, in both the 2002 and 2004 cases, the Petersens had claims dismissed for failure to exhaust administrative remedies under the IDEA, for failure to bring claims within the statute of limitations period, and because their claims were barred under the Eleventh Amendment and qualified immunity. The 2002 claims

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

10

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO. C07-02400

1  of the children were dismissed for lack of standing.  The 2004 state law claims were dismissed

2  for failure to comply with the Government Claims Act requirements.  Most or all of these same

3  defects exist in the 2007 filing as well.   This is the very definition of a frivolous filing.

4       More fundamentally, in each of their actions, the complaints are a composite of vague,

5  conclusory and meritless allegations, filled with unintelligible stream-of-consciousness

6  ramblings that completely fail to articulate any viable claim.  In two of the actions, the Court has

7  granted motions for a more definite statement.  For example, in plaintiffs' November 28, 2007

8  "More Definite Statement," First Claim for Relief, plaintiffs allege "violations of MDUSD

9  federal consent decree contract" (Case No. C98-00951) against Browne and Ferro and the

10 District as follows:

> [W]hereas Defendants MDUSD, Brown & Ferro have engaged in,
> violated and blocked plaintiff's rights pursuant to the decree and
> Title II of the ADA .... and 28 C.F.R. Part 35, subpart A, 35.101,
> et se[g], subpart B, (35.130(a)(b)(1)(v), 35.130(b)(3)(i)(ii)(iii),
> Cal. Const. ART.1 Sec. 7(a) by denying plaintiffs' access to
> programs and services and rights including protections afforded in
> due process hearings by having previous personal knowledge of
> plaintiff's disability, thereby discriminating on the basis of
> disability and falsifying facts during hearing and purposely
> blocking access for plaintiffs to receive due process of law by
> intentionally engaging in voiding issues to be presented at due
> process.

(Amended Complaint, First Claim for Relief, p. 17, ll. 10-15)  Plaintiff further cites

> [E]ducation Code Sec. 33113, 3114 and 33117, title 42 U.S.C. and
> section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 795
> (Sec. 504), 34 CFR Part 104, et seq., (104.4(a)(b)(1) contractual),
> in having signed for and received under contract, federal financial
> assistance to be involved in non discrimination as public entity,
> defendants having discriminated against plaintiffs on the basis of
> students disability by having prior knowledge of the severity of
> plaintiff's disabilities and misrepresenting to plaintiffs their duties
> and performance of procedural safeguards they were required to
> abide by, thereby failing to act lawfully by using manifestations of
> the disability against plaintiff in the form of assault and battery
> suspensions effectively discriminating against plaintiff on the
> basis of plaintiff's disabilities by having prior knowledge of their
> responsibilities to plaintiffs and failing to act to protect plaintiffs.

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

11

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO.
C07-02400

SF 294449v1

1    (Amended Complaint, First Claim for Relief, p. 17, ll.18-24)   This is nothing more than a run-

2    on sentence that fails to explain how the authorities cited relate to the tangle of claims alleged.

3    The Petersens' briefs are equally incomprehensible, and set forth text book digests of law with

4    little or no discussion of the authorities cited or how they relate to their claims.

5            The Petersens also burden the parties and the Court with random and improper filings,

6    apropos of nothing, diverting their attention from other matters and driving up the costs of

7    litigation. (*See, e.g.,* Plaintiffs' November 7, 2007 Request for Judicial Notice, not filed in

8    connection with any motion, which attaches 14 documents whose relevance to the case at hand

9    is not only questionable, but totally indeterminable).   These types of filings are patently

10   frivolous. *See, e.g., Urban v. United Nations,* 768 F.2d 1497, 1499 (D.C. Cir. 1985) (finding

11   frivolous a series of appeals that "each share common attributes: irrationality, incoherence and a

12   complete lack of any substantive allegations over which this court might maintain jurisdiction").

13           The fact that these actions were all filed or prosecuted without representation also

14   weighs in favor of imposing a pre-filing order.   Because "[t]he unrepresented litigant is not

15   subject to the same ethical rules and sanctions as his attorney counterpart," he is more likely to

16   file frivolous claims.   Accordingly, "the power to declare him vexatious becomes an important

17   tool for the courts to manage their dockets and prevent frivolous claims." *Doran, supra,* at

18   1118 (noting that California has recognized the distinction between attorneys and *pro se*

19   litigants and has opted to limit its vexatious litigant statute to unrepresented parties).

