1  AMY R. LEVINE, State Bar No. 160743
   alevine@mbdlaw.com
2  ELIZABETH A. ESTES, State Bar No. 173680
   eestes@mbdlaw.com
3  DAMARA MOORE, State Bar No. 215678
   dmoore@mbdlaw.com
4  MILLER BROWN & DANNIS
5  71 Stevenson Street, 19th Floor
   San Francisco, CA 94105
6  Telephone: (415) 543-4111
7  Facsimile: (415) 543-4384

8  Attorneys for Defendant
   MOUNT DIABLO UNIFIED SCHOOL DISTRICT

9              UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

11

12
   RYAN PETERSEN,                    CASE NO.  C07-02400 SI
13
           Plaintiff,                DEFENDANT DISTRICT'S MEMORANDUM
14                                   OF POINTS & AUTHORITIES IN SUPPORT
                                     OF ITS MOTION FOR JUDGMENT ON THE
15      v.                           PLEADINGS, OR, IN THE ALTERNATIVE
                                     FOR SUMMARY JUDGMENT
16  MOUNT DIABLO UNIFIED SCHOOL
   DISTRICT,
17                                   Date:        August 1, 2008
           Defendant.               Time:        9:00 a.m.
18                                   Courtroom: 10, 19th Floor
                                     Judge:       Hon. Susan Illston
19
20                                   Trial Date:  None

21

22

23

24

25

26

27

28

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

DEFENDANT'S MEMO OF POINTS & AUTHORITIES IN SUPPORT OF ITS MTN FOR JUDGMENT ON
THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

SF 317769v1

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................. 1

II.    STATEMENT OF UNDISPUTED FACTS ................................ 3

III.   THIS LAWSUIT IS BARRED BY THE SETTLEMENT AGREEMENT ...................... 9

    A.    The Plain Meaning of he Contract Precludes Plaintiff's Claims ........................ 11

    B.    The Agreement Should be Enforced as Written ................................. 12

IV.    PLAINTIFF NEVER EXHAUSTED HIS ADMINISTRATIVE OR JUDICIAL REMEDIES AND HIS CLAIMS ARE NOW BARRED ............................. 13

    A.    Plaintiff's Claims Are Time Barred .......................................... 13

    B.    Plaintiff's Claims Are Barred By Issue and Claim Preclusion ..................... 14

        1.    Collateral Estoppel Precludes the Relitigation of Issues Already Litigated at OAH ..................................... 15

        2.    Res Judicata Bars All Education Related Claims That Were Raised or Could Have Been Raised at OAH ...................... 16

V.     THIS COURT HAS NO JURISDICTION OVER PLAINTIFF'S BREACH OF CONTRACT CLAIMS ................................................. 17

VI.    THE DISTRICT NEVER BREACHED THE SETTLEMENT AGREEMENT ............. 22

    A.    The May 19, 2005 Request ................................................. 22

    B.    The September 6, 2005 Meeting ............................................ 23

VII.   CONCLUSION .................................................................. 24

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1

TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Belanger v. Madera Unif. Sch. Dist.,*

5

963 F.2d 248 (9th Cir. 1992).........................................................................18

6

*Bowman v. District of Columbia,*

7

46 IDELR 97, 106 LRP 46234 (D.D.C. 2006).........................................19

8

*Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.,*

9

971 F.2d 272 (9th Cir. 1992).........................................................................11

*Burbank Studios v. Workers' Comp. Appeals Bd.,*

10

134 Cal.App.3d 929 (1982)...........................................................................11

11

*Collegian v. State Comp. Ins. Fund,*

12

81 Cal.App.4th 429 (2000)............................................................................11

13

*Cypress-Fairbanks Ind. Sch. Dist. v. Michael F.,*

14

118 F.3d 245 (5th Cir. 1997).........................................................................21

15

*Fowler v. Unified Sch. Dist. No. 259,*

16

128 F.3d 1431 (10th Cir. 1997).....................................................................21

17

*Hoeft v. Tucson Unified School Dist.,*

18

967 F.2d 1298 (9th Cir. 1992).................................................................2, 13

19

*Hughes Aircraft Co. v. U.S. ex rel. Schumer,*

20

520 U.S. 939 (1997).................................................................................20, 22

21

*Johnson v. City of Loma Linda,*

22

24 Cal.4th 61 (2002)......................................................................................16

23

*K.R. v. Anderson Comm. Sch. Corp.,*

125 F.3d 1017 (7th Cir. 1997).......................................................................21

24

*Kaiser Aluminum & Chemical Corp. v. Bonjornon,*

25

494 U.S. 827 (1990) ......................................................................................20

26

*Kokkonen v. Guardian Life Ins. Co. of America,*

27

511 U.S. 375 (1994) ......................................................................................18

28

*Landgraf v. USI Film Products,*

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

ii

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

511 U.S. 244 (1994) ...................................................................................20

*M.J. v. Clovis Unif. Sch. Dist.,*
   47 IDELR 253, 107 LRP 22070 (E.D. Cal. 2007) ...................................19

*Mattson v. City of Costa Mesa,*
   106 Cal.App.3d 441 (1980)......................................................................17

*Miller v. County of Santa Cruz,*
   39 F.3d 1030 (9th Cir. 1994)...............................................................15, 17

*N.R. v. San Ramon Valley Unif. Sch. Dist.,*
   Northern District of California, Case No. C 05-00441 SI ...................21

*National Auto. & Casualty Ins. Co. v. Underwood,*
   9 Cal.App.4th 31 (1992)..........................................................................11

*Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang,*
   376 F.3d 831 (9th Cir. 2004)...................................................................18

*People v. Sims,*
   32 Cal.3d 468 (1982)...............................................................................16

*Robb v. Bethel School Dist. #403,*
   308 F.3d 1047 (9th Cir. 2002)...............................................................2, 13

*Shaw v. Regents of Univ. of Calif.,*
   58 Cal.App.4th 44 (1997)........................................................................12

*Skelly Oil Co. v. Phillips Petroleum Co.,*
   39 U.S. 667 (1950) ..................................................................................18

*Slater v. Blackwood,*
   15 Cal.3d 791 (1975)...............................................................................17

*Stock West, Inc. v. Confederated Tribes of the Colville Reservation,*
   873 F.2d 1221 (9th Cir. 1989).................................................................18

*Traverse Bay Area Int. Sch. Dist. v. Michigan Dept. of Educ.,*
   48 IDELR 123, 107 LRP 42893 (W.D. Mich. 2007).............................19

*Tucker v. Calloway Co. Bd. Of Educ.,*
   136 F.3d 495 (6th Cir. 1998)...................................................................21

*University of Tennessee v. Elliott,*

iii

478 U.S. 788 (1986) ................................................................................15

*Welles v. Turner Entertainment Co.,*
  503 F.3d 728 (9th Cir. 2007) ...........................................................11

*Will v. Michigan Dept. of State Police,*
  491 U.S. 58 (1989) .........................................................................18

*Winet v. Price,*
  4 Cal.App.4th 1159 (1992)..........................................................11, 12

**Statutes**

20 U.S.C. section 1415 ...........................................................2, 13, 14, 18

Civil Code section 1636 ..........................................................................11

Civil Code section 1638 ..........................................................................11

Education Code section 37200 ..................................................................11

Education Code section 48220 ....................................................................6

Education Code section 48222 ....................................................................6

Education Code section 56500.2 ................................................................14

Education Code section 56505 ..................................................................14

Education Code section 56506 ....................................................................2

**Rules**

Federal Rule of Evidence  803...................................................................22

**Regulations**

34 C.F.R. section 300.132............................................................................6

34 C.F.R. section 300.137............................................................................6

34 C.F.R. section 300.138............................................................................6

34 C.F.R. section 300.140............................................................................6

34 C.F.R. section 300.151..........................................................................14

34 C.F.R. section 300.153..........................................................................14

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

iv

1

5, Cal. Code of Regs. section 4650.........................................................................14

