AMY R. LEVINE, State Bar No. 160743
Aleveine@mbdlaw.com
ELIZABETH A. ESTES, State Bar No. 173680
eestes@mbdlaw.com
MILLER BROWN & DANNIS
71 Stevenson Street, 19th Floor
San Francisco, CA 94105
Telephone: (415) 543-4111
Facsimile: (415) 543-4384

Attorneys for Defendant
MOUNT DIABLO UNIFIED SCHOOL DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN PETERSEN,<br><br>    Plaintiff,<br><br>v.<br><br>MOUNT DIABLO UNIFIED SCHOOL DISTRICT,<br><br>    Defendant. | CASE NO. C07-02400 SI<br><br>DECLARATION OF KENNETH FERRO IN SUPPORT OF DEFENDANT DISTRICT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT<br><br>Date:        August 1, 2008<br>Time:       9:00 a.m.<br>Courtroom: 10, 19th Floor<br>Judge:      Hon. Susan Illston<br><br>Trial Date:  None |

I, Kenneth Ferro, declare as follows:

1.  I serve as the Administrator for Alternative Dispute Resolution at the Mt. Diablo Unified School District ("District") and have been in this position since July 1, 2000. If called as a witness, I could and would testify to the facts in this declaration of which I have personal knowledge. For those matters which I do not have personal knowledge but which are stated on information and belief, I believe them to be true.

2.  I have been working in the field of special education for 40 years. In my capacity as Administrator for Alternative Dispute Resolution for the District, I respond on

1

DECLARATION OF FERRO ISO MTN FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

312264v7

1 behalf of the District to compliance complaints, due process filings, and to other legal matters which relate to special education concerns and complaints. I am also required to be readily familiar with individual students' educational needs when complaints or problems arise and with their educational records. I am familiar with the record keeping process of the District for special education matters. Before I became the Administrator for Alternative Dispute Resolution for the District, I was a program specialist at the District from January to June 2000. As such, I was the representative for the District during IEP meetings, facilitated IEP team meetings, and coordinated appropriate placements and educational programs for students.

3. Ryan Petersen ("Ryan") became eligible for special education services from the District in approximately October 1997. He is hearing impaired. I have personally been involved in resolving disputes related to Ryan's educational program since at least early 2003.

4. On August 28, 2003, Ryan's parents filed a due process hearing request with the Special Education Hearing Office ("SEHO"), which was assigned the Case Number SN03-01885. I was the District's representative at the hearing in that matter. On the day the due process hearing in this matter was scheduled to commence, the parties engaged in settlement negotiations and resolved the matter with a formal, written agreement ("Agreement"). This Agreement was not reached in a resolution session or at mediation. I am aware of the terms of this particular settlement agreement because I participated in the negotiations of that agreement, although I was not the District's signatory to the Agreement. I also retain a copy of the Agreement and oversaw the District's compliance with the Agreement after it was reached. Attached as Exhibit 1 is a true and correct copy of this Agreement, including an addendum to the Agreement. As best I can recall, the parents never signed the addendum, but it was drafted at the request of the Petersens.

5. The Agreement resolved all disputes and potential disputes between the parties relating to Ryan's education through the 2004-2005 school year including the "extended school year" ("ESY") following the 2004-2005 school year. The Agreement includes many provisions that are contingent upon whether or not Ryan was going to be a resident of the Mt. Diablo Unified School District because at the time the Agreement was made, the District was uncertain

2

DECLARATION OF FERRO ISO MTN FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

312264v7

whether or not Ryan's parents intended to enroll him in the District and indeed, where they intended to reside.

6. Paragraph 2F of the Agreement states, "If Ryan is a resident of the Mt. Diablo Unified School District and if parties agree that no appropriate [non-public school] is available for Ryan for the 2004-2005 school year, then Parents agree placement for the 2004-2005 school year will be made pursuant to a unilateral private school placement agreement and release the District of any obligations to supervise Ryan's educational program while Ryan is privately enrolled." The paragraph goes on to discuss the extent to which the District will provide reimbursement for such a placement.

7. Pursuant to this paragraph, Ryan Petersen's parents unilaterally placed him in New Vistas Christian School which he attended for the 2004-2005 school year.