20           **2.        Burden to the Parties, the Court and Its Staff**

21           Plaintiffs' pursuit of these cases has obviously imposed a financial burden on the

22   District.   The District has been forced to expend $241,425 in fees and costs from 2002 through

23   November 2007 in defense of plaintiffs' duplicative lawsuits, none of which have ever gone to

24   trial on the merits.   (Levine Decl., ¶ 2)

25           Plaintiffs' litigation tactics have also imposed needless burden and expense upon the

26   parties, the Court and its staff.   A prime example of this is found in Michael Petersen's May 14,

27   2007 letter to the Court and to Congressman George Miller, Chief District Judge Vaughn R.

28

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

12

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO.
C07-02400

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1   Walker, the Chief District Judge of the District Court, Eastern Division, and the United States

2   Department of Justice explaining how his rights were allegedly violated by numerous court

3   employees when he attempted to have a summons issued in the Northern District of California

4   after he first erroneously had one issued to him in the Eastern District of California. By his own

5   admission, he spent hours of the staff's time and involved multiple court employees in this

6   issue. (May 17, 2007 letter filed on May 18, 2007)

7   Another example is the Petersens' overt attempt at forum and judge shopping. *See*,

8   *Hernandez v. City of El Monte*, 138 F.3d 393, 400 (9th Cir. 1998) ("Judge-shopping clearly

9   constitutes 'conduct which abuses the judicial process.' The district court's inherent power to

10  impose dismissal or other appropriate sanctions therefore must include the authority to dismiss a

11  case for judge-shopping"). In the instant case, plaintiffs initially erroneously filed their suit in

12  the Eastern District of California, Fresno Division, on April 27, 2007. On May 3, 2007, that

13  court *sua sponte* transferred the case to the Northern District of California pursuant to 28 U.S.C.

14  section 1406(a). Thereafter, plaintiffs filed a motion seeking 1) to transfer venue back to the

15  Eastern District Court, Fresno Division; 2) to establish the prejudice and bias of all the Northern

16  District judges; and 3) to have Judge Illston recuse herself. The Petersens have a long history

17  of authoring numerous letters to defendants' attorneys and to the District, threatening to file

18  lawsuits in the Eastern and Central District because they have not been successful in the

19  Northern District. A true and correct copy of those letters, together with a copy of plaintiffs'

20  Ninth Circuit docketing sheet evidencing their intention to re-file their litigation in both the

21  Central and Eastern District Courts, are attached as exhibits to the Declaration of Amy R.

22  Levine and the District's Request for Judicial Notice, filed concurrently herewith.

23  Other examples of the burden plaintiffs have imposed on the parties and the Court

24  abound. In the current case, plaintiffs did not serve their lawsuit on the District Defendants for

25  four months after it was filed. By the time it was served, the timelines had run for filing a case

26  management conference ("CMC") statement. Plaintiffs however failed to serve notice of the

27  CMC conference and associated deadlines with the complaint as required by Local Rule 4-2.

28

13

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO.
C07-02400

1     This resulted in the defendants having to scramble to obtain documents from the Court's file

2     about the case, including documents not available electronically.   It also resulted in the

3     defendants' attorney having to show up at the CMC in person, even though Mr. Petersen himself

4     failed to attend.  (Levine Decl., 3)  His failure to attend caused the Court to issue an order to

5     show cause.  (See, docket entry No. 9 on September 10, 2007 - Order to Show Cause)

6          After the Court set a new deadline for filing CMC statements, Mr. Petersen sent a letter

7     to defense counsel requesting to meet and confer about the statement, but provided no phone

8     number, fax number, or email address at which he could be reached.   After the District

9     Defendants' attorney sent him a draft joint CMC statement for his review and input, he failed to

10    respond, and instead filed his own "Joint Case Management Statement" stating defendants'

11    statement was "unilateral and plaintiff did not sign defendants C.M.[S]." (Levine Decl., 4)

12         These actions clearly abuse the judicial process. Case law supports the proposition that a

13    district court has the inherent power to impose sanctions for such abuse.  In *Oliva v. Sullivan*,

14    958 F.2d 272 (9th Cir. 1992), the court held that "[d]istrict courts have the inherent power to