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

SF 317769v1

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

## I.    **INTRODUCTION**

Plaintiffs Michael Petersen, Michael Petersen Jr., and Ryan Petersen filed this action on April 27, 2007 against the Mount Diablo Unified School District and a number of other defendants. Because the complaint was essentially unintelligible, the District filed a motion for a more definite statement, which the Court granted on November 6, 2007. Docket (Doc.) No. 40. Plaintiffs then filed a First Amended Complaint on November 28, 2007, and the District defendants again moved for a more definite statement or to dismiss. Doc. Nos. 43 and 47. By Order dated February 11, 2008, the Court agreed that the First Amended Complaint (FAC) failed to cure the deficiencies in the original complaint, and dismissed plaintiff's First Amended Complaint. Doc. 81, at 5:4-18.[1] However, the Court granted Ryan Petersen limited leave to amend to allege a claim under the Individuals with Disabilities Education Act, 20 U.S.C. sections 1400, et seq. (IDEA) regarding the matters described in paragraphs 36-38 of the First Amended Complaint. Id., at 5:21-6:2. The Court stated that:

> Based upon the pleadings before the Court, the Court cannot determine whether plaintiffs can allege a claim under IDEA related to Ryan's 2005-2006 IEP; to pursue such a claim, plaintiffs must show that they have exhausted administrative remedies and that such a claim is timely. **If plaintiffs wish to allege such a claim, they may file an amended complaint, solely alleging an IDEA claim on Ryan's behalf against the Mount Diablo School District only, no later than February 22, 2008.**

Id., at 6:2-7 (emphasis in original).

Plaintiff's Seconded Amended Complaint (SAC), filed on February 22, 2008, is as unintelligible as his previous filings. Nonetheless, the District has construed it as attempting to re-plead the allegations of paragraphs 36-38 of the First Amended Complaint. Pursuant to the Court's February 11, 2008 Order, the District also construes it as being filed solely by Ryan Petersen, solely against the Mount Diablo Unified School District and solely under the IDEA.

In paragraph 36 of the FAC, plaintiff Ryan Petersen contends that the District violated

---

[1]  This complaint purported to allege claims for discrimination, conspiracy, breach of contract, retaliation, and a number of other theories under a number of statutes and regulations. Pursuant to the February 11, 2008 Order, all such claims have been dismissed.

1

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1   the IDEA by failing to convene an individualized education plan (IEP) meeting for him on or

2   before May 30, 2005 pursuant to a settlement agreement between the parties and his May 19,

3   2005 request.   He complains in paragraph 37 of the FAC that the District finally held a

4   "belated" IEP meeting on September 6, 2005 "in violation of his contract terms and after the

5   entire school year (including extended school year) had ended."   In paragraph 37 he also

6   contends that the District violated the IDEA by inviting the principal from his private school to

7   attend the September 6, 2005 meeting.   These claims lack merit and must be dismissed for a

8   number of reasons.

9       First, as stated above, plaintiff was only given leave to plead a cause of action under the

10  IDEA; all other causes of action, including plaintiff's various claims for breach of contract,

11  were dismissed.   Thus, plaintiff is apparently alleging that the breach of contract of the

12  settlement agreement is a violation of the IDEA.   However, the settlement agreement itself

13  precludes all such claims arising during the 2004-2005 school year and extended school year

14  (ESY).   Therefore, plaintiff's claim that the District violated his IDEA rights by failing to

15  convene an IEP meeting pursuant to a May 19, 2005 request or failed to take any other action in

16  the 2004-2005 school year and ESY, are barred by the very terms of the agreement itself.   To

17  the extent plaintiff seeks to enforce the contract for the 2004-2005 school year or any other

18  period of time under some other theory, the federal court would lack jurisdiction, and, in any

19  case, such claims have already been dismissed.

20      Second, to the extent plaintiff contends that the violation of the settlement agreement

21  constitutes a violation of the IDEA, he must comply with all IDEA prerequisites for filing suit.

22  In order to bring a claim under the IDEA, a plaintiff must first exhaust his administrative

23  remedies by raising that claim with the appropriate administrative agency.   20 U.S.C. § 1415(l);

24  *Robb v. Bethel School Dist. #403*, 308 F.3d 1047, 1050 (9th Cir. 2002); *Hoeft v. Tucson Unified*

25  *School Dist.*, 967 F.2d 1298 (9th Cir. 1992).   If he loses at the administrative level, he must then

26  exhaust his judicial remedies by filing a timely appeal.   20 U.S.C. § 1415(i)(2)(B); Educ. Code §

27  56506(k).

28      Here, plaintiff filed a request for due process with the then defunct Special Education

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

2

DEFENDANT'S MEMO OF POINTS & AUTHORITIES IN SUPPORT OF ITS MTN FOR JUDGMENT ON
THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

SF 317769v1

1    Hearing Office (SEHO) on August 31, 2005. As of July 1, 2005, all of SEHO's duties had been

2    transferred to the Office of Administrative Hearings (OAH), and a case was eventually opened

3    at OAH. Declaration of Ken Ferro, ¶ 11; Declaration of Amy R. Levine, ¶ 3. In documents

4    filed with OAH, plaintiff did allude to the District's alleged breaches of contract. However,

5    plaintiff never pleaded a sufficient complaint for due process in either forum, his due process

6    request was dismissed, and he failed to file any appeal of the dismissal. The upshot of this is that

7    to the extent the allegations in paragraphs 36-38 of the FAC were not presented in these filings,

8    plaintiff's administrative remedies have not been exhausted. To the extent they were presented

9    but dismissed, plaintiff's opportunity to file a federal appeal on those issues has long since

10   elapsed. Either way, his claims are now barred.

11        Third, even if plaintiff could establish that he has timely complied with all prerequisites

12   for filing suit under the IDEA and his claims are not barred by the settlement, his case must still

13   be dismissed since he cannot establish a breach of contract. By the plain terms of the

14   agreement, the District was only required to convene an IEP meeting for plaintiff on or before

15   May 30, 2005 if 1) such a meeting was requested by his parent, 2) plaintiff resided in the

16   District, and 3) his parents were actually seeking educational services from the District for him.

17   Agreement, 2.H. These conditions were not fulfilled and therefore there was no breach of the

18   agreement. As to inviting the principal to the September 6, 2005 meeting, there is nothing in

19   the agreement or in the IDEA that precludes this, and thus, it is simply not actionable.

20   **II.    STATEMENT OF UNDISPUTED FACTS**

21        The District enrollment records indicate that Ryan Petersen last attended school in the

22   District on October 10, 2003. Declaration of Mildred Browne, ¶ 3, Ex. A; Levine Decl., Ex. J.

23   In 2003, his parents filed a due process proceeding against the District, SEHO Case No. 03-

24   01885, which was resolved by a settlement agreement on March 31, 2004. Ferro Decl. ¶ 4 Ex. 1.

25        As contemplated by the settlement, during the 2004-2005 school year Ryan was

26   privately placed by his father, Michael Petersen at the New Vistas Christian School and received

27   related services through providers his parent selected. Ferro Decl. ¶¶ 4-7, 27, Ex. 1. Indeed,

28

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

DEFENDANT'S MEMO OF POINTS & AUTHORITIES IN SUPPORT OF ITS MTN FOR JUDGMENT ON
THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

1    plaintiff admits in his Second Amended Complaint that "Ryan has not been formally re enrolled

2    into the MDUSD since his private school placement at New Vista's Learning disabled school

3    ...." Doc. 74, at 3:3-5.