8. Paragraph 2H of the Agreement states, "If Ryan is a resident of the Mt. Diablo Unified School District for the 2005-2006 school year and parents are seeking educational services from Mt. Diablo Unified School District, Ryan's annual IEP meeting will be held on or before May 30, 2005 to discuss Ryan's placement and services for the 2005-2006 school year." I understood this to mean an annual IEP meeting would be held by May 30, 2005 if, and only if, (1) such a meeting was requested by his parent, (2) the parent with educational rights resided in the District, and (3) Ryan's parents were actually seeking educational services from the District for him. By May 30, 2005, the District had not received any request for an IEP meeting, nor had it received any statement that the Petersens were seeking educational services from the District.

9. During the 2004-2005 school year through to today, the District's practice is to hold an IEP within 30 days of a written parental request for a meeting. This practice is regularly followed in the office. I have reviewed all available records for Ryan, and we have no record or recollection of receiving a letter dated May 19, 2005 requesting an IEP meeting. Based on this, I do not believe that the District ever received such a request. Instead, the correspondences in this file show that the District spent the first half of the 2005-2006 school year trying to determine whether Ryan's parents intended to re-enroll Ryan in a District school, a question to

3

DECLARATION OF FERRO ISO MTN FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

312264v7

1  which the District could not get an answer. As set forth below, Mr. Petersen did not verify that
2  Ryan would not be re-enrolled until January 2006.

3      10.    On July 11, 2005, I received a statement from Ryan's mother, Randi Petersen,
4  that she resided outside of the District, "200 miles away." A true and correct copy of this letter
5  is attached as Exhibit 2. The following day she sent me another letter which objected to Ryan
6  attending a District school "unless Mt. Diablo can protect Ryan from loud noises and head
7  trauma, to insure he will not permanently lose his hearing and go deaf while at school." A true
8  and correct copy of this letter is attached as Exhibit 3.

9      11.    I received a document entitled "Request for Due Process Hearing" on or around
10 August 31, 2005. The letter is from Michael Petersen, Ryan's father, requesting a due process
11 hearing. The letter is addressed to SEHO. A true and correct copy of this letter is attached as
12 Exhibit 4. At this time, the Office of Administrative Hearings (OAH), not SEHO, was handling
13 due process hearings.

14     12.    Upon receipt of the request for a due process hearing from Michael Petersen on
15 August 31, 2005, I sent a letter via U.S. mail to Mr. Petersen seeking to set up an IEP meeting
16 for September 6, 2005 to discuss the request for due process. A true and correct copy of this
17 letter is attached as Exhibit 5. The District's attempts to fax the letter were futile because the
18 fax line was not answering. I also attempted to reach Mr. Petersen by telephone on several
19 occasions to set up the meeting, and left him a voicemail message that day as well. Finally, I
20 did fax Randi Peterson a copy of the notice of IEP meeting on September 1, 2005.

21     13.    On September 1, 2005, I sent Mr. Petersen a letter asking him to sign a release of
22 information to obtain current information about Ryan's disability in order to serve him. A true
23 and correct copy of this letter is attached as Exhibit 6. Mr. Petersen did not respond to this
24 request, so I subsequently sent additional proposed releases to him seeking information from
25 other service providers and to Ryan's last known school of attendance, New Vistas, regarding
26 Ryan's educational program.

27     14.    On September 1, 2005, Randi Petersen faxed me a letter in response to the IEP
28 notice stating that she was unable to attend Ryan's IEP meeting and that "[d]ue to work, its

4

DECLARATION OF FERRO ISO MTN FOR JUDGMENT ON THE PLEADINGS, OR, IN THE
ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

312264v7

MILLER BROWN & DANNIS
71 STEVENSON STREET, 19TH FLOOR
SAN FRANCISCO, CA 94105

likely I will be unable to attend future IEP meetings ...." A true and correct copy of this letter is attached as Exhibit 7.

15.  On September 6, 2005, the District convened an IEP meeting as scheduled. Neither of Ryan's parents attended in person or by telephone. Marianne Bardsley, a general education teacher, Barbara Scott, a special education teacher, and I attended for the District. The District also invited Ryan's principal at the private school, New Vistas, in which he was enrolled the previous year. This action was taken because the District had not had contact with Ryan since he enrolled at New Vistas, and the District wanted to update its information regarding his performance. It is standard practice to seek a knowledgeable person's input for IEPs when a student had not attended a District school but has attended a nearby private school. The principal provided information to the IEP team members via telephone. At some point, she reported that the school would not accept Ryan back for 2005-2006. The team made an interim program offer to the best of its ability with the limited information we had. The IEP team also determined that the District would need to conduct assessments to determine Ryan's present levels, and get releases to receive information from Ryan's doctors and educational providers.