15    control their dockets and may impose sanctions, including dismissal, in the exercise of that

16    discretion."   *Id.*, at 273 (reviewing the district court's *sua sponte* dismissal for lack of

17    prosecution).   The Supreme Court has also stated that a "primary aspect" of every federal

18    court's inherent power is "the ability to fashion an appropriate sanction for conduct which

19    abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

20         Entry of a vexatious litigant pre-filing order is clearly an appropriate sanction, and

21    would serve the purpose of curtailing future abuse of the judicial process on the part of the

22    Petersens.   It would also reduce the risk of further prejudice to defendants, who are public

23    entities and officers, thereby preserving the public fisc.

24              **3.     Litigant's Motive**

25         Finally, it is apparent that the plaintiffs could not possibly objectively and in good faith

26    expect to prevail in this action.  Thus, their only possible motive must be to harass defendants.

27    After examining the plaintiffs' collection of lawsuits, it is clear that they continue to raise

28

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

14

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO.
C07-02400

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1   similar if not identical legal and factual theories.  Although litigiousness alone is insufficient to

2   justify a restriction on filing activities, it is an important factor indicative of intent to harass.  *De*

3   *Long,* at 1147 (stating that to issue a pre-filing order, "[a]t least the record needs to show, in

4   some manner, that the litigant's activities were numerous or abusive"); *Weissman,* at 1197

5   (courts have inherent power to enter pre-filing orders against vexatious litigants with abusive

6   and lengthy histories of litigation).  Here, the Petersens' filings are plainly numerous, and all

7   similarly pled, in a pattern that will continue *ad infinitum* unless the Court takes action to

8   prevent such further filings.

9        The Petersens are plainly unable to accept defeat when it stares them in the face, as

10  evidenced by their filing second and third amended complaints *after* judgment has been entered,

11  their repeated prosecution of the judges and court officials who have issued rulings against

12  them, and their requests for "reconsideration" of failed arguments and to "reopen" previously

13  dismissed cases.  It is well established that it is not just the initiation of a frivolous lawsuit that

14  justifies sanctions, it is also the continued pursuit of such a suit after it has clearly become

15  groundless.  *See, e.g., Christian v. Garment Co. v. EEOC,* 434 U.S. 412, 422 (1978).

16       What is particularly astounding is that, although all of the lawsuits allege that the District

17  is liable for educationally harming the minor plaintiffs and must be stopped, the truth is that

18  neither Mikey nor Ryan has been enrolled in the District since the fall of 2003. (Browne Decl.,

19  p. 2, ¶¶ 3, 4).  Thus, the District cannot do anything for the children, and the only possible

20  motive the parents could have for continuing to pursue moribund claims is to harass the District.

21  This is further evidenced by the fact that, at least as to Mikey, the parties have already settled *all*

22  educational claims through August 30, 2003 – i.e., the entire time period at issue in this lawsuit.

23  (December 20, 2004 Order, at pp. 3-4)

24       The fact that plaintiffs have filed actions and then failed to prosecute them also shows

25  their bad faith.  It appears that they know their claims lack merit, but instead of not filing them,

26  or voluntarily dismissing them, they force the defendants to respond, only to then let their

27  claims languish.  After the District Defendants have now spent $34,263+ to date on this action,

28

15

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO.
C07-02400

SF 294449v1

1    plaintiffs, confronted with the task of having to draft an amended complaint that could state a

2    cause of action, filed "settlement" communications with the Court which indicate plaintiffs are

3    likely again to fail to prosecute their claims. (*See, e.g.*, letter from Michael Petersen dated

4    November 20, 2007, filed on November 21, 2007, proposing that the instant action be taken "off

5    calendar and/or extend the filing date ordered on 11/06/07 for plaintiff's more definite

6    statement;" and plaintiff's "Request for Settlement Conference and Protective/Stop Order," filed

7    December 5, 2007)

8         On November 12 and November 20, 2007, Michael Petersen wrote to defendants'

9    attorneys stating his intention to drop his claims if the parties would settle, yet did not set forth

10   any definitive terms of settlement. He requested that the parties discuss reducing his children's

11   "human dependacy (sic), increasing their self reliance and to expand their productive

12   capabilities." He thereafter made numerous phone calls to the District's counsel, purportedly to