4         On or about July 11, 2005, Randi Petersen, plaintiff's mother, faxed the District's ADR

5    Coordinator Ken Ferro a letter stating that "because I live over 200 miles away, I will be

6    attending all IEP meetings via telephone unless it is scheduled on a date that I am already

7    driving to the Bay Area." Ferro Decl., ¶ 10, Ex. 2.  The letter listed Randi Petersen's address as

8    29702 Road 162, Visalia, California.  Id.  She wrote another letter the next day stating that "I

9    object to Ryan going to school at Mt. Diablo unless Mt. Diablo can protect Ryan from loud

10   noises and head trauma, to insure he will not permanently lose his hearing and go deaf while at

11   school." Ferro Decl., ¶ 10, Ex. 3.[2]

12        On August 31, 2005, Michael Petersen sent a letter to SEHO, with a copy to Ken Ferro,

13   requesting a due process hearing, in which he indicates only that Ryan is a special education

14   student residing within the boundaries of the District.  Ferro Decl., ¶ 11, Ex. 4.  It included no

15   other detail about how, when or why he was contending the District had violated the IDEA. Id.;

16   Levine Decl., ¶ 4, Ex. A.

17        On August 31, 2005, in response to the due process filing, Ken Ferro sent Mr. Petersen a

18   notice of IEP meeting setting a meeting for September 6, 2005, along with a letter indicating

19   that he had tried to reach Mr. Petersen several times by phone to schedule an IEP meeting

20   without success. Ferro Decl., ¶ 12, Ex. 5.  The letter and the notice were mailed to Mr. Petersen,

21   as his fax number was not working.  Id.  Ferro also left Mr. Petersen a voice mail message that

22   day as well.  Id.  A copy of the notice was faxed to Randi Petersen on September 1. Ferro Decl.,

23   ¶ 12.

24        On September 1, 2005, Mr. Ferro sent Mr. Petersen a letter asking him to sign a release

25   of information to obtain current information about Ryan's disability in order to serve him.  Ferro

26   Decl., ¶ 13, Ex. 6.  That same day, Randi Petersen faxed Mr. Ferro a letter in response to his IEP

27

28   _____

[2] As of June 16, 2005, Mr. Petersen had been granted sole legal and physical custody of the children. Ferro Decl., ¶ 22, Ex. 13.

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

4

DEFENDANT'S MEMO OF POINTS & AUTHORITIES IN SUPPORT OF ITS MTN FOR JUDGMENT ON
THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

SF 317769v1

1    notice stating that she was unable to attend Ryan's IEP meeting and that "[d]ue to work, its

2    likely I will be unable to attend future IEP meetings …." Ferro Decl., ¶ 14, Ex. 7.  Mr. Ferro

3    subsequently sent additional proposed releases to Ryan's parents seeking information from other

4    service providers and to his last known school of attendance, New Vistas, regarding Ryan's

5    educational program.  Ferro Decl., ¶¶ 13, 15, 18, 19, 20, 23, 24, Ex. 9, 10, 11, 14, 15.

6         On September 2, 2005, Mr. Petersen sent Mr. Ferro a letter demanding that the District

7    convene an "immediate resolution session" pursuant to the due process procedures of the IDEA

8    and indicating that he had filed a due process hearing request on August 31, 2005.  Levine

9    Decl., ¶ 4, Ex. A.  The letter indicated that Mr. Petersen "will not accept your proposed IEP date

10   of 9/6/05."  The letter was copied to OAH and to SEHO.  Id.  Neither OAH nor SEHO has any

11   record of a request for due process being made by plaintiff on or about August 31, 2005.  Levine

12   Decl., Ex. B.

13        Petersen's September 2, 2005 letter also stated that he had requested an IEP meeting for

14   Ryan on May 19, 2005. Levine Decl., Ex. A.  The District had completed a search for Mr.

15   Petersen's alleged May 19, 2005 request for an IEP meeting and had no record of it.  Ferro

16   Decl., ¶ 9.

17        On September 6, 2005, the District convened an IEP meeting as scheduled.  Ferro Decl.,

18   ¶ 15.    Neither of Ryan's parents attended in person or by telephone.  Id.  Mr. Ferro

19   (administrator), Marianne Bardsley (general education teacher), and Barbara Scott (special

20   education teacher) attended for the District. The principal of New Vistas provided information

21   to the IEP team by phone.  Id.  She reported that the school would not accept Ryan back for

22   2005-2006.  Id.  The team made an interim program and placement offer as best it could, but

23   determined that it needed to conduct assessments to determine Ryan's present levels, and

24   releases to receive information from Ryan's doctors and educational providers.  Id.  The District

25   enclosed a copy of the IEP document, the assessment plan, and releases in a letter to Michael

26   Petersen (with a copy to Randi) dated September 9, 2005, and asked that the information be

27   returned to the District by September 16, 2005.  Ferro Decl., ¶ 18, Ex 9.  The District also

28   indicated that a follow up IEP meeting would be scheduled.  Id.

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

5

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1    On September 7, 2005, Mr. Petersen faxed the District a letter informing it that "I am

2    temporally (sic) exercising my rights to home school Michael and Ryan." Ferro Decl., ¶ 17, Ex.

3    8. Mr. Petersen submitted a private school affidavit to the California Department of Education

4    (CDE) confirming this arrangement on October 14, 2005. *See* Educ. Code §§ 48220, 48222

5    (authorizing the operation of a private school upon submission of an affidavit to CDE); Levine

6    Decl. ¶ 9, Ex. J.

7    On September 9, 2005, Michael Petersen purported to file with SEHO a "Motion to:

8    Receive IDEA Hearing Date, Order MDUSD Comply with Resolution Session, Dismiss

9    MDUSD 9/7/05 Notice of Objection." Levine Decl., ¶ 4, Ex. A. This "Motion" attaches as an

10   exhibit a letter which says, in full, "Pursuant to the terms of Ryan's contract #SN03-01885, I am

11   exercising his rights under Said contract utilizing all protections afforded him including but not

12   limited to placement and services." The Motion does not otherwise reference the contract. The

13   September 9, 2005 filing also references the September 6th IEP meeting. It states that "after

14   receiving petitioner's request for a due process hearing on [August 31, 2005], MDUSD sent

15   notice of their unilateral IEP date to circumvent the SEHO process of Ryan Petersen and the

16   meeting was held on 9/6/05 without petitioner." Id.

17   On September 12, 2005, OAH dismissed plaintiff's due process complaint with leave to

18   amend for being insufficiently plead. Levine Decl., ¶ 5, Ex. B.

19   On September 14, 2005, Mr. Ferro sent Mr. Petersen a letter regarding the fact that he

20   had not yet re-enrolled his children in the District. The letter stated:

21          If you do wish to seek services for Ryan and Michael from the
            District, you must complete the process of enrolling them in the
22          District and I request you do so immediately. If, in the alternative,
            you are privately placing Ryan and Michael and not seeking
23          public school services from the District, they are not entitled to a
            free appropriate public education and an IEP, but to individual
24          services plans [ISP].[3] Please inform me by the close of this week,
25

---

[3] Students who are enrolled by their parents in private schools, including religious schools, are entitled to an
26   individual services plan (ISP) from the school district where the school is located, but not to an IEP. 34 C.F.R. §
     300.132(b). Such privately placed students have no individual right to special education and related services, but
27   may qualify for a proportionate share of specific services provided to disabled private school students generally. 34
     C.F.R. §§ 300.137(a), 300.138(a)(2), (b). See also, Ferro Decl., ¶ 21. Privately placed students are also not entitled
28   to avail themselves of the due process procedures available to publicly enrolled students. 34 C.F.R. § 300.140(a).

6

Friday, September 16, 2005 whether you are seeking public school services from the District for Ryan and Mikey. If so, please also enroll them in the District by Friday.

Levine Decl., Ex. K.

On or around September 16, 2005, Mr. Ferro again requested a release for records related to Ryan's educational program, since Ryan had been out of the District's programs for over a year. Ferro Decl., ¶¶ 15, 19, Ex. 10.

On or around September 21, 2005, Mr. Ferro sent yet another letter to Mr. Petersen indicating that he had not yet enrolled his children, or returned the assessment plan or releases, and that "[a]s such, it is unclear that you are seeking services for your children from the District at this time." Ferro Decl., ¶ 20, Ex.11. He requested that Mr. Petersen put in writing by September 23, 2005 whether or not he was seeking services from the District or whether he intended to privately place his child. Id.