16.  According to the school calendars for the 2004-2005 and 2005-2006 school years, the last regular day of school for the 2004-2005 school year was June 17, 2005. ESY for the 2004-2005 school year ended on July 30, 2005. The first day of school for the 2005-2006 school year was September 7, 2005. Thus, the September 6, 2005 IEP meeting was held within 30 school days from May 19, 2005, not counting days between the regular school session in between the 2004-2005 and 2005-2006 school years and excluding the Memorial Day holiday.

17.  On or around September 7, 2005, Mr. Petersen faxed to the District a letter informing us that he was "temporally (sic) exercising [his] rights to home school Michael and Ryan." A true and correct copy of this letter and the enclosures is attached as Exhibit 8.

18.  On or around September 9, 2005, the District mailed a copy of the IEP document dated September 6, 2005, the assessment plan, and releases in a letter addressed to Michael Petersen (with a copy to Ms. Petersen) and asked that the information be returned to the District by September 16, 2005. The letter also indicated that a follow up IEP meeting would be

5

DECLARATION OF FERRO ISO MTN FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

312264v7

scheduled. A true and correct copy of this letter and the enclosures is attached as Exhibit 9.

19. On or around September 16, 2005, I again requested a release for records from Mr. Petersen. The letter explained that the District wanted these records because Ryan attended New Vistas and received services through parent selected providers in 2004-2005. A true and correct copy of this letter is attached as Exhibit 10.

20. On or around September 21, 2005, I sent another letter to Mr. Petersen indicating that his children were not enrolled in the District, nor had he returned the assessment plan or releases, and that "[a]s such, it is unclear that you are seeking services for your children from the District at this time." I also requested that Mr. Petersen put in writing by September 23, 2005 whether or not he was seeking services from the District or whether he intended to privately place Ryan. A true and correct copy of this letter is attached as Exhibit 11.

21. School districts develop individual services plans (ISPs) instead of IEPs for students who reside within the geographical boundaries but who attend private schools and are not enrolled in the District. As of October 5, 2005, Ryan still was not enrolled at the District. I sent Mr. Peterson a letter via facsimile and U.S. mail which reiterated that Ryan had not yet been enrolled. In the letter, I noted that "while the filing of a due process complaint indicates you are seeking services from the District, you refer to Ryan as a unilaterally placed private school student entitled to an ISP, thus the District is unclear as to your intent." A true and correct copy of this letter is attached as Exhibit 12.

22. On or about October 7, 2005, Mr. Petersen faxed me a copy of a June 16, 2005 order of the Contra Costa County Superior Court, which stated that Michael Petersen had been granted sole legal and physical custody of both minor children. A true and correct copy of this correspondence is attached as Exhibit 13.

23. On October 7, 2005, I again wrote to Mr. Petersen and stated: "To date, you have not enrolled Ryan in the District, have not returned executed releases, and you have not returned a signed assessment plan." I asked for clarification as to his intent with respect to Ryan. A true and correct copy of this letter is attached as Exhibit 14.

24. On December 2, and December 14, 2005, Mr. Petersen wrote to Melody Royal,

Parent Liaison for the District, regarding services for his sons Ryan and Michael Jr. I responded on December 14, 2005 and stated that neither Ryan nor Michael Jr. was enrolled in the District, and that I still had not received the information requested on September 9, 2005 for Ryan. The letter imposed a deadline of January 6, 2006 for Mr. Petersen to indicate whether or not he was seeking services from the District for Ryan. A true and correct copy of this letter is attached as Exhibit 15.

25. On or around December 22, 2005, Mr. Petersen again wrote to Melody Royal. I responded to this letter on January 9, 2006 by seeking clarification and cooperation from Mr. Petersen. I stated that "[i]f we do not hear from you by Friday, January 13, 2006, we will assume you do not intend to enroll your children in the District and are not seeking services from the District." A true and correct copy of a letter dated January 9, 2006 is attached as Exhibit 16.

26. On or around January 17, 2006, Mr. Petersen wrote to me and stated: "Please note my new address in Visalia Ca. I am relocating my residence and will not be enrolling my children in your school district." A true and correct copy of this letter is attached as Exhibit 17.

27. For the period of time from the start of the 2004-2005 school year, through ESY 2005 and the 2005-2006 school year, Ryan was not enrolled as a student in the Mt. Diablo Unified School District.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed this 16th day of June, 2008 in Mount Diablo, California.

_____
Kenneth Ferro

7
DECLARATION OF FERRO ISO MTN FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT: CASE NO. C07-02400 SI

312264v7