13   resolve the litigation or put it on hold. (Levine Decl., Ex. E, F)    However, despite several

14   requests, he never explained what type of settlement terms he proposed, or how the District

15   could do anything for his children, given that they had not resided within the District for over

16   four years.    (Levine Decl., 2)  These most recent communications are further evidence of

17   plaintiffs' continued vexatious litigant posture.  They are in fact not offers of settlement at all,

18   but obvious tactics to delay prosecution or coerce a settlement out of defendants.[5]

19        Further calling into question their motivation, the Petersen plaintiffs have often used

20   threatening tactics.  On February 5, 2005, subsequent to this Court's judgment of dismissal of

21   plaintiffs' amended complaint without leave to amend (Case No. C-04-01059 SI), Randi

22   Petersen wrote to the District, District administrators and Governing Board members,

23   threatening the District, its administrators and its attorneys.  She alleged in this letter that

---

[5] As in the three prior lawsuits, the Petersen plaintiffs sue, hope to obtain some kind of cash settlement, and absent that, move on to the next suit. Plaintiff's Amended Complaint, entitled the "Response to Order of 11/6/07 Requiring More Definite Statement," seeks "punitive, compensatory, general damages and lost wages." (Amended Complaint, First Claim for Relief, p. 17, ll. 16-17, 24-25; p. 18, ll. 4-5, 27-28; p. 19, ll. 6-7, 11-12, 18-19; Second Claim for Relief, p. 20, ll. 6-7, 15-16, 23; p. 21, ll. 5-6; 11-12; Third Claim for Relief, p. 20, ll. 26-27; p. 22, ll. 3-4; 9, 16, 21, 25; p. 23, ll. 2-3, 6-7, 17-19)

16

MILLER BROWN & DANNIS ·
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

SF 294449v1

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

because the District had authorized its attorneys to file a motion to dismiss, it had evidenced retaliatory discrimination against the Petersens.  Randi Petersen then threatened to add the attorneys as party defendants in the case unless the attorneys "notify both the U.S. District Court, Central District of California, and the Ninth Circuit Court of Appeals that they withdraw their defenses."  The letter specifically states, ". . . the only means available to me . . . is to threat (sic) a lawsuit against District Administrators, whom risk their personal finances, if they choose not to stop the harassment." A true and correct copy of Randi Petersen's February 5, 2007 letter to the District is attached as Exhibit A to the Declaration of Amy R. Levine, filed concurrently herewith.

Randi Petersen continued her threats in a letter dated February 7, 2005 to attorney Peter Sturges of Miller Brown & Dannis, the District's counsel of record.  In that letter, Ms. Petersen again threatened, "[I]f you and your clients do not tell the truth regarding these issues and the undue damage caused by your and their deceit, I will be adding your law firm to the case I am filing this week." (February 7, 2005 letter from Randi Petersen to Peter Sturges, p. 2, Ex. B to Declaration of Amy R. Levine.)  Michael Petersen has stated in this litigation that he intends to join the District's attorneys as defendants in this action.  (Plaintiffs' Joint Case Management Conference Statement, at p. 2) (stating "[i]t is anticipated that Elizabeth Estes E.S.Q. and the law firm of Miller, Brown & Dannis … will be added as defendants and have yet to be served").  His "Request for Settlement Conference and Protective/Stop Order mysteriously states that he has "documented reason to believe he is a target of State and/or Federal professionals …."

In sum, in the Ninth Circuit, a party must only show that his opponent's claims are *either* frivolous *or* harassing.  *See, De Long, supra,* at 1148 (noting that an alternative to the finding of frivolousness is the finding that plaintiff's claims show a pattern of harassment); *Molski v. Mandarin Touch Restaurant,* 347 F.Supp.2d 860, 865 (C.D. Cal. 2004) ("'For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable

17

1    claim will not bar the assessment of [sanctions]'"). However, plaintiffs' conduct clearly meets

2    both requirements.   Given plaintiffs' considerable history of making meritless claims and

3    engaging in frivolous and harassing tactics, it is incumbent on this Court to enter a pre-filing

4    order requiring the Court to assess whether any proposed future filings by the Petersens are

5    made in an objectively reasonable and good faith belief in the merits, and are not simply

6    continued attempts to harass defendants and extort settlement on claims already dismissed.