On September 23, 2005, Mr. Petersen filed an amended due process complaint. Levine Decl., ¶ 5, Ex. C. In that complaint he disputed the District's contention that Ryan was not enrolled in the District. He stated that Ryan was "deemed enrolled" in a public school, but he nonetheless requested "continued unilateral private school placement" as a remedy. In his complaint, he also raised issues regarding the failure to hold an IEP meeting by May 30, 2005 and the allegedly improper procedures relating to the September 6, 2005 IEP. Generally, he states: "A description of the nature of petitioner's amended complaint notice and amended request for due process hearing includes but is not limited to the denial or provision of a FAPE and relates to procedural and contractual violations committed by the MDUSD." Levine Decl., Ex. C.

By October 5, 2005, Mr. Petersen had still not enrolled either of his children in a District school. Mr. Ferro sent Mr. Petersen a letter by both fax and mail which reiterated that Ryan had not yet been enrolled. Ferro Decl., ¶¶ 21, 27, Ex. 12. He noted that "while the filing of a due process complaint indicates you are seeking services from the District, you refer to Ryan as a unilaterally placed private school student entitled to an ISP, thus the District is unclear as to

7

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

SF 317769v1

1    your intent." Id.

2    On or about October 7, 2005, Mr. Petersen submitted to OAH/SEHO a "Request for

3    Judicial Notice of SEHO Mediation Contract SN 03-01885 and Petitioner's 10/6/05 Letter to

4    MDUSD", but did not indicate why these documents were relevant to the OAH proceeding. By

5    Order dated October 12, 2005, OAH denied the request for judicial notice. Levine Decl., ¶ 5,

6    Ex. E, F.

7    On October 7, 2005, Mr. Ferro wrote to Mr. Petersen and again stated: "To date, you

8    have not enrolled Ryan in the District, have not returned executed releases, and you have not

9    returned a signed assessment plan." Ferro Decl., ¶ 23, Ex. 14. He again asked for clarification

10   as to Mr. Petersen's intent with respect to Ryan. Id.

11   On October 7, 2005, the District objected to the sufficiency of the amended due process

12   complaint. Levine Decl., ¶ 5, Ex. G. On October 12, 2005, OAH determined that the complaint

13   was insufficient under the IDEA because it failed to state what school Ryan was currently

14   attending, and only indicated the private school that he attended in the 2004-2005 school year.

15   Levine Decl., ¶ 5, Ex. F. In addition, the complaint failed to adequately explain how the District

16   had violated any of Ryan's rights, breached the settlement, or denied him a free appropriate

17   public education. Id. at p. 3.

18   OAH dismissed the complaint, and provided Mr. Petersen 14 days to amend. OAH ruled

19   that "[i]f Petitioner fails to file a timely Second Amended Complaint, the Complaint shall be

20   dismissed and the case will be closed." Id., at p. 4. Mr. Petersen failed to file a second

21   amended complaint and the case was formally dismissed by an Order of Dismissal dated April

22   4, 2006. Levine Decl., ¶ 6, Ex. G.

23   On December 2, and December 14, 2005, Mr. Petersen wrote to Melody Royal, Parent

24   Liaison, regarding services for Ryan and Michael Jr. Mr. Ferro responded on December 14,

25   2005 and stated that neither boy was enrolled in the District and that he still had not received the

26   information requested on September 9, 2005 for Ryan. Ferro Decl., ¶ 24, Ex. 15. He stated that

27   "the District requires correspondence from you by Friday, January 6, 2006, indicating that you

28   are seeking services from the District for Ryan and Michael or that you are not seeking services

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

8

DEFENDANT'S MEMO OF POINTS & AUTHORITIES IN SUPPORT OF ITS MTN FOR JUDGMENT ON
THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

SF 317769v1

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1    from the District.  If we do not hear from you by Friday, January 6, 2006, we will assume you

2    do not intend to enroll your children in the District and are not seeking services from the

3    District." Id.

4          On December 22, 2005, Mr. Petersen again wrote to Melody Royal.  Again, Mr. Ferro

5    responded and sought clarification and cooperation from Mr. Petersen.  He stated that "[i]f we

6    do not hear from you by Friday, January 13, 2006, we will assume you do not intend to enroll

7    your children in the District and are not seeking services from the District."  Ferro Decl., ¶ 25,

8    Ex. 16.  Finally, on January 17, 2006, Mr. Petersen wrote to Mr. Ferro and stated: "Please note

9    my new address in Visalia Ca.  I am relocating my residence and will not be enrolling my

10   children in your school district."  Ferro Decl., ¶¶ 26, 27, Ex. 17 (emphasis in original); Levine

11   Decl., Ex. H, I.

**III.    THIS LAWSUIT IS BARRED BY THE SETTLEMENT AGREEMENT**

13         On March 31, 2004, the parties entered into a final and binding settlement agreement

14   resulting in a dismissal of a then pending SEHO case by Ryan against the District, Case Number

15   SN03-0885.  The agreement resolved all disputes and potential disputes between them relating

16   to Ryan's education through the 2004-2005 school year including the "extended school year"

17   following the 2004-2005 school year.  Agreement, ¶¶ 1C, 2 (Ferro Decl., Ex. 1).  The

18   Agreement's purpose was clear.  It provided, in relevant part:

19              1.C.  The purpose of this Agreement is to resolve any and all
               disputes under the IDEA, causes of action, and claims, known and
20              unknown, which may exist concerning Ryan's educational
               program, placement, related services, assessments, compensatory
21              education, reimbursement for the past, present and future, known
               and unknown, up to and including the 2004-2005 school year
22              (including all extended school years (ESY).)

23              2. Each party, in consideration of the promises and concessions
24              made by the other, hereby compromises and settles any and all
               demands, obligations, or causes of action under the Individuals
25              with Disabilities Education Act which that party has regarding
               Ryan's educational program, placement, related services,
26              reimbursement, compensatory education and FAPE for the 2000-
               01, 2001-02, 2003-04 and 2004-05 school year (including all
27              extended school years).

28

9

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1    The settlement contained a general release, a release of unknown claims, and a waiver of

2    California Civil Code section 1542.  The release included the provision that each party

> compromises and settles any and all past, present and future
> claims, demands, obligations, or causes of action, ... regarding the
> provision of an education, including all rights and responsibilities
> under the Individuals with Disabilities Education Act and the
> present dispute, Ryan Petersen v. Mt. Diablo Unified School
> District, SN 03-01885 through the 2004-2005 school year
> (including ESY 2005).[4]

Agreement, ¶ 3.

The waiver of unknown claims was also unambiguous and stated, in part, that the

parents and Ryan agreed as follows:

> (1)    they may have additional claims and attorneys' fees or costs
> concerning Ryan's education arising or occurring through the
> 2004-05 school year (including ESY 2005), of which they are
> not now aware;

> (2)    they may not make a further demand for any such claims,
> fees, or costs upon the District ...; and

> (3)    they extend this waiver to include now unknown or later
> discovered claims, fees, or costs, arising prior to the end of
> the 2004-05 school year (including ESY 2005).

Agreement, ¶ 4C(1)-(3).

The fact that the parties intended the agreement to fully resolve all claims and potential

claims regarding the 2004-2005 school year and 2005 ESY time periods is further evidenced by

the agreement's inclusion of various terms for Ryan's education for that period of time.  See,

e.g. Agreement, ¶¶ 2.B, 2.C, 2.D, 2.E, 2.F, 2.J.  Paragraph 2.L of the agreement stated:

> 2.L    Parents on behalf of themselves and Ryan agree the
> educational program and services outlined in this Agreement
> constitute FAPE for Ryan through the 2004-05 school year
> (including ESY 2005) and agree not to file any causes of action
> under the IDEA challenging FAPE.

Despite this clear language, in the present action Ryan claims that the District violated

---

[4]  In March 2004, the parties signed an Addendum to the Compromise and Release Agreement which modified section 3 of the agreement in ways not relevant here. Ferro Decl., ¶ 4, Ex. 1.

10

SF 317769v1

1  his rights under the IDEA by denying him a free appropriate public education (FAPE).

2  Specifically, he contends the IDEA was violated by the District's failing to convene an IEP

3  meeting on or before May 30, 2005 pursuant to a May 19, 2005 request for such a meeting and

4  by convening a September 6, 2005 IEP meeting to which Ryan's former private school principal

5  was invited.