7            C.      **The Petersens' Numerous Frivolous and Harassing Tactics Justify a Pre-**

8                    **Filing Order**

9            As stated above, the Petersens litigation history demonstrates an abuse of the judicial

10   process.   Their four frivolous lawsuits all contain patently absurd or irrelevant allegations,

11   unsupported by any reasonable basis in law or in fact.  Further, the Petersens continue to waste

12   judicial resources by repeatedly filing unmeritorious complaints which state no cognizable legal

13   theory or claim for which relief could be granted, or abandoning any that survive initial review

14   by either failing to timely amend and/or prosecute.   The Court can no longer infer that the

15   Petersens merely lack the legal sophistication to discern frivolous suits from meritorious ones.

16   In all four lawsuits, the Petersens have been given adequate opportunity to amend and

17   prosecute, but have consistently failed to do so.   Moreover, their lack of success in prior

18   lawsuits has not deterred them from filing more.   The Petersens' history of duplicative and

19   abandoned litigation suggests that they either do not know they have wasted the District and the

20   Court's time or do not care, and they should not be allowed to abuse the judicial system and

21   waste public resources any longer.

22           An order merely dismissing this lawsuit will not remedy the repeated harm that has been

23   imposed on the District since 2002. The District Court has the inherent power to levy sanctions

24   in response to abusive litigation practices, including a monetary award and/or dismissal of the

25   litigation. *Molski v. Mandarin Touch Restaurant, supra* at 863, citing *Roadway Express, Inc. v.*

26   *Piper,* 447 U.S. 752, 765-766 (1980); *Chambers, supra,* at 45-46. Although monetary sanctions

27   are appropriate here, an order awarding monetary sanctions alone will not suffice, since it will

28

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

18

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO.
C07-02400

SF 294449v1

1    likely force the defendants to incur additional costs in attempting to collect any amounts

2    awarded, and depending on plaintiffs' resources, they may never be successful. Likewise, while

3    a dismissal is also appropriate, it will not prevent future harassment of the District. Thus, a pre-

4    filing order is the most narrowly tailored remedy this Court can order. The proposed order

5    submitted herewith is narrowly aimed at addressing the specific problems endemic in the

6    Petersens' previous filings. *See, e.g., De Long*, at 1148 (citing cases where pre-filing orders

7    were adopted to prevent the filing of actions that are the same or similar to those previously

8    litigated). Since the minor children are not enrolled in the District, and have not been so

9    enrolled since the fall of 2003 (Browne Decl., p. 2, ¶¶ 3, 4), they are unlikely to have any non-

10   frivolous claims against the District and will not be prejudiced by such an order.

## IV.    CONCLUSION

12       Based on the foregoing, and upon consideration of the entire record, the Court can only

13   conclude that Petersens' lawsuits have time and time again been without reasonable basis in fact

14   and/or law, have shown a pattern of delay in prosecuting cases, and have needlessly imposed

15   costs and burdens upon defendants and the Court. The multiplicity of the Petersens' fatally

16   flawed filings continue to be a burden on both the Court and defendants and to impede the

17   proper administration of justice. Ample cause exists to impose pre-filing conditions on the

18   Petersens, as no less restrictive alternative will adequately deter them from filing more of the

19   same type of cases and protect the District. This Court must make substantive findings as to the

20   frivolous or harassing nature of these litigants' actions, and provide the District, the District

21   Defendants, and this Court with security against the costs of continued vexatious litigation by

22   entering an appropriate pre-filing order enjoining the Petersens from filing actions or

23   proceedings in any federal forum against the Mount Diablo Unified School District, its officers,

24   directors, employees, agents, or attorneys on the same, similar, or related claims without leave

25   of court.

26

27

28

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

DISTRICT DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER DECLARING VEXATIOUS LITIGANTS, IMPOSING PREFILING CONDITIONS; CASE NO. C07-02400.

SF 294449v1

1  DATED: January 28, 2008                    MILLER BROWN & DANNIS

2

3

4                                            By: _Amy R. Levine_
                                             AMY R. LEVINE
5                                            Attorneys for Defendants
                                             MOUNT DIABLO UNIFIED SCHOOL
6                                            DISTRICT, MILDRED BROWNE, and KEN
                                             FERRO
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

20

SF 294449v1