6       At least with respect to the contention that the District failed to act properly in response

7  to the May 19, 2005 request for a meeting by May 30th, this claim is barred.  May 19 and May

8  30, 2005 were both during the 2004-2005 school year, which ended on June 30th.  Educ. Code §

9  37200.  The ESY in 2005 ended on July 30, 2005.  Ferro Decl., ¶ 16.  Therefore, these claims

10 arose during the 2004-2005 school year and/or during the 2005 ESY, time periods which have

11 been released, and may not be pursued here.

12       **A.    The Plain Meaning of he Contract Precludes Plaintiff's Claims**

13      The interpretation of contract language is a question of law for the Court, appropriately

14 resolved on summary judgment.  *National Auto. & Casualty Ins. Co. v. Underwood* (1992) 9

15 Cal.App.4th 31, 36-37; *Collegian v. State Comp. Ins. Fund* (2000) 81 Cal.App.4th 429, 434;

16 *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 277-78 (9th Cir.

17 1992). [5]

18      And, the legal principles governing compromise and release agreements are the same as

19 those governing other contracts.  *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165; *Burbank*

20 *Studios v. Workers' Comp. Appeals Bd.* (1982) 134 Cal.App.3d 929, 935.  In interpreting a

21 contract, the Court's overriding goal is to give effect to the parties' mutual intent as of the time

22 of contracting.  "Although the intent of the parties determines the meaning of the contract (Civ.

23 Code, §§ 1636, 1638), the relevant intent is 'objective' - that is, the objective intent as

24 evidenced by the words of the instrument, not a party's subjective intent."  *Shaw v. Regents of*

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

---

26 [5] "Absent an express choice of applicable law by the parties, [a] contract is to be interpreted according to the law
and usage of the place where it is to be performed, or, if it does not indicate a place of performance according to the
27 law and usage of the place where it is made."  *Welles v. Turner Entertainment Co.*, 503 F.3d 728, 738 (9th Cir.
2007).  Here, paragraph 12 of the agreement provides that California and United States law governs, but the
28 contract was both made and to be performed in California.  Thus, it appears that California law applies.

11

DEFENDANT'S MEMO OF POINTS & AUTHORITIES IN SUPPORT OF ITS MTN FOR JUDGMENT ON
THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

1    *Univ. of Calif.*, 58 Cal.App.4th 44, 54-55 (1997). Indeed, "the undisclosed subjective intent of

2    the parties is irrelevant to determining the meaning of contractual language," and a party who

3    signs the agreement is estopped from saying its provisions are contrary to his wishes. Thus,

4    "'[w]here contract language is clear and explicit and does not lead to absurd results, we

5    ascertain intent from the written terms and go no further.'" *Shaw*, at 53; *Winet*, at 1167 (parol

6    evidence inadmissible "to prove that a release of unknown or unsuspected claims was *not*

7    intended to include unknown and unsuspected claims") (emphasis in original).

8         Here, the agreement quite clearly expresses the parties' intent to resolve all claims and

9    potential claims between them relating to Ryan's education that arose prior to the end of the

10    2005-2005 school year and ESY, and particularly any such claims under the IDEA. This

11    language is repeated several places in the agreement. The District's purported failure to

12    convene an IEP meeting by May 30, 2005 is such a claim. The Court should give force to the

13    plain meaning of the contract and preclude this claim.

14         **B.     The Agreement Should be Enforced as Written**

15         Furthermore, there are no reasons why the agreement should not be enforced against

16    plaintiff as written. Plaintiff alleges in his complaint that the agreement was negotiated over a

17    lengthy period of time, and the terms of the agreement make obvious that it was the product of

18    negotiation. It contains terms unique to Ryan's situation, and provides him with quite a bit of

19    compensation in exchange for the releases provided. Moreover, the agreement recites that the

20    parents, on behalf of themselves and Ryan "acknowledge their understanding of the provisions

21    of Section 1542" and "understand and acknowledge the significance and consequence of this

22    waiver." Agreement, ¶¶ 4B, 4C. In a paragraph labeled "Conditions of Execution," the

23    agreement states that: "Each party acknowledges and warrants that the party's execution of this

24    Agreement is free and voluntary." Agreement, ¶ 5.

25         Thus, plaintiff has compromised and released all claims he had or could have had under

26    the IDEA arising in the 2004-2005 school year through the summer of 2005. He therefore has

27    no right to bring his claims under the IDEA. His only potential claim is for breach of settlement

28    agreement, a claim which has already been dismissed and over which this Court has no

12

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

SF 317769v1

1    jurisdiction.

2    **IV.    PLAINTIFF NEVER EXHAUSTED HIS ADMINISTRATIVE OR JUDICIAL**
3         **REMEDIES AND HIS CLAIMS ARE NOW BARRED**

4         In order to bring a claim in federal court under the IDEA, a plaintiff must first exhaust

5    his administrative remedies. 20 U.S.C. § 1415(l); *Robb v. Bethel School Dist. #403*, 308 F.3d

6    1047, 1050 (9th Cir. 2002); *Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298 (9th Cir.

7    1992). Here, plaintiff filed a request for due process, but failed to ever plead a sufficient

8    complaint. In response to plaintiff's filings, the District filed two "Notices of Insufficiency"

9    asking that plaintiff's allegations be clarified. Both requests were granted. In its October 12,

10   2005 order, OAH ruled that plaintiff's due process filing was insufficient to state a claim, and

11   gave plaintiff 14 days to file an amended complaint which cured the deficiencies. Plaintiff

12   failed to amend within that period of time and on October 26, 2005, his due process complaint

13   was dismissed.

14        **A.    Plaintiff's Claims Are Time Barred**

15        In that proceeding, plaintiff raised all the claims he seeks to assert here regarding the

16   failure to convene an IEP meeting by May 30th pursuant to the settlement and the improper

17   convening of the September 6th IEP meeting. He also there raised the allegation that he was

18   properly enrolled in the District and entitled to services under the IDEA. However, because he

19   failed to file an appeal on those claims, they are now waived. 20 U.S.C. section 1415(i)(2)(B)

20   and Education Code section 56506(k) provide that an appeal of a due process decision must be

21   made within 90 days of the hearing decision. It is well more than 90 days from October 12,

22   2005 when OAH issued its final decision dismissing plaintiff's action. The Court noted in its

23   February 11, 2008 Order dismissing the First Amended Complaint that plaintiff's claims based

24   on these prior administrative rulings would be subject to the 90 day statute of limitations. It

25   noted that "to the extent that this case is "based on IDEA" and seeks to challenge the SEHO

26   rulings, those claims would appear to be time-barred. ... To the extent that plaintiffs challenge

27   the SEHO rulings, ... the 90 day statute of limitations would apply." Doc. 81, at 5:10-18. Thus,

28   his claims are now barred.

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

13

DEFENDANT'S MEMO OF POINTS & AUTHORITIES IN SUPPORT OF ITS MTN FOR JUDGMENT ON
THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

SF 317769v1

1    Furthermore, it is too late for plaintiff to now exhaust his remedies as to the events of

2    May through September 2005. A parent who disagrees with his child's educational program or

3    contends that a school district has denied the child a FAPE may file either a request for due

4    process with a State administrative agency, like OAH, or a compliance complaint with a State

5    educational agency, like CDE. 20 U.S.C. § 1415(b)(6); 34 C.F.R. § 300.151; Educ. Code §

6    56505; 5, Cal. Code of Regs. § 4650(a)(7). A due process request must be filed within two

7    years from the date the claim accrued. 20 U.S.C. § 1415(b)(6)(B); Educ. Code § 56505(l). A

8    compliance complaint must be filed within one year from when the claim arose. Educ. Code §

9    56500.2(b); 34 C.F.R. § 300.153(c). Here, the alleged IDEA violation occurred in May 2005

10   and September 2005. Since any administrative filings on these issues are now time barred,

11   plaintiff cannot possibly state a valid claim on those grounds. Accordingly, his complaint

12   should be dismissed with prejudice.

13   **B.    Plaintiff's Claims Are Barred By Issue and Claim Preclusion**

14   Moreover, even if plaintiff could argue around the exhaustion and statute of limitations

15   problems, all of the claims that were raised or that could have been raised in the prior OAH

16   proceedings, including the claim that the settlement agreement was somehow breached and that

17   the September 6, 2005 meeting was improper, and the claim that plaintiff was ever enrolled in

18   the District, would be barred by the principles of res judicata and collateral estoppel. The

19   October 12, 2005 OAH Determination and Order dismissing plaintiff's case stated:

20       Petitioner's Amended Complaint does not meet the requirements
21       of Section 1415(b)(7)(A)(ii)(I) as Petitioner fails to state what
         school the Student is currently attending. While Petitioner
22       mentions in the Amended Complaint … that the Student attended
         New Vista Christian School in the 2004/2005 school year, the
23       Petitioner fails to state whether the Student is currently attending
         this same school. Thus, the Amended Complaint fails to meet the
24       requirements of the IDEA ….

25       In the Amended Complaint, the Petitioner gives a long narrative
26       of alleged violations of the IDEA by MDUSD that caused the
         denial of a Free Appropriate Public Education (FAPE) for the
27       Student. Petitioner's narrative argues that MDUSD failed to
         provide the Petitioner with various notices required under the
28       IDEA and attacks the motive of the MDUSD. The Petitioner also

14

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

pleads specific issues in which MDUSD is alleged to have violated various provisions of the IDEA, Code of Federal Regulations and Civil Rights statutes.

As to violations of the IDEA and federal regulations ..., Petitioner's Amended Complaint is not sufficient since the Petitioner states as a matter of fact that MDUSD violated the cited law without an explanation as to how MDUSD violated the law. While the narrative contains alleged violations of the IDEA and federal regulations, the narrative is so confusing it does not allow the opposing party to know which facts are legal violations. The Petitioner is advised to allege simply facts that would show that MDUSD did not provide the Student with a FAPE.

Levine Decl., Ex. F, p. 2-3. It further stated that:

As to MDUSH not complying with terms of the Settlement Agreement in SEHO Case No. SN03-[]0885, the Petitioner has failed to adequately allege how MDUSD is violating the settlement agreement.

Id., at 3.

As a result of his failure to appeal this Order, plaintiff is bound by its findings. In *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), the Supreme Court held that "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' ... federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *Id.*, at 799. The Ninth Circuit has held that both legal and factual findings are given preclusive effect so long as these criterion are met. *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032-33 (9th Cir. 1994). The "threshold inquiry" is whether the state administrative proceeding is entitled to preclusive effect by the state courts. *Id.*, at 1033.

### 1. Collateral Estoppel Precludes the Relitigation of Issues Already Litigated at OAH

It is clear that OAH's unappealed decision in this matter is entitled to preclusive effect in state court. First, Education Code section 56505(h) provides that the OAH determination is final and binding on the parties to a due process case. Second, the California Supreme Court has held that unless a party to a quasi-judicial proceeding challenges the agency's adverse

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1    findings through a direct appeal, those findings are binding in later civil actions. *Johnson v.*

2    *City of Loma Linda* (2000) 24 Cal.4th 61, 69-70. In *Johnson*, the California Supreme Court

3    distinguished exhaustion of administrative remedies from exhaustion of judicial remedies, and

4    stated that the latter "is necessary to avoid giving binding 'effect to the administrative agency's

5    decision, because that decision has achieved finality due to the aggrieved party's failure to

6    pursue the exclusive judicial remedy for reviewing administrative actions.'" *Id.*, at 70.

7    Accordingly, it held that the plaintiff could not bring a cause of action for discrimination against

8    his employer under the Fair Employment and Housing Act when he failed to file an action to

9    overturn a city council decision determining that the cause of his termination was not

10   discrimination. *Id.*, at 71.

11        Similarly, in *People v. Sims* (1982) 32 Cal.3d 468, the California Supreme Court held

12   that the People could not challenge in a criminal action the unappealed finding rendered in an

13   administrative welfare appeal that a welfare recipient had not violated any welfare rules in

14   receiving payment. *Id.*, at 482. This was true even though the County failed to put on any

15   evidence or otherwise participate in the administrative proceeding. The Court stated:

16       The failure of a litigant to introduce relevant available evidence
         on an issue does not necessarily defeat a plea of collateral
17       estoppel. ... Even a judgment of default in a civil proceeding is
         'res judicata as to all issues aptly pleaded in the complaint and
18       defendant is estopped from denying in a subsequent action any
         allegations contained in the former complaint.'
19

20   *Id.*, at 481. The Court further stated:

21       It is implicit in this ... test that only issues actually litigated in the
         initial action may be precluded from the second proceeding under
22       the collateral estoppel doctrine. ... An issue is actually litigated
         '[w]hen [it] is *properly raised*, by the pleadings or otherwise, and
23       is submitted for determination, and is *determined* .... A
         determination may be based on a *failure of ... proof* ....'
24

25   *Id.*, at 484 (emphasis in original).

26       **2.    Res Judicata Bars All Education Related Claims That Were Raised
               or Could Have Been Raised at OAH**

27

28       When the doctrine of res judicata or claim preclusion applies, as it does here because the

16

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1  prior litigation involved the same parties, the losing party is barred from litigating not just issues

2  previously raised, but also issues that could have been raised in the earlier actions. *Mattson v.*

3  *City of Costa Mesa* (1980) 106 Cal.App.3d 441, 446. Under res judicata, the court examines

4  whether the same primary right was at stake, not whether the precise factual or legal theory or

5  requested relief had previously been raised. And "[even] where there are multiple legal theories

6  upon which recovery might be predicated, one injury gives rise to only one claim for relief."

7  *Slater v. Blackwood* (1975) 15 Cal.3d 791, 795. The California Supreme Court has stated:

> A valid final judgment on the merits in favor of a defendant serves
> as a complete bar on further litigation on the same cause of action.
> ... California has consistently applied the 'primary rights' theory
> under which the invasion of one primary right gives rise to a
> single causes of action. ... The 'primary right' alleged to have
> been violated in the instant case is plaintiff's right to be free from
> injury to her person. ... It is clearly established that '... there is
> but one cause of action for one['s] personal injury (which is
> incurred) by reason of one wrongful act.'

*Slater*, at 795.

Thus, for example, in *Miller*, the primary right that had previously been litigated in an

administrative forum (the civil service commission) was the right to continued employment; this

was the same right sought to be litigated in the subsequent cause of action for discrimination

under 42 U.S.C. section 1983. *Id.*, at 1032, 1034. Here, plaintiff seeks to relitigate the issue of

Ryan's education, and particularly whether his educational interests were harmed by a breach of

the settlement agreement. Because plaintiff has failed to properly appeal the findings against

him that he had no claim under the IDEA for breach of contract or otherwise, he is precluded

from here claiming that he has any such cause of action.

## V.  THIS COURT HAS NO JURISDICTION OVER PLAINTIFF'S BREACH OF CONTRACT CLAIMS

Plaintiff claims that Ryan's settlement agreement is enforceable in federal court and that

subject matter jurisdiction exists under the IDEA. SAC, at 1:27-28, 2:24-26. In fact no such

jurisdiction exists. Accordingly, to the extent plaintiff is asserting that his sole cause of action is

not under the IDEA but is instead a breach of contract claim, no federal court jurisdiction exists.

17

DEFENDANT'S MEMO OF POINTS & AUTHORITIES IN SUPPORT OF ITS MTN FOR JUDGMENT ON
THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

SF 317769v1

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1    "In considering jurisdictional questions, it should be remembered that '[i]t is a

2    fundamental principal that federal courts are courts of limited jurisdiction.'" *Stock West, Inc. v.*

3    *Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). "It is to

4    be presumed that a cause lies outside this limited jurisdiction ... and the burden of establishing

5    the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of*

6    *America*, 511 U.S. 375, 377 (1994).

7    It is well established that a cause of action for breach of a settlement agreement is a state

8    law cause of action.  The states enforce and interpret settlement agreements regardless of

9    whether the settled dispute arises from federal law.  *Kokkonen*, at 382.  As the Ninth Circuit

10   held in *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 840 (9th

11   Cir. 2004), a breach of contract claim "is clearly a creature of state law." *See also, Skelly Oil*

12   *Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950) (suit for damages or specific

13   performance under a contract would arise under state law).  Thus, to the extent plaintiff is

14   attempting to pursue a claim for breach of the settlement, this Court lacks jurisdiction.

15   Furthermore, because this action is against a school district, Eleventh Amendment immunity

16   also applies. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989); *Belanger v. Madera*

17   *Unif. Sch. Dist.*, 963 F.2d 248 (9th Cir. 1992).

18   Some district courts have carved out a limited exception to this rule for special education

19   settlements that were reached in a due process mediation or a resolution session after the 2005

20   IDEA amendments went into effect on July 1, 2005.  On December 4, 2004, the IDEA

21   Improvement Act of 2004 was enacted as Pub.L. 108-446.  The Act reauthorized and made

22   substantial changes to the former IDEA.  The effective date for changes was July 1, 2005, as set

23   forth at Pub.L. 108-446, Title III, § 302(a)(b), December 3, 2004, 118 Stat. 2803.  Among the

24   many changes to the law, these amendments created a "resolution session" process which had

25   not previously been part of the law, and modified the IDEA's language regarding mediations.

26   The language relating to both resolution sessions and mediations directs the parties to a

27   settlement reached in those forums to include specific language about enforcement of the

28   agreement in a district court of the United States.    20 U.S.C. §§ 1415(e)(2)(F),

18

1  1415(f)(1)(B)(iii).

2      This language is notably absent from the settlement reached here, as the settlement was

3  not reached in either a mediation or a resolution session and was reached before these IDEA

4  amendments went into effect. *See, M.J. v. Clovis Unif. Sch. Dist.*, 47 IDELR 253, 107 LRP

5  22070 (E.D. Cal. 2007). In fact, plaintiff alleges that "the <u>MDUSD requested</u> to stop the

6  hearing and go into settlement talks. During the next 4 months of private <u>non mediated</u>

7  settlement talks, … the parties finally reached settlement with the MDUSD demanding parent

8  dismiss hearing #SN03-01885 in liu (sic) of said contract effectively substituting students rights

9  afforded him under the IDEA." SAC, at 2:15-18 (Emphasis in original).

10      In *Bowman v. District of Columbia*, 46 IDELR 97, 106 LRP 46234 (D.D.C. 2006), the

11  plaintiffs had entered into settlement agreements with the district during the course of their due

12  process hearings. After dismissing their cases, the district refused to comply with the

13  agreements and the plaintiffs therefore sought to enforce those obligations in federal court.

14  However, the court held that their breach of contract claims were not properly brought in federal

15  court as they were state court claims. It found that the agreements at issue were not reached

16  either through mediation or a resolution session, and, even if the IDEA amendments did confer

17  jurisdiction to enforce agreements reached through those processes, they did not create

18  jurisdiction over settlements reached in other ways. The court found the IDEA's language was

19  not ambiguous, and there was "no reason to go beyond the application of the law as written."

20  Accordingly, it "decline[d] to confer jurisdiction on itself where Congress has not done so."

21  Other district courts judges have since followed suit. *See, M.J. v. Clovis Unified School

22  District, supra* ("It is not reasonable to assume that Congress intended to confer jurisdiction

23  retroactively upon the federal courts for settlement agreements made prior to the 2005

24  amendments simply because the agreements were concluded prior to the due process hearing");

25  *Traverse Bay Area Int. Sch. Dist. v. Michigan Dept. of Educ.*, 48 IDELR 123, 107 LRP 42893

26  (W.D. Mich. 2007) ("Had Congress intended that all settlement agreements reached during the

27  course of the administrative process be enforceable in federal court, it could have easily adopted

28  a provision to that effect").

19

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

DEFENDANT'S MEMO OF POINTS & AUTHORITIES IN SUPPORT OF ITS MTN FOR JUDGMENT ON
THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

SF 317769v1

1    Here, there is no dispute that the agreement at issue was not reached in either a

2    mediation or in a statutory resolution session. Ferro Decl., ¶ 4. In fact, at the time this

3    settlement was reached, the IDEA did not even contain a resolution session process. It is also

4    undisputed that the agreement does not contain the language specified in section 1415(e)(2)(F)

5    or 1415(f)(1)(B)(iii) explicitly stating that the agreement "is enforceable in any State court of

6    competent jurisdiction or in a district court of the United States." Therefore, the IDEA

7    amendments by their own terms do not apply to this settlement.

8    Moreover, even if the Court finds that the IDEA amendments do create federal court

9    jurisdiction generally, there is no rationale for applying those amendments here, where the

10   agreement was reached before those amendments went into effect. The settlement agreement

11   here was created in March 2004. The IDEA amendments went into effect on July 1, 2005.

12   Thus, the amendments do not apply to this particular settlement which was negotiated under a

13   prior version of the IDEA which did not address how or where IDEA settlements could be

14   enforced.

15   In determining which version of the IDEA applies to this dispute, the Court is not to look

16   at the date this action was filed, but at the date the events that form the basis for the suit

17   occurred. *Kaiser Aluminum & Chemical Corp. v. Bonjornon*, 494 U.S. 827, 855 (1990).

18   Obviously, parties cannot be expected to conform their conduct to laws which do not yet exist or

19   which are not yet in effect. *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994). For that

20   reason, there is a strong presumption against retroactive legislation. In considering the question

21   of retroactivity, the "Court applies the time-honored presumption against retroactive legislation

22   unless the Congress has clearly manifested its intent to the contrary." *Hughes Aircraft Co. v.*

23   *U.S. ex rel. Schumer*, 520 U.S. 939, 946 (1997). Nowhere does the IDEA state or suggest that

24   the amendments to section 1415 have retroactive effect.

25   Further, the subsections at issue were miniscule parts of sweeping legislation that

26   reformed many substantive provisions of the IDEA. Subdivisions (e) and (f) of section 1415 are

27   only two components of a host of changes to section 1415, subdivisions (a) through (o),

28   governing the procedural safeguards under the IDEA. Even subdivision (e) itself greatly

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

20

DEFENDANT'S MEMO OF POINTS & AUTHORITIES IN SUPPORT OF ITS MTN FOR JUDGMENT ON
THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

SF 317769v1

1    expanded the provisions governing mediations and how they are to be conducted and, as

2    previously stated, subdivision (f)'s provisions regarding resolution sessions are brand new.

3        To apply the amendments retroactively would not simply provide the federal court with

4    jurisdiction over this dispute, it would retroactively apply all the amendments under section

5    1415, and would impose requirements upon settlement agreements dating back long before the

6    enactment of the reauthorized IDEA.  The Court may not pick and choose only parts of this far-

7    sweeping law to apply retroactively.  Such an action would not only be unfair to the thousands

8    of parties who have acted in good faith under the prior version of the law, but would also

9    contravene established principles of law.

10       Importantly, in 1997, when the IDEA last underwent major revision, including revisions

11   to the procedural safeguards set forth in section 1415, the courts specifically refused to apply the

12   amendments retroactively, finding that "[n]othing in the Amendments suggests retroactive

13   application with respect to cases pending on the date of enactment." *Tucker v. Calloway Co.*

14   *Bd. Of Educ.*, 136 F.3d 495, 501 (6th Cir. 1998).  Instead, they found that the 1997 IDEA had

15   amendments had "prospective application only." *Fowler v. Unified Sch. Dist. No. 259*, 128 F.3d

16   1431, 1436 (10th Cir. 1997) ("the Amendments nowhere state that they apply retroactively, and

17   courts addressing the effect of the Amendments have held they are prospective only ... we

18   therefore hold that our prior interpretation of the pre-Amendments IDEA ... applies to the

19   parties in this case with respect to conduct occurring prior to June 4, 1997"); *K.R. v. Anderson*

20   *Comm. Sch. Corp.*, 125 F.3d 1017, 1019 (7th Cir. 1997) (change in IDEA was not applicable to

21   time preceding passage of amendment as amendment did not specify retroactive application);

22   *Cypress-Fairbanks Ind. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247, n. 1 (5th Cir. 1997) ("As all

23   of the events giving rise to this action occurred before the enactment of the amendments ... we

24   need not consider their effect").

25       This was the conclusion of this very Court, which previously ruled that the IDEA

26   amendments did not apply retroactively to confer federal court jurisdiction over settlement

27   agreements entered into before the effective date of the legislation. *N.R. v. San Ramon Valley*

28   *Unif. Sch. Dist.*, (Northern District of California, Case No. C 05-00441 SI) . The Court found

21

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

DEFENDANT'S MEMO OF POINTS & AUTHORITIES IN SUPPORT OF ITS MTN FOR JUDGMENT ON
THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1  that there was nothing in the IDEA that suggested that it was intended to apply retroactively.

2  Further, it rejected the plaintiffs' argument that a court could apply only select parts of the

3  amendments retroactively.    This Court stated that "Plaintiffs provide no authority for the

4  proposition that the Court can retroactively apply a single amended subsection of a statue in the

5  absence of clear language authorizing such piecemeal retroactivity.  Indeed, the Court concludes

6  that to do so would be contrary to the 'presumption against retroactive legislation that is deeply

7  rooted in our jurisprudence.'"  *Id.*, quoting *Hughes Aircraft Co, supra*, at 946.

8      Thus, to the extent plaintiff's one remaining cause of action is based on the alleged

9  breach of the settlement agreement, this Court is without jurisdiction to resolve the dispute and

10  the District is immune from prosecution of the claim.  Accordingly, plaintiff's case must be

11  dismissed.

12  **VI.    THE DISTRICT NEVER BREACHED THE SETTLEMENT AGREEMENT**

13      **A.    The May 19, 2005 Request**

14      Plaintiff claims that the District breached the settlement by failing to convene an IEP

15  meeting pursuant to an alleged May 19, 2005 request.  The settlement agreement provided in

16  paragraph 2.H. as follows:

17              If Ryan is a resident of the Mt. Diablo Unified School District for
              the 2005-2006 school year *and* parents are seeking educational
18              services from Mt. Diablo Unified School District, Ryan's annual
              IEP meeting will be held on or before May 30, 2005 to discuss
19              Ryan's placement and services for the 2005-2006 school year.
              (Emphasis added).
20

21      The District has no record of receiving a request for an IEP meeting dated May 19, 2005

22  as plaintiff claims.  Ferro Decl., ¶ 9.  Under the Federal Rules of Evidence, the absence of a

23  business record is proof that it does not exist.  Fed. R. Evid. 803(6),(7).  More importantly,

24  however, there is no dispute that Ryan's father never expressed to the District that he wanted to

25  enroll Ryan in the District or was seeking educational services for him for the 2005-2006 school

26  year.

27      He certainly can not establish any proof indicating that he was seeking educational

28

22

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1   services from the District prior to the deadline for holding an IEP on May 30, 2005, although

2   seeking such services was a condition precedent to holding an IEP meeting under the terms of

3   the agreement.  Ryan had not been enrolled in the District since October 2003, and his parents

4   took no steps to re-enroll him at any time since. Ferro Decl. ¶¶ 5-10, 17, 20-21, 23-27, Ex. 1, 8,

5   11, 12, 14, 15, 16, 17; Browne Decl. ¶ 3, Ex. A; Levine Decl., ¶¶ 9, 10, Ex. J, K.  Indeed, the

6   first communication from the Petersens about the 2005-2006 school year of which the District

7   was aware came in July 2005, well after the deadline of May 30, 2005. Ferro Decl. ¶¶ 4, 8-10,

8   Ex. 1, 3.  And, that communication came from Ryan's mother who had no custody over Ryan

9   and who, in any event, informed the District that she lived 200 miles away and that she objected

10  to Ryan attending the District unless the District could assure her that Ryan would be safe from

11  loud noises and head trauma. Ferro Decl. ¶¶ 10, 22, Ex. 3, 13.  In other words, as of July 11,

12  2005, Ms. Petersen was not consenting to enrollment in the District until further conditions were

13  met, i.e. assurances were provided that satisfied her.

14      Moreover, Mr. Petersen's post-May 30, 2005 correspondence also does not reflect that

15  he had enrolled or otherwise sought services from the District since removing Ryan to a private

16  school.  Ferro Decl., ¶¶ 5-10, 17, 20-21, 23-27, Ex. 8, 11, 12, 14; Browne Decl., ¶ 3, Ex. A;

17  Levine Decl. ¶¶ 9, 10, Ex. J, K.  On the two occasions that Mr. Petersen did indicate his

18  intentions with respect to enrollment, it was to say first in September 2005 that he was home

19  schooling Ryan and to then state in January 2006 that he was relocating and would not be

20  enrolling Ryan that school year. Ferro Decl. ¶¶ 17, 26, Ex. 8, 17; Levine Decl. ¶ 9, Ex. J.

21      Plaintiff makes a variety of allegations in paragraph 36 of the FAC regarding a

22  conspiracy and/or retaliation by the District and their legal counsel regarding this IEP meeting.

23  However, since he cannot even establish that he requested the meeting or was otherwise entitled

24  to it, such claims must fail.

25      **B.    The September 6, 2005 Meeting**

26      Plaintiff claims that the District breached the contract by convening a "belated" IEP

27  without him on September 6, 2005. FAC, ¶ 37. However, as explained above, the IEP meeting

28  was not "belated" under the settlement agreement, because there was never any request for an

23

DEFENDANT'S MEMO OF POINTS & AUTHORITIES IN SUPPORT OF ITS MTN FOR JUDGMENT ON
THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

SF 317769v1

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

1    IEP meeting prior to plaintiff filing a request for due process on or around September 2, 2005,

2    and because plaintiff never indicated any intent to enroll in the District.  Browne Decl., ¶ 3, Ex.

3    A; Levine Decl. ¶¶ 9, 10, Ex. J, K; Ferro Decl., ¶¶ 9, 11, 12, 17, 20, 21, 23, 27, Ex. 8, 11,12, 14,

4    15, 16, 17.  This meeting was also not "belated" under the IDEA since pursuant to Education

5    Code section 56343.5, a district has 30 days to convene an IEP meeting after a written request

6    for one is made, excluding the summer recess.  Ferro Decl., ¶¶ 9, 16.  Thus, even if the District

7    had received a request for an IEP meeting on May 19, 2005, the September 6, 2005 meeting was

8    still timely.

9        Furthermore, holding this meeting was not in violation of the settlement agreement.  The

10   agreement did not address IEP meetings held during the 2005-2006 school year.  Ferro Decl,

11   Ex. 1.

12       Plaintiff's mad speculation in paragraphs 37 and 38 of the FAC about the District's

13   motive for inviting Ryan's former private school principal to attend the meeting or the

14   principal's motive in not wishing Ryan to return to school there are unsupported by any

15   evidence.  It is undisputed that the IDEA allowed the District to invite persons knowledgeable

16   about the student to the IEP meeting.  Educ. Code § 56341(b)(6).  Ryan's principal from New

17   Vistas was such a person and was properly invited to provide information for the IEP meeting.

18   Ferro Decl., ¶ 15.

19   **VII.    CONCLUSION**

20       It is plain that plaintiff's Second Amended Complaint contains no viable cause of action

21   against the District.  The Court should put to bed these repeated attempts by Mr. Petersen and

22   his family to harass the District with meritless claims and should now dismiss this action with

23   prejudice and enter judgment in the District's favor.

24   DATED:  June 24, 2008              MILLER BROWN & DANNIS

25

26                                    By:  /s/ Amy R. Levine
                                         AMY R. LEVINE
27                                       Attorneys for Defendant
                                         MOUNT DIABLO UNIFIED SCHOOL
28                                       DISTRICT
                                                